UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

JAMES G. HANSEN,

    Plaintiff,

    vs.                                      Case No: 12-CV-00032

FINCANTIERI MARINE GROUP, LLC
and MARINETTE MARINE CORPORATION,

    Defendants.

---

**PLAINTIFF'S BRIEF OPPOSING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

Submitted by:

Erica N. Reib, State Bar No. 1084760
HEINS LAW OFFICE LLC
1001 West Glen Oaks Lane, Suite 101
Mequon, Wisconsin 53092
(262) 241-8444 voice
(262) 241-8455 facsimile
e-mail: ereib@heinslawoffice.com

## INTRODUCTION

The evidence shows that the Defendants terminated Hansen for asserting his rights under the Family and Medical Leave Act of 1992, as amended, 29 U.S.C. § 2601 et seq. ("FMLA"), and in retaliation for taking FMLA leave. Accordingly, Hansen respectfully requests that this Court deny the Defendants' Motion for Summary Judgment, as there are material issues of fact in this case that can only be resolved at trial by a jury.

## STATEMENT OF FACTS

On May 3, 2011, Defendants deemed Hansen eligible for intermittent FMLA leave from that date through December 31, 2011. (Plaintiff's Proposed Findings of Fact ("PPFOF") No. 9).

On each specific day, Hansen informed Matrix, Defendants' FMLA leave management company, that he was requesting intermittent FMLA leave for the following days: May 3-6, 2011; May 9, 2011; May 23, 2011; May 31 to June 1, 2011; June 13-15, 2011; June 22, 2011; June 27, 2011; July 1, 2011; July 11-13, 2011; and July 18, 2011. (PPFOF Nos. 12, 14).

On or about May 11, 2011, Hansen's physician, Dr. Michael J. Post, sent Defendants a completed Certification of Health Care Provider for Employee's Serious Health Condition, stating that Hansen would need follow-up appointments, that episodic flare-ups would periodically prevent him from performing his job functions, and that it would be medically necessary for Hansen to be absent from work during the flare-ups to correct the underlying illness. (PPFOF No. 11). Dr. Post estimated that Hansen's periodic need for leave would be two to five days per episode, four times per six months. (PPFOF No. 11).

Prior to Dr. Post submitting the certification for Hansen, Hansen's requested intermittent FMLA leave for May 3-6, 2011 and May 9, 2011 were counted as occurrences by Defendants. (PPFOF No. 16). This put Hansen at 14.50 occurrences, which was over the 10 occurrence threshold for termination. (PPFOF Nos. 4, 16). After Matrix approved those absences as intermittent FMLA leave on or about May 20, 2011, Defendants took away those occurrences. (PPFOF Nos. 17, 18).

Matrix denied Hansen's request for intermittent FMLA leave on June 22, 2011 and June 27, 2011 for being "Exhausted." (PPFOF Nos. 19, 21). Matrix did not request a recertification from Hansen or apprise him of the consequences of not submitting a recertification. (PPFOF

3

Nos. 19, 21). However, Defendants granted Hansen intermittent FMLA leave for those dates and did not give him occurrences. (PPFOF No. 33).

Hansen called Matrix on July 1, 2011 and requested intermittent FMLA leave. (PPFOF No. 14). On July 6, 2011, Karla Drew, Integrated Claims Examiner at Matrix, faxed a letter to Dr. Post, the body of which read, in part, "Hi Dr. Hansen, Steven's absence is outside of his frequency and duration. Please confirm item #7. Please respond within 7 days." (PPFOF No. 23).

Matrix denied Hansen's requests for intermittent FMLA leave on July 1, 2011, July 11-13, 2011, and July 18, 2011 for "Frequency exceeded." (PPFOF Nos. 27, 29, 31). Matrix did not request a recertification from Hansen or apprise him of the consequences of not submitting a recertification. (PPFOF Nos. 27, 29, 31). Defendants confirmed Matrix's denials of Hansen's intermittent FMLA leave for each of those dates and gave him a full occurrence for each. (PPFOF No. 33). Because those dates were counted as occurrences and not intermittent FMLA leave, Hansen had thirteen occurrences, which was over Defendant's ten occurrence threshold for termination. (PPFOF Nos. 33, 34). Defendants terminated Plaintiff on July 22, 2011 for incurring thirteen occurrences. (PPFOF No. 36). Defendants issued no discipline to Plaintiff other than termination in relation to the July 1, 2011, July 11-13, 2011, and July 18, 2011 occurrences. (PPFOF No. 35).

During Plaintiff's termination meeting, Tami Hansen told Plaintiff, "You can miss 4 times every 6 months. You are currently at 13 points. Matrix called your doctor and there was no change in your certification. The days remained." (PPFOF No. 37). Ms. Hansen did not request the Plaintiff provide a recertification at that time. (PPFOF No. 37). At his termination meeting, Plaintiff informed Defendants that his absences on July 1, 11, 12, 13, and 18, 2011 should be

deemed intermittent FMLA leave, not occurrences. (PPFOF No. 38). Hansen offered to provide additional paperwork, but Defendant's did not respond or otherwise request further medical information. (PPFOF No. 38).

On August 5, 2011, fourteen calendar days after Hansen's termination, Attorney Holly Lutz sent a letter to Defendants on Plaintiff's behalf, requesting that Plaintiff be allowed to return to work and offering appropriate paperwork. (PPFOF No. 40). Tamara Hansen, Defendant MMC's HR Representative, responded by letter on or about September 13, 2011, confirming the termination for occurrences and stating that "Mr. Hansen's FMLA recertification was denied; therefore his employment was terminated." (PPFOF No. 41). Defendants did not request any recertification at that time. (PPFOF No. 41).

## **LEGAL STANDARD**

Summary judgment is only proper if there are no genuine issues of material fact. FED.R.CIV.P. 56(c). A motion for summary judgment "requires us to take the facts and plausible inferences in the light most favorable to the plaintiffs." *Bermudez v. TRC Holdings*, 138 F.3d 1176, 1177 (7th Cir. 1998); *accord Rothman v. Emory University*, 123 F.3d 446, 450 (7th Cir. 1997). A motion for summary judgment should not be granted unless it is "abundantly clear" that there is no genuine issue of material fact," *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1002 (7th Cir.), *cert. denied*, 513 U.S. 1001 (1994). A plaintiff who bears the burden of proof at trial must show specific facts to support each element of the cause of action. *Celotex Corp. v. Catrett*, 47 U.S. 317, 322-24 (1986).

Plaintiff is able to show through documentation and affidavits that there are genuine issues of material fact in this case that cannot be appropriately decided on summary judgment.

5

Because Plaintiff presents genuine issues of material fact, Defendant's Motion for Summary Judgment should be denied in its entirety.

# **ARGUMENT**

I. HANSEN HAS STATED VIABLE CLAIMS UNDER WHICH HE IS ENTITLED TO RELIEF AND THERE ARE DISPUTED FACTS.

The FMLA requires covered employers to provide up to twelve weeks of leave during any twelve month period to employees who, because of a serious health condition, are unable to perform the functions of their position. 29 U.S.C. § 2612(a)(1)(D). An employer may require an employee seeking FMLA leave to submit medical certification supporting the request. 29 U.S.C. § 2613; 29 C.F.R. § 825.305(a). The employer must give the employee notice of the need for certification each time a certification is required. 29 C.F.R. § 825.305(a). The employer must allow the employee 15 calendar days after the request was made to submit the certification. 29 C.F.R. § 825.306(b). If an employer finds a certification incomplete or insufficient, it must provide the employee an opportunity to cure any such deficiency. 29 C.F.R. 825.305(c), *Kauffman v. Federal Exp. Corp.*, 426 F.3d 880, 886 (7th Cir. 2005). The employer must also advise the employee of the anticipated consequences of a failure to provide adequate certification. 29 C.F.R. § 825.305(d).

**A. Hansen Has a Viable Claim for FMLA Interference**

To prevail on an FMLA interference claim, an employee must establish that 1) he was eligible for FMLA; 2) the employer was covered by the FMLA; 3) he was entitled to leave under the FMLA; 4) he provided sufficient notice of his intent to take leave; and 5) his employer denied him FMLA benefits to which he was entitled. *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 761 (7th Cir. 2008).

The first four factors are undisputed. Defendants deemed Hansen eligible for intermittent FMLA leave from May 3, 2011 through December 31, 2011. (PPFOF No. 9). Hansen's physician submitted a Certification of Health Care Provider for Employee's Serious Health Condition, and Defendants began approving Hansen for intermittent FMLA leave when he called Matrix. (PPFOF Nos. 11, 14).

The crux of this case is whether Defendant interfered with Hansen's FMLA rights by denying intermittent FMLA leave on July 1, 11, 12, 13, and 18, 2011, giving Hansen occurrences for those days, and terminating him based on those occurrences. Defendants contend that they properly terminated Hansen for absences because his July requests for intermittent FMLA leave were outside of his certified frequency. Hansen contends that Defendants did not comply with the law in denying his requests for intermittent FMLA leave.

Hansen took FMLA leave when it was medically necessary. Although this exceeded his physician's original estimation in frequency of necessary leave, Hansen only requested eighteen FMLA days in three months. Dr. Post's certification actually allows for up to a total of twenty days.[1] Hansen was far from exhausting his rights to take up to twelve weeks of leave. If Defendants no longer deemed Hansen's certification adequate to cover his requested FMLA, it was their duty to request recertification. 29 C.F.R. § 825.305(a). However, there is no evidence that Defendants demanded any further information or certification before terminating Hansen's employment. Defendants terminated Hansen's employment before he had a reasonable time to provide sufficient medical certification because he was unaware that it was even necessary. Moreover, Defendants did not make Hansen aware of the consequences of not submitting a recertification, as required by 29 C.F.R. § 825.305(d).

---

[1] Dr. Post's certification allows 2-5 days per episode, and 4 episodes per six months. (PPFOF ¶ 11).

Defendants seem to claim that they requested a recertification from Hansen's physician via the July 6, 2011 fax to Dr. Post and that Dr. Post's "reply" was a sufficient recertification to allow Defendants to deny Hansen's requests for intermittent FMLA leave. This argument fails on multiple grounds.

First, Defendants have a legal obligation to seek a recertification from Hansen first. They were not entitled to go straight to his physician. "[T]he employer may contact the health care provider for purposes of clarification and authentication of the medical certification (whether initial certification or recertification) *after* the employer has given the employee an opportunity to cure any deficiencies as set forth under § 825.305(c)." 29 C.F.R. 825.307(a)(emphasis added).

Second, the July 6, 2011 fax is dreadfully unclear as to what it is asking for and what the consequences of not submitting the certification would be. The fax confusingly asks "Doctor Hansen" to "confirm item #7" because "Steven's 7/1 absence is out of his frequency and duration." (PPFOF No. 23). Item #7 on the Certification of Health Care Provider for Employee's Serious Health Condition addresses follow-up appointments, part time work, and reduced schedule. (PPFPF No. 24). It has a frequency and duration component. (PPFOF No. 24). Dr. Post's July 6, 2011 "response," which has not been authenticated as written or signed by Dr. Post, simply states "Item #7 confirmed. P." (PPFOF No. 26). Defendants claim that "[t]he fact that Matrix's fax specifically referenced the frequency and durations of incapacity, and not the estimated treatment schedule, would have indicated to Dr. Post that Matrix was seeking confirmation of the frequency and duration of the incapacity." *Defendant's Brief*, p. 17. The July 6, 2011 fax does not include the word "incapacity." (PPFOF No. 23). Also, the fact that Dr. Post sent a follow-up letter to Defendants on July 26, 2011 regarding the frequency and duration of incapacity, which does not reference the July 6, 2011 "response," does not indicate that Dr.

Post knew what information Matrix was seeking (PPFOF No. 39). What Dr. Post knew has not been established by the Defendants through any admissible evidence. Defendants argue that Dr. Post's letter does not specifically address Hansen's July absences. However, Defendants asked Dr. Post only about the July 1, 2011 absence. (PPFOF No. 25). Also, Dr. Post's July 26, 2011 letter is rendered moot by the fact that Defendants had already terminated Hansen four days before receiving it. (PPFOF No. 36).

Finally, the FMLA provides a very specific way for an employer to seek information regarding an employee's FMLA leave from the employee's doctor; "recertification, not some other doctor-provided verification, is the proper means by which an employer can assure itself that the employee's absence is connected to his FMLA-certified condition." *Jackson v. Jernberg Industries, Inc.*, 677 F. Supp. 2d 1042, 1051 (N.D. Ill 2010). Defendant's fax and Dr. Post's "response" are not a legally sufficient request as a recertification or as a recertification.

The facts of Hansen's case are similar to the facts in *Brown v. SBC Communications*, 2005 WL 2076584, at *2 (E.D. Wis. 2005), wherein Brown was terminated for incurring too many "incidental absences." Brown claimed that those absences should have been treated as FMLA leave. *Id.* at *2-3. Brown was approved for 2-3 days per week of intermittent FMLA leave, and when he took four FMLA days in one week, the employer denied his fourth day. *Id.* at *3. His employer then asked him for recertification, which he claimed to have not received in the time frame to respond and was not given an adequate opportunity to provide. *Id.* When Brown did not submit a recertification, his employer terminated him. *Id.* The Court found that, because a jury could find that Brown was not "afforded a reasonable opportunity to cure the deficiency in his certification," summary judgment had to be denied. *Id.* at *8. Here, neither Matrix, Marinette Marine, or Fincantieri asked Hansen for a recertification. (PPFPF Nos. 19, 21,

9

27, 29, 31, 38, 41). Therefore, a reasonable jury could find that Hansen was not afforded a reasonable opportunity cure any alleged deficiency.

In an FMLA interference case, the proper inquiry is whether the Defendants "respected" the employee's "entitlements." *Kauffman*, 426 F.3d at 885. In *Kauffman*, the central issue was whether the doctor's certification was adequate to entitle the plaintiff to FMLA leave. *Id.* at 886. The Defendant claimed that the certification was incomplete, and the Plaintiff argued that, even if it was incomplete, the Defendant was required to give him an opportunity to cure it. *Id.* The Seventh Circuit vacated the District Court's grant of summary judgment to the Defendant because it found that FedEx was "required to, but did not, notify Kauffman and give him the opportunity to cure the deficiency." *Id.* at 887.

Defendants in the present case argue that Hansen's certification did not entitle him to take the amount of FMLA leave that he took. *Defendants' Brief*, p. 15-17. However, Defendants did not give Hansen the opportunity to cure the deficiency and, instead, terminated him. (PPFOF Nos. 19, 21, 27, 29, 31, 36, 38).

**B. Hansen Has a Viable Claim for FMLA Retaliation**

A plaintiff may proceed under the direct or indirect methods of proof when establishing an FMLA retaliation claim. *Burnett v. LFW, Inc.*, 472 F.3d 471, 481 (7th Cir. 2006). Under the direct method, a plaintiff must present evidence that the employer took a materially adverse action against him because of his protected activity. *Id.* The case must proceed to trial unless the employer presents unrebutted evidence that it would have taken the adverse action against the plaintiff otherwise. *Id.*

Hansen's FMLA retaliation claim "rises and falls based upon his entitlement claim." *Fritz v. Phillips Svc. Indus., Inc.*, 555 F. Supp. 2d 820, 823 (E.D. Mich. 2008). If Hansen can

10

show that he was entitled to FMLA leave, then his *prima facie* case is satisfied. Hansen was attempting to take intermittent FMLA leave; Defendants knew this, and they terminated Hansen as a result of his absences on July 1, 11, 12, 13, and 18, 2011. (PPFOF Nos. 34, 36). If those absences are covered by FMLA, Defendants were not entitled to consider them in terminating Hansen. Defendants have presented no other reason for terminating Hansen. (PPFOF No. 36). This is enough that a causal relationship between the protected FMLA activity and the materially adverse action by the employer may be shown at trial. *Agbejimi v. Advocate Health and Hosp. Corp.*, 2009 WL 2589129, *5 (N.D. Ill. 2009). Thus, to the extent that genuine issues of material fact remain with respect to whether Hansen was entitled to FMLA leave for his absences, genuine issues of material fact remain with respect to his retaliation claim as well. *Fritz*, 555 F. Supp. 2d at 837.

II. DEFENDANTS' ARGUMENTS ARE UNPERSUASIVE AND SHOULD BE DISREGARDED

Defendants argue that if an employee's actual leave exceeds the leave exactly as indicated on the medical certification, the employee is required to provide the employer with notice. *Defendant's Brief*, p. 15-17. However, Defendants' cited cases are inapplicable to the case at hand. Defendants first cite *Barnhouse v. Honda of America Mfg., Inc.,* 2007 WL 3244198, *2 (S.D. Ohio 2007), a case out of the Southern District of Ohio, in which the Plaintiff was approved for four days of intermittent FMLA leave per month, yet took eleven, nineteen, and twenty-one days of leave in three consecutive months. Ultimately, summary judgment was granted to the Defendant, not because the Plaintiff took FMLA leave outside of his approved frequency, but because the absences that led to his termination were not even claimed as FMLA leave. *Id.* at *8. Defendant further cites *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d

11

Case 1:12-cv-00032-WCG    Filed 02/11/13    Page 11 of 14    Document 34

549 (6th Cir. 2006), for the proposition that employees must provide adequate notice to the employer when FMLA leave needs to be extended. However, in that case, the employer requested additional certification and then terminated the employee for not supplying it fast enough. *Id.* at 555. Defendants, on the other hand, did not request any additional certification from Hansen. (PPFOF Nos. 19, 21, 27, 29, 31, 38, 41).

Defendants also allege that they had no duty to investigate Plaintiff's medical condition or his need for an extension of the approved leave. *Defendant's Brief*, p. 17. Defendants cite *Junker v. Amana Co., L,P.,* 249 F. Supp. 2d 894 (N.D. Iowa 2003), a case from the Northern District of Iowa, to support this contention. However, *Junker* is distinguishable because it concerned continuous FMLA leave and the employer had a policy that required the employee to return to work upon termination of the leave period or provide it with medical certification to extend the leave. *Id.* at 901. In contrast, Hansen's leave was not continuous; it was intermittent. (PPFOF No. 9, 14). Defendants did not have a policy regarding what would happen if an employee exceeded his frequency. Hansen had no way of knowing what he was supposed to do because Defendants did not inform him and inconsistently handled requests for leave outside of the approved frequency. (PPFOF Nos. 18, 19, 21, 27, 29, 31, 33, 38, 41). Matrix denied Hansen's requests for intermittent FMLA leave on June 22, 2011 and June 27, 2011, claiming that the leave was "Exhausted." (PPFOF Nos. 19, 21). However, Defendants did not simply accept Matrix's denials; in fact, they specifically granted Hansen intermittent FMLA leave on those two days. (PPFOF No. 33).

Defendants state that Hansen is not entitled to unregulated, intermittent FMLA leave to be taken at his discretion. *Defendant's Brief*, p. 18-19. First, it cites Hansen's deposition testimony regarding how much leave he believed he was entitled to. However, what Hansen

12

believed about his entitlement is irrelevant. "After all, employees such as plaintiff 'are workers, not lawyers.'" *Fritz*, 555 F. Supp. 2d at 835, *citing Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 763 (5th Cir. 1995).

Defendants then cite *Collins v. NTN-Bower Corp.,* 272 F.3d 1006 (7th Cir. 2001) to support their argument. However, the reliance on *Collins* is misguided. First, the quoted language regarding the Court's reluctance "to read the FMLA as allowing unscheduled and unpredictable, but cumulatively substantial, absences," does not support Defendants' point. Hansen requested a grand total of eighteen FMLA days in three months. (PPFOF No. 14). This is not "cumulatively substantial." Second, the quoted language is *dicta* and not a precedential point of law. Rather, in *Collins*, the Seventh Circuit affirmed the District Court's grant of summary judgment for the Defendant because the Plaintiff merely referenced being "sick," which the Court determined "did not suggest to the employer that the medical condition might be serious or that the FMLA would otherwise be applicable." *Id*. at 1008-09. Further, the Court in *Agbejimi v. Advocate Health and Hospitals Corp.*, 2009 WL 2589129, *5 (N.D. Ill. 2009) observed that *Collins* was <u>not</u> decided on the basis reluctance to read the FMLA as allowing for "unscheduled and unpredictable, but cumulatively substantial absences." The *Agbejimi* Court denied the Defendant's motion for summary judgment on those grounds and let the case proceed to trial based on the genuine factual dispute regarding notice. *Id.* at *5. This Court should foreclose the Defendants' attempt to use *Collins* for any other purpose.

Defendants discuss Hansen's "long history of attendance problems." *Defendant's Brief*, p. 20. However, Hansen's past attendance record is not relevant, and Hansen's previous attendance problems were not the reason for his termination. (PPFOF No. 36). Hansen was terminated

solely because Defendants denied his requests for FMLA on July 1, 2011, July 11-13, 2011, and July 18, 2011 and gave him occurrences for those days. (PPFOF Nos. 33, 34, 36).

## **CONCLUSION**

Defendants interfered with Hansen's rights under the FMLA and retaliated against him for exercising his rights under the FMLA, and genuine issues of material fact remain for a jury to decide. Therefore, the Defendants' motion for summary judgment must be denied in its entirety.

Dated this 11th day of February, 2013.

                                        HEINS LAW OFFICE LLC
                                        Counsel for the Plaintiff

                                        *s/ Erica N. Reib*
                                        Janet L. Heins, State Bar No. 1000677
                                        Erica N. Reib, State Bar No. 1084760

HEINS LAW OFFICE LLC
1001 West Glen Oaks Lane, Suite 101
Mequon, Wisconsin 53092
(262) 241-8444 voice
(262) 241-8455 facsimile
e-mail: jheins@heinslawoffice.com
ereib@heinslawoffice.com