UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

GREEN BAY DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES G. HANSEN,

       Plaintiff,

    -vs-            Case No. 12-C-32

FINCANTIERI MARINE GROUP, LLC,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Examination of JAMES G. HANSEN, taken at the instance of the Defendant, under and pursuant to the Federal Rules of Civil Procedure, before LINDA J. SAARI, a Registered Merit Reporter and Notary Public in and for the State of Wisconsin, at Hyatt Hotel, 333 Main Street, Green Bay, Wisconsin, on November 30, 2012, commencing at 12:55 p.m. and concluding at 2:58 p.m.



EXHIBIT
A

2

```
 1              A P P E A R A N C E S

 2   HEINS LAW OFFICE, LLC, by
     MS. ERICA N. REIB,
 3   1001 West Glen Oaks Lane, Suite 101,
     Mequon, Wisconsin 53092,
 4   262-241-8444 // ereib@heinslawoffice.com,
     appeared on behalf of the Plaintiff.
 5
     BUELOW VETTER BUIKEMA OLSON & VLIET, LLC, by
 6   MR. JOEL S. AZIERE,
     20855 Watertown Road, Suite 200,
 7   Waukesha, Wisconsin 53186,
     262-364-0250 // jaziere@buelowvetter.com,
 8   appeared on behalf of the Defendant.

 9           A L S O   P R E S E N T

10   Ms. Tracy Cavin - Law Specialist - Marinette Marine
     Corporation.

11                    * * * * *

12                  I N D E X

13
     Examination By:                            Page
14
     Mr. Aziere....................................  5
15
     Exhibit Identified:                          Page
16
     No. 1 - Plaintiff's Responses To Defendant's
17            First Set Of Requests For Admission,
              Interrogatories, And Requests For
18            Production Of Documents...............  8
     No. 2 - Packet Consisting Of Pages From Mr.
19            Hansen's Personnel File: Re: Notice Of
              Attendance Violations, Attendance
20            Incident Details..................... 18
     No. 3 - Transcript From The 5/12/11 Attendance
21            Meeting: Re: 9-Point Attendance Meeting... 26
     No. 4 - Transcript From The 7/22/11 Attendance
22            Meeting.............................. 32
     No. 5 - Fax Cover Sheet, 7/6/11, To Dr. Post From
23            Karla Drew: Re: Leave 904193 (James
              Hansen) **Needs Attention****; Fax From
24            Dr. Post/Christy Brown, 5/19/11, To
              Matrix; Certification Of Health Care
25            Provider For Employee's Serious Health
              Condition (Family And Medical Leave Act).. 40
```

**3**

I N D E X (Continued)

Exhibit Identified:                                                    Page

No. 6 -   Hansen FMLA Per Complaint.................   46
No. 7 -   Second Amended Complaint.................   47
No. 8 -   Fax To Ms. Hansen From James Hansen,
          5/19/11, With Two Copies Of Certification
          Of Health Care Provider For Employee's
          Serious Health Condition (Second Copy
          With Handwritten Notes (Note: 5/19: Faxed
          5/11/11 And Refaxed 5/19/11 - "P")........   73
No. 9 -   Fax To Tammy Hansen From James Hansen,
          7/23/11; Fax Cover Sheet, To: Dr. Post,
          From: Karla Drew@matrixcos.com, 7/6/11:
          Re: Leave 904193 (James Hansen) **Needs
          Attention***............................   74
No. 10 -  Fax, To: Tammy Hansen, From : James
          Hansen, With Attachments: 7/23/11;
          Letters, 5/4/11, 6/27/11, 7/14/11,
          6/23/11, Leave Information; Certification
          Of Health Care Provider For Employee's
          Serious Health Condition.................   75

Request By:                                                           Page

Mr. Aziere -   Copy Of Updated Health Care
               Provider Form That Was Attached To
               Letter 7/26/11, To Yvonne Rangl
               From Dr. Michael J. Post, MD,
               Bates 001043, As Soon As Possible..   12

-              Copy Of Certification For
               Mr. Hansen's Absences That
               Specifically Addresses Five
               Absences In July 2011 As Soon As
               Possible...........................   56

-              Supplementation Of Interrogatory
               Number 6 On Page 6 Of Exhibit
               Number 1 As Soon As Possible.......   66

-              Mr. Hansen To Provide Document
               That He Has At Home In
               Supplementation To The Response To
               Interrogatory Number 7 And The
               Request For Production Of
               Documents..........................   67

**4**

I N D E X (Continued)

Request By:                                                           Page

-              Mr. Hansen To Provide
               Documentation In Supplementation
               That He faxed It To Marinette
               Marine With Attention To Tami
               Hansen And I faxed It To Matrix
               With Attention To Yvonne Rangl In
               Response To Paragraph 27, Page 4,
               Of Exhibit 7.......................   71

-              Mr. Hansen To Provide
               Documentation In Supplementation
               To Interrogatory No. 15 Page 8,
               Exhibit 1, With A List Of All The
               Companies To Which He Applied And
               All The Positions To Which He
               Applied............................   72

-              Mr. Hansen To Provide
               Documentation In Supplementation
               To Interrogatory 16, Page 9,
               Exhibit 1, With The Information
               Requested..........................   73

The Witness -  Mr. Hansen Will Search For Any
               Other Faxes That You Sent Besides
               Exhibits 8, 9 And 10 And The One
               That He Testified To That He Did
               Not Have In Front Of Him At The
               Time Of The Deposition.............   76

Disposition Of Original Exhibits:

Attached To Original Transcript.

                    * * * * *

**5**

        TRANSCRIPT OF PROCEEDINGS

1        JAMES G. HANSEN, called as a witness

2   herein, having been first duly sworn on oath, was

3   examined and testified as follows:

4              EXAMINATION

5   BY MR. AZIERE:

6   Q   Could you, please, state your full name and spell

7       your last name.

8   A   James Gordon Hansen, H-A-N-S-E-N.

9   Q   What is your current address?

10  A   918 6th Avenue, Menominee, Michigan.

11  Q   Your phone number?

12  A   906-863-5403.

13  Q   Have you ever been deposed before?

14  A   Could you tell me the definition of "deposed"?

15  Q   Have you ever been through a deposition like we're

16      doing here today?

17  A   No.

18  Q   Do you understand that you're under oath here

19      today?

20  A   Yes.

21  Q   So everything that you say you are swearing is the

22      truth.  Do you understand that?

23  A   Yes.

24  Q   Is there any reason you are unwilling or unable to

**6**

1   truthfully answer my questions today?

2   A   No.

3   Q   Do you have any medical conditions that would

4       prevent you from understanding my questions and

5       truthfully answering them?

6   A   No.

7   Q   Are you taking any medication that would affect

8       your ability to understand my questions and

9       truthfully answer them?

10  A   No.

11  Q   Have you consumed any alcohol today?

12  A   No.

13  Q   Let's talk a little bit about the ground rules of

14      a deposition.

15         As you can see the court reporter is

16      here and she is going to take down everything that

17      we say.  Now, in order for that to work we need to

18      make sure that there's a couple things going on.

19         First we need to make sure that we don't

20      talk over one another.  So I'll ask that you allow

21      me to finish my question and then give your

22      answer.  And I'll try not to interrupt you.

23      Because if we try to talk at the same time she

24      cannot take down the information.  Do you

25      understand that?

7

1 A Yes.
2 Q The other thing you have to keep in mind is that
3 because she is taking down everything that we say
4 you have to answer everything orally. You cannot
5 just shake your head or nod your head, you have to
6 actually say "yes" and "no." Do you understand
7 that?
8 A Yes.
9 Q The other thing to keep in mind is when you are
10 responding make sure that you say "yes" and "no"
11 instead of saying things like Mm-Mm or Uhh-Uhh.
12 She will try and take that down, but it doesn't
13 become clear in the deposition as to what it is
14 you are saying. Do you understand that?
15 A Yes.
16 Q Okay. What did you do to prepare for your
17 deposition here today?
18 A I had a quick meeting with my attorney.
19 Q Did you meet with anyone else?
20 A No.
21 Q Did you review any documents in preparation for
22 your deposition here today?
23 A Yes.
24 Q What did you review?
25 A The complaint.

8

1 Q Anything besides the complaint?
2 A No.
3         MR. AZIERE: Would you mark this,
4 please.
5        (Exhibit Number 1 was marked.)
6 BY MR. AZIERE:
7 Q I'm handing you Exhibit 1. This is a copy of your
8 initial discovery responses. Could you take a
9 minute to take a look at that and let me know when
10 you're done reviewing that.
11 A I'm finished.
12 Q Have you seen this document marked Exhibit 1
13 before?
14 A Yes, I have.
15 Q Did you review these responses before they were
16 provided by your attorney?
17 A Yes.
18 Q Were you truthful in your discovery responses?
19 A Yes.
20 Q Were you complete in answering these discovery
21 requests?
22 A Yes.
23 Q Is there any information in response to these
24 discovery requests that you are withholding or
25 have not disclosed?

9

1 A No.
2 Q Keep that handy because I'm going to ask you about
3 documents attached to that throughout this
4 deposition. Okay?
5       Tell me in your own words what is the
6 basis for your claim against Marinette Marine and
7 Fincantieri?
8 A I feel that I was fired wrongfully.
9 Q Why?
10 A I was approved State and federally for FMLA and I
11 was fired for that.
12 Q Specifically what FMLA leave do you contend that
13 you were fired over?
14 A I was fired over FMLA in general.
15 Q What do you mean by that?
16 A I was fired based on the -- I think I was fired
17 because they said I ran out of personal FMLA
18 leave.
19 Q Do you contest that assertion?
20 A Yes.
21 Q On what basis?
22 A I was approved for up to 60 days of FMLA and I did
23 not exceed 60 days.
24 Q Do you have any documents that show that you were
25 approved for up to 60 days of FMLA leave?

10

1 A Yes.
2 Q What documents do you have?
3 A The state laws and the Federal laws and
4 certifications that I have from my doctor to show
5 that I was approved for those two leaves.
6 Q Take a look at Exhibit 1. Please flip to Page --
7 there's a number of pages that are attached.
8 These are all pages that were provided by you in
9 response to the initial discovery requests.
10 Please turn to the page that's marked 001010. Are
11 you there?
12 A Yes.
13 Q This is the Certification of Health Care Provider
14 For Employee's Serious Health Condition form. Is
15 this the form that you contend provided you FMLA
16 leave for the time period asserted in your
17 complaint?
18 A Can you repeat the question?
19       MR. AZIERE: Can you read that back to
20 him?
21       (Last question read.)
22       THE WITNESS: Yes.
23 BY MR. AZIERE:
24 Q Do you have any other health care certification
25 forms for the time period asserted in your

11

1 complaint?
2 A I don't know that I have it or if it's in this
3 packet, but there was one more that was updated
4 when it was requested by the FMLA provider.
5 Q Another one of these forms?
6 A Yes.
7 Q Where is that form?
8 A I don't have that. I think I turned it in. Yeah,
9 there's the letter with the updated -- I don't
10 know that the updated form is in here, but there
11 is a letter that went with the updated form on the
12 second-to-last -- 001043.
13 Q Okay. You're saying there was another
14 certification form that went along with that?
15 A It wasn't -- it went along with it, but not at the
16 same time as this. That other updated
17 certification form was later.
18 Q When?
19 A I don't have the approximate date.
20 Q Who's got a copy of that now?
21 A I'd have to see it. I think it should be in here
22 somewhere. You guys should have a copy. The FMLA
23 provider should have a copy. It was faxed to
24 everybody involved.
25 Q Faxed by who?

12

1 A My doctor and myself.
2 Q What was it dated?
3 A I don't know the date right off the top of my
4 head.
5 Q We don't have any other health care provider
6 certification forms and neither does Matrix. So
7 if there is one --
8 A Matrix was faxed a letter directly from my doctor.
9 Q And you're saying there was a new health care
10 provider form that was attached to that letter?
11 A They asked for an updated -- Matrix asked for an
12 updated version of that because of the date. And
13 I had it updated and faxed to them and faxed to
14 Marinette Marine. And whatever happened with that
15 I don't know. I do have the confirmation of the
16 fax being received though.
17 Q We need a copy of that as soon as possible.
18 A I think I can get that probably later today and
19 get it to Rebecca Monday or Tuesday.
20 Q Okay. Now, turn back to -- I'm sorry, go ahead,
21 you have something else.
22 A Erica.
23          MS. REIB: That's fine.
24 BY MR. AZIERE:
25 Q Turn back to the page marked 001010. There's two

13

1 pages to this Certification Of Health Care
2 Provider form. The second page is marked 001011.
3 Do you see that?
4 A Yes.
5 Q This form is filled out by Dr. Michael Post,
6 correct?
7 A Yes.
8 Q Who is he?
9 A He was my health care provider.
10 Q How long had you been seeing Dr. Post at the time
11 he completed this form?
12 A Approximately a year.
13 Q And for what purpose were you seeing Dr. Post?
14 A Depression.
15 Q Take a look at the second page of that document
16 which is marked 001011. Do you see that?
17 A Yes.
18 Q That is signed and dated by Dr. Post on 5/11/2011,
19 correct?
20 A Yes.
21 Q Now, if you could take a look just above his
22 signature there's a section that's marked "Part B:
23 Amount of Leave Needed." And below that is
24 Number 8. Do you see where I'm indicating?
25 A Yes.

14

1 Q It talks about the expected frequency and duration
2 of your condition. At the very bottom of Number 8
3 it states for frequency "4 times per 6 months."
4 Do you see that?
5 A Yes.
6 Q He also indicates that he expects that each
7 episode will last 2 to 5 days. Do you see that?
8 A Yes.
9 Q What do you think that means?
10 A That's his opinion on what he feels it's going to
11 take to correct the illness.
12 Q To correct what?
13 A To correct the illness.
14 Q How much leave do you think that you are entitled
15 to under this certification form?
16 A I was entitled to up to 60 days under FMLA the way
17 I understood it. Just the doctor's opinion.
18 Q What makes you think that?
19 A With the laws.
20 Q What about the law makes you believe that?
21 A That's what the law states that you can receive,
22 when you're approved for State and Federal FMLA,
23 you're approved for up to 60 days of leave.
24 Q Do you understand that you need a doctor's
25 certification for any leave that you take under

15

1   FMLA?
2   A   Yes.  To get FMLA, to start it, to start a policy
3       you need your doctor's forms filled out and turned
4       in and approved.
5   Q   You were asking for intermittent FMLA leave,
6       correct?  Do you know what that term means?
7   A   Yes, I do.
8   Q   What does it mean?
9   A   Intermittent is from time-to-time for a period of
10      days at a time.  Basically no schedule.
11  Q   What do you believe Dr. Post meant in Number 8
12      when he said that your expected frequency is four
13      times per six months?
14  A   I believe that was his opinion.  I don't think he
15      could pinpoint the exact times and days or amounts
16      of time I would need.  I think that was his
17      opinion on what he felt.
18  Q   And you believe that despite that opinion you were
19      entitled to take up to 60 days whenever you wanted
20      to?
21  A   Whenever I was -- whenever I needed to take it I
22      believe I was entitled.
23  Q   Okay.  When were you hired at Marinette Marine?
24  A   10/15/1999 -- 11/15/1999.
25  Q   Would it be fair to say that during your

16

1       employment you had a number of attendance issues?
2   A   No.
3   Q   You don't believe you did?
4   A   I believe there were attendance issues, but not a
5       number of them.
6   Q   Okay.  Explain to me your understanding of the
7       attendance policy at Marinette Marine?
8   A   Which one?
9   Q   The latest one at the time of your termination.
10  A   They had an 11 point attendance policy put in
11      place.
12  Q   Was it 11 points or 10 points?
13  A   I think at the time it was 11.
14  Q   Okay.
15  A   But I could be wrong, it could have been 10, it
16      very well could have been.  It went from 8 to 9 to
17      10 within the last couple of years I was working
18      there.
19  Q   How did you incur an attendance point?
20  A   How would I take it?
21  Q   How would you get an attendance point?
22  A   Calling in sick on any given day, any regular
23      scheduled work day.
24  Q   So if you missed a full day did you get a full
25      point?

17

1   A   Yes.
2   Q   And what if you missed a half day?
3   A   It would be a half occurrence.
4   Q   What happened once you got to four attendance
5       points?
6   A   There would be a written warning.
7   Q   And then what happened once you got to six
8       attendance points?
9   A   I think there would be a meeting with a verbal
10      warning and, I think, a possible three-day
11      suspension.
12  Q   What about at 9 points?
13  A   That was a final warning and I'm pretty sure that
14      was a three-day suspension.
15  Q   And at 10 points what happened?
16  A   10 or 11 would have been termination.
17  Q   Did you ever have your points deducted after a
18      period of time?
19  A   Yes, from one year from the time that you took
20      your very first point that's when it would be
21      deducted from your points.
22  Q   So basically you continued to get these points,
23      but after one year expired that point would be
24      deducted; is that correct?
25  A   Yes.

18

1   Q   How many written attendance warnings did you
2       receive during your employment at
3       Marinette Marine?
4   A   I'm not sure.
5   Q   How many three-day suspensions did you have during
6       your time for attendance at Marinette Marine?
7   A   I don't think any.
8           MR. AZIERE:  Would you mark that,
9       please.
10          (Exhibit Number 2 was marked.)
11  BY MR. AZIERE:
12  Q   I'm handing you Exhibit 2, which is a packet
13      consisting of a number of pages from your
14      personnel file.  Each of these pages has been
15      provided in response to your discovery requests.
16      And if you look at the bottom of each of these
17      pages you will see that they are numbered.  They
18      say MMC and then a number behind that.  I want to
19      talk to you about each one of these, so let me
20      know when you're done flipping through them.
21  A   Okay.
22  Q   Let's look at the first page.  The first page, if
23      you look at the bottom, it's marked MMC000315.  Do
24      you see that?
25  A   Yes.

19

1 Q This first page is a written warning that you
2 received on 8/18/2004, correct?
3 A Yes.
4 Q And you have signed and dated this form, correct?
5 A Yes.
6 Q So you received a written warning on that date for
7 incurring 4 attendance points, correct?
8 A Yes.
9 Q If you could flip to the next page. The next page
10 is marked 314. You can see on the bottom right.
11 This is another warning that you received, and
12 you've signed this one on 10/12/2004, correct?
13 A Yes.
14 Q You received this warning for your attendance
15 violations, correct?
16 A Yes.
17 Q Do you contest any of these attendance points that
18 you received?
19 A **I would need some good amount of time to go**
20 **through and look these over and go back to eight**
21 **years ago.**
22 Q Okay.
23 A **There were several issues with the attendance**
24 **policies. And, yes, there were times -- I don't**
25 **know about these first two, but there were times,**

20

1 **yes, I did contest points.**
2 Q Okay. Flipping to the next page, which is marked
3 311, this is another first warning that you
4 received and signed on 3/10/2005, correct?
5 A Yes.
6 Q And this is because you had incurred 5.5
7 attendance points, correct?
8 A Yes.
9 Q And that does bear your signature on that page?
10 A Yes.
11 Q Flipping the page again to the page marked 309.
12 This is a "2nd Warning In Lieu of Suspension" that
13 you received in May of 2005, correct?
14 A Yes.
15 Q And you refused to sign this particular document,
16 did you not?
17 A Yes.
18 Q Flipping the page. The next page is marked 308.
19 Do you see that?
20 A Yes.
21 Q This is another "2nd Warning In Lieu of
22 Suspension" that you received on 8/31/2005,
23 correct?
24 A Yes.
25 Q And you refused to sign this document, correct?

21

1 A Yes.
2 Q And you received this "2nd Warning In Lieu of
3 Suspension" because you had incurred 7 attendance
4 points, correct?
5 A Yes.
6 Q Flipping to the next page. This is marked 302.
7 This is a third "2nd Warning In Lieu of
8 Suspension" that you received on 12/12/2005,
9 correct?
10 A No.
11 Q What do you mean no?
12 A **It's the "2nd Warning in Lieu of Suspension."**
13 Q What did I say?
14 A **Third.**
15 Q I'm sorry. No, I said this is a third 2nd
16 warning. So this is the third time you've
17 received a "2nd Warning In Lieu of Suspension,"
18 correct?
19 A Yes.
20 Q And this was on 12/12/2005, correct?
21 A Yes.
22 Q You refused to sign this document, Page
23 Number 302, as well, correct?
24 A Yes.
25 Q Flipping the page, the next page is marked 137.

22

1 This is a "1st Warning" that you received on
2 5/15/2006, correct?
3 A Yes.
4 Q And you had received this warning because you had
5 incurred 5 attendance points as of that date,
6 correct?
7 A Yes.
8 Q You did sign this document, Page Number 137,
9 correct?
10 A Yes.
11 Q Flipping to the next page, which is marked 120.
12 Again, this is a "2nd Warning In Lieu of
13 Suspension," correct?
14 A Yes.
15 Q You received this on 8/16/2006 because you had
16 incurred 6 attendance points, correct?
17 A Yes.
18 Q And you did, in fact, sign Page 120, correct?
19 A Yes.
20 Q Flipping to the next page, which is marked 118.
21 This is a "1st Warning" for attendance violation,
22 correct?
23 A Yes.
24 Q You received this on 10/12/2006, correct?
25 A Yes.

23

1  Q  And you received this because you had incurred 5.5
2     attendance points, correct?
3  A  Yes.
4  Q  You signed this document, did you not?
5  A  Yes.
6  Q  Flipping to the next page which is marked 254.
7     This is a "1st Warning" that you received on
8     5/12/2008, correct?
9  A  Yes.
10 Q  This was for accumulating 5 attendance points as
11    of that date, correct?
12 A  Yes.
13 Q  You refused to sign this document at Page 254,
14    correct?
15 A  Yes.
16 Q  Flipping to the next page, which is marked 253.
17    This is a "3rd Warning In Lieu of Suspension" that
18    you received, correct?
19 A  Yes.
20 Q  And you received this on 10/30/2008 for
21    accumulating 9 attendance points, correct?
22 A  Yes.
23 Q  You did, in fact, sign this document, correct?
24 A  Yes.
25 Q  Flipping the page to the document that's marked

24

1     297.  This is a "3rd Warning In Lieu of
2     Suspension" that you received on 3/12/2009,
3     correct?
4  A  Yes.
5  Q  And you received this because you had accumulated
6     I believe it's 9 attendance points as of that
7     time, correct?
8  A  Yes.
9  Q  And you did, in fact, sign this document at
10    Page 297, correct?
11 A  Yes.
12 Q  The next page is marked 218.  This is a "1st
13    Warning" that you received for incurring
14    4 attendance points on 7/13/2010, correct?
15 A  Yes.
16 Q  And did you, in fact -- I don't think you signed
17    this one.  You did not sign this one, it just has
18    your name printed there, correct?
19 A  Yes.  The reason that my signature isn't there
20    is my foreman wouldn't allow me to use my
21    signature.  He said it was too sloppy.  So he
22    forced me to print everything from this point
23    forward.
24 Q  And then the final page of this exhibit is marked
25    217 and this is another warning that you received

25

1     for incurring, a second warning that you received
2     for incurring 7 occurrences on 11/3/2010, correct?
3  A  Yes.
4  Q  And you did, in fact, sign that page, correct?
5  A  Yes.
6  Q  So out of this packet in Exhibit 2 you had seven
7     first warnings, you had five second warnings, and
8     you had two third warnings, correct?
9  A  Yes.
10 Q  Would you consider that a number of attendance
11    issues during your employment at Marinette Marine?
12 A  Yes.  And I was told by the HR director, Tami
13    Hansen, to use all points and vacation before
14    using FMLA.
15 Q  Okay.  When did she tell you that?
16 A  I don't have the approximate date.
17 Q  Do you have any documents that support that?
18 A  No.  It was over the phone.
19 Q  Any other individuals who heard that?
20 A  No.
21 Q  Did she give you any explanation as to why you
22    were to do that?
23 A  That's the way they wanted it done.
24 Q  Who is "they"?
25 A  The company, Marinette Marine.

26

1  Q  Approximately when did this conversation take
2     place?
3  A  Probably late in 2010.
4  Q  So that was well after all your attendance issues
5     that are set forth in Exhibit 2, correct?
6  A  Yes.
7  Q  In May of 2011 you attended a meeting regarding
8     your attendance, correct?
9  A  Yes.  Actually I don't know.
10 Q  Do you remember having a meeting on May 12, 2011?
11 A  I don't remember specific dates and meetings.
12        MR. AZIERE:  Would you mark that,
13    please.
14        (Exhibit Number 3 was marked.)
15 BY MR. AZIERE:
16 Q  I'm handing you Exhibit 3, which is a transcript
17    from the 5/12/2011 attendance meeting, the 9-point
18    attendance meeting for you.  Please take a minute
19    to review that and let me know when you're done.
20 A  Okay.
21 Q  Does that refresh your recollection of the May,
22    2011 attendance meeting that you attended?
23 A  It helps.
24 Q  I'm going to ask you about the individuals that
25    are listed in Exhibit 3 that are listed as

27

1    attending that meeting.
2         Who is Michelle Hermes, the first person
3    listed on Exhibit 3?
4  A  I think she is Tami Hansen's assistant.
5  Q  Who is Tami Hansen?
6  A  She, I think, at the time was the director of HR.
7  Q  What about Rodney Klann?
8  A  Rodney was my foreman at the time.
9  Q  Mike Tanguay?
10 A  He was a union representative.
11 Q  And Kristina Adkins?
12 A  I think she was taking notes.
13 Q  Do you think she was taking these notes that are
14   contained in Exhibit 3?
15 A  Yes, I do.
16 Q  Do you recall her taking those notes?
17 A  Yes, I do.  Not those notes in particular, but I
18   do recall notes being taken.
19 Q  Does the transcript that's set forth in Exhibit 3
20   accurately reflect the discussion that took place
21   on the 5/12/2011 meeting, to the best of your
22   recollection?
23 A  To the best of my recollection.  It may not be
24   exact.
25 Q  Is there anything specifically that you can recall

28

1    from that meeting that was discussed that is not
2    present in Exhibit 3?
3  A  Not at that I remember.
4  Q  As of the date of this attendance meeting on
5    May 12, 2011 you had been assessed 14-and-a-half
6    points with five days of FMLA pending, correct?
7  A  Yes.
8  Q  What happened with regard to those five days of
9    FMLA leave?
10 A  They were approved.
11 Q  So that brought you down to 9-and-a-half
12   attendance points, correct?
13 A  Yes.  I'd have to -- yes.
14 Q  One more occurrence after that date and you could
15   have been terminated, correct?
16 A  Yeah, half an occurrence.
17 Q  Half an occurrence.  Pull out your Exhibit 1, your
18   discovery responses again.  And, please, turn to
19   the page that's marked 001012.  There's a
20   four-page document that starts at 001012 and goes
21   through 001015.  Please take a minute to take a
22   look at that.
23 A  Okay.
24 Q  Now, this document that starts on Page 001012,
25   this is the "Attendance Incident Detail" report

29

1    that was presented to you during that May, 2011
2    meeting, correct?
3  A  This was the point system in place.
4  Q  If you can take a look at the fourth page of that
5    document, which is marked 001015.  Tell me when
6    you're there.
7  A  I'm there.
8  Q  It indicates that you had 14.5 occurrences,
9    correct?
10 A  Yes.
11 Q  And this document bears your signature with the
12   date 5/12/2012 -- I'm sorry, 2011, correct?
13 A  Yes.
14 Q  It's also signed by union representative Mike
15   Tanguay, correct?
16 A  Yes.
17 Q  Now, if we flip back one page to the page that's
18   marked 001014.  You can see there are a number of
19   dates here that start on 5/3 and run through 5/9
20   that say "FMLA Pending," correct?
21 A  Yes.
22 Q  Are those the FMLA pending dates that we just
23   discussed a minute ago?
24 A  Yes.
25 Q  And these are the dates that you state eventually

30

1    were approved, correct?
2  A  Yes.
3  Q  So, again, that would leave you at 9-and-a-half
4    attendance points as of May 12, 2011, correct?
5  A  Yes.
6  Q  You do not dispute any of those 9-and-a-half
7    attendance points, do you?
8  A  No.
9  Q  Okay.  Now, I want you to flip to the page that's
10   marked 1022.  It's actually 001022.  And, again,
11   this is in the packet of documents that you
12   provided in response to your discovery requests.
13   Let me know when you're there.
14 A  Okay.
15 Q  Now, starting at -- there's a packet of documents
16   starting at 001022 and running through 001024.  Do
17   you see that?
18 A  Yes.
19 Q  This is the "Attendance Incident Detail" report
20   for 5/26/2011, correct?
21 A  This is our point system that was in place at the
22   time.
23 Q  At that time at 5/26/2011, correct?
24 A  Yes.
25 Q  And on Page 001024 you signed this document,

31

1  correct?
2  A  Yes.
3  Q  If we look right above your signature it says that
4     you had 9.5 occurrences, correct?
5  A  Yes.
6  Q  And right above that we can see that the dates
7     that we previously discussed for pending FMLA,
8     5/3/2011 through 5/23/2011, all of those were
9     approved, correct?
10 A  Yes.
11 Q  So, again, as you testified earlier, you do not
12    dispute any of the 9.5 occurrences that remain on
13    Page 001024, correct?
14 A  No. No, I don't dispute them.
15 Q  All right. On July 22, 2011 you had a termination
16    meeting, correct?
17 A  Yes.
18 Q  You were told you were being terminated for
19    attendance violations, correct?
20 A  Yes.
21 Q  Do you remember who was at that meeting?
22 A  Tami Hansen, John Semrau and probably Michelle, I
23    think, was taking notes that particular day. I
24    think.
25          (Exhibit Number 4 was marked.)

32

1  BY MR. AZIERE:
2  Q  Exhibit 4 is a transcript from the termination
3     meeting that took place on July 22, 2011. Please
4     take a minute to review that and let me know when
5     you're done.
6  A  Okay.
7  Q  Does Exhibit 4 refresh your recollection with
8     regard to the meeting that took place 7/22/2011?
9  A  Yes.
10 Q  I want to talk to you again about who was present
11    at that meeting as listed on the top of Exhibit 4.
12          First it says Tami Hansen. Is that the
13    same Tami Hansen that was at the May meeting?
14 A  Yes.
15 Q  And Rodney Klann, is that the same Rodney Klann
16    who was at the May of 2011 meeting?
17 A  Yes.
18 Q  What about Jim Johnson? Who is Jim Johnson?
19 A  He is the union representative. I don't recall
20    him being there.
21 Q  What about Richard Robinson?
22 A  He's another union rep. He was there. And I made
23    a mistake. It wasn't John Semrau, it was Rich
24    Robinson.
25 Q  And Kristina Adkins, that's the same Kristina from

33

1  the May, 2011 meeting; is that correct?
2  A  Yes.
3  Q  Does Exhibit 4 accurately reflect the discussion
4     that took place during the July 22, 2011
5     termination meeting?
6  A  Yes.
7  Q  Is there anything about that meeting that you can
8     recall being discussed that is not reflected in
9     Exhibit 4?
10 A  No.
11 Q  Let's turn back to your discovery responses again,
12    Exhibit 1. And, please, flip to the page that's
13    marked 001035. Starting on that page and running
14    through 001038, please let me know when you're
15    done reviewing that packet of documents.
16 A  Okay.
17 Q  If you look to the final page, the fourth page of
18    that particular document, this "Attendance
19    Incident Detail" report that's on page marked
20    001038. Do you see that?
21 A  Yes.
22 Q  It indicates that you had 13 occurrences as of
23    7/22/2011, correct?
24 A  Yes.
25 Q  And according to the company this was the basis

34

1  for your termination, correct?
2  A  The basis for my termination was the points for
3     FMLA were not approved.
4  Q  Did the company tell you that you were being
5     terminated because you had 13 attendance points?
6  A  They said I was being terminated because I had
7     13 points based on the FMLA being denied.
8  Q  Taking a look at this document, again, that is,
9     Page 001035 through 001038, tell me which of these
10    occurrences you dispute?
11 A  7/1/2011. 7/11/2011. 7/12/2011. 7/13/2011. And
12    7/18/2011.
13 Q  Now, the dates that you have just indicated those
14    are located on Pages 00100 -- I'm sorry, let me
15    try this again -- 001037 and 001738, correct?
16 A  No.
17 Q  They are not? Where are they indicated?
18 A  They're on those two pages, you just stated them
19    wrong.
20 Q  What did I state?
21 A  0010737.
22 Q  Oh, I'm sorry. So it's on Page 001037 and 001038,
23    correct?
24 A  Yes.
25 Q  And those are indicated on these two pages,

35

1  they're actually circled; is that correct?

2  A  Yes.

3  Q  Okay.  Why do you believe that you should have

4     been granted FMLA leave on 7/1/2011?

5  A  **According to the documents in Exhibit 1 I think I**

6     **was approved for State and -- State and Federal**

7     **FMLA.  And as long as I called it in to Matrix and**

8     **called it in to Marinette Marine it should have**

9     **been approved.**

10 Q  What documents can you show me that demonstrate

11    that you were entitled to leave on 7/1/2011?

12 A  **I'll need a minute.  Could you repeat the**

13    **question.**

14        MR. AZIERE:  Could you read that back,

15    please.

16        (Last question read.)

17        THE WITNESS:  On Exhibit 1, 001031, the

18    first paragraph states that, "Your leave under

19    federal and/or state leave entitlements has been

20    approved from 05/3/2011 to 12/31/2011."

21 BY MR. AZIERE:

22 Q  It says more than that though, doesn't it?

23 A  Yes.

24 Q  What else does it say?

25 A  **"Under the following policies."**

36

1  Q  Okay.  And then below that what does it say?

2  A  **"Because your leave will be unscheduled, it is not**

3     **possible to provide hours, days or weeks that will**

4     **be counted against your FMLA entitlement at this**

5     **time."**

6  Q  So how does this document, 001031, excuse your

7     leave on July 1, 2011?

8  A  **It says that I'm approved for State and Federal**

9     **leave.**

10 Q  But if I look down about three-quarters of the

11    page, and I look at where it says "Intermittent,

12    7/1/2011 for 8 hours, Family Medical Leave Act -

13    Denied (Frequency exceeded) - Wisconsin Family

14    Personal - Denied, (Frequency exceeded)."  Do you

15    see where it says that?

16 A  **Yes, I do.**

17 Q  So how does this document, 001031, grant you FMLA

18    leave for July 1, 2011?

19 A  **This particular document doesn't.**

20 Q  Do you have any documents that do?

21 A  **I don't have the State and Federal laws with me.**

22 Q  Okay.  Other than the State and Federal law are

23    there any documents that entitled you to leave on

24    July 1, 2011?

25 A  **Not to my knowledge.**

37

1  Q  What about for July 12, 2011?  What is the basis

2     for your -- I'm sorry, let's start with July 11,

3     2011.  What is the basis for your contention that

4     you're entitled to FMLA leave for that date?

5  A  **My contention for all five days would be the same**

6     **as the first day.**

7  Q  And other than State and Federal law you have no

8     documents that support that position; is that

9     correct?

10 A  **Support what position?**

11 Q  Your position that you are entitled to leave for

12    the five days indicated on Pages 0010137 and

13    001038.

14 A  **I believe with the laws and this particular**

15    **document, this document also approves it too.**

16 Q  Which document?

17 A  **The Fincantieri Group acknowledgement that I took**

18    **FMLA on particular days.  I don't know the**

19    **exact --**

20 Q  What page number?

21 A  **001031.**

22 Q  But you agree with me that Page 001031

23    specifically says you were denied leave on

24    7/1/2011 because it exceeded the frequency,

25    correct?

38

1  A  Yes.

2  Q  And you would agree with me that the same page

3     denies your leave on 7/1/2011 because of frequency

4     being exceeded, correct?

5  A  Yes.

6  Q  And you would also agree with me that it denies

7     your leave on 7/12/2011 because that date exceeded

8     your frequency, correct?

9  A  Yes.

10 Q  So are there any other documents that you can

11    point to that would support your position that you

12    were entitled to leave on any of the five days in

13    July we've previously discussed?

14 A  No.

15 Q  Now, we talked about the frequency of your FMLA

16    leave.  And, again, on Page 001010, please flip to

17    that, 001010 of Exhibit 1.  Turning to the second

18    page of that document that's marked 001011, you

19    talk about the fact that Dr. Post estimated the

20    frequency of your leave at four times per six

21    months.  Is it your position that there was a

22    modification to that estimated frequency?

23 A  No.

24 Q  You don't allege that that was ever altered by

25    Dr. Post?

39

1  **A**  **No.**

2  MR. AZIERE: Would you mark that,

3  please.

4  THE WITNESS: Actually I think I do

5  recall this. There was whiteout on it at one

6  point. With the original document you would have

7  noticed the whiteout, I think.

8  BY MR. AZIERE:

9  **Q**  Is it your position that Dr. Post ever gave notice

10  to anyone that there was a modification of the

11  original frequency?

12  **A**  **Yeah, there's a letter in here.**

13  **Q**  Okay. The letter you're talking about is on the

14  second-to-last page which is marked 001043,

15  correct?

16  **A**  **Yes.**

17  **Q**  Now, this is a July 26, 2011, letter from Dr. Post

18  to Yvonne Rangl and to Tami Hansen at

19  Marinette Marine; is that correct?

20  **A**  **Yes.**

21  **Q**  And from this letter it's clear that it was faxed

22  from Dr. Post to Yvonne Rangl and Tami Hansen,

23  correct?

24  **A**  **Yes.**

25  **Q**  In the letter Dr. Post talks about a fax he

40

1  received on 7/6/2011. Do you see where that is?

2  **A**  **Yes.**

3  **Q**  Are you familiar with the fax that he's referring

4  to?

5  **A**  **Yes.**

6  **Q**  Yes?

7  **A**  **Yes.**

8  **Q**  What fax was that?

9  **A**  **Bear with me. It's in here. I saw it. It's**

10  **going to be directed at Dear Dr. Hansen, so it may**

11  **be confusing.**

12  **Q**  Is it 001032?

13  **A**  **Yes.**

14  MR. AZIERE: Okay. Okay.

15  (Exhibit Number 5 was marked.)

16  BY MR. AZIERE:

17  **Q**  I'm handing you Exhibit 5, which is the July 6,

18  2011 fax to Dr. Post from Karla Drew. Take a

19  minute to review that. Let me know when you're

20  done.

21  Have you had a chance to review

22  Exhibit 5?

23  **A**  **Yes.**

24  **Q**  This is the July 6, 2011 fax that's referred to in

25  Dr. Post's July 26, 2011, letter, correct?

41

1  **A**  **Yes.**

2  **Q**  And according to Dr. Post's July 26, 2011 letter

3  there is a number of confusing issues with

4  Exhibit 5; is that correct?

5  **A**  **Yes.**

6  **Q**  Do you believe there are confusing inaccuracies on

7  Exhibit 5?

8  **A**  **Yes, I do.**

9  **Q**  And what are those confusing inaccuracies?

10  **A**  **Well, I'm not a doctor, for one. It should have**

11  **been referred to Dr. Post. And they were looking**

12  **for a confirmation on Number 7 of the FMLA**

13  **enrollment form. And the paperwork that I had I**

14  **never did find out what Number 7 was asking for.**

15  **Q**  Do you believe that Dr. Post was able to respond

16  to this July 6, 2011 fax prior to his July 26,

17  2011, letter?

18  **A**  **No, this wasn't asked for until this very same day**

19  **Matrix asked for this letter. And that might be**

20  **the very last page of this Exhibit 1 where they**

21  **were asking for Dr. Post to update the enrollment,**

22  **which he did along with this letter.**

23  Okay.

24  **A**  **I'm sorry, the enrollment -- updated enrollment is**

25  **missing.**

42

1  **Q**  Take a look at Exhibit 5 again.

2  **A**  **Okay.**

3  **Q**  Do you see on the top where it says "fax Cover

4  Sheet"?

5  **A**  **Yes, I do.**

6  **Q**  Right below that you would agree with me that in

7  the "To" line it says "Dr. Post," correct?

8  **A**  **Yes.**

9  **Q**  And Dr. Post was your treating physician, correct?

10  **A**  **Yes.**

11  **Q**  And then a couple lines down in the "Regarding"

12  line it says "James Hansen" and then "Needs

13  Attention." Would you agree with that?

14  **A**  **That's what it says.**

15  **Q**  And you are James Hansen, correct?

16  **A**  **Yes.**

17  **Q**  So this was properly addressed to Dr. Post and it

18  does address James Hansen, would you agree with

19  me?

20  **A**  **Indirectly.**

21  **Q**  Indirectly? How is it indirectly referring to

22  you?

23  **A**  **It's asking for somebody two different times, two**

24  **different people on multiple times.**

25  **Q**  Okay. Look at the top of Exhibit 5. Do you see

43

1 two lines, fax receipt lines. The second one that
2 is bold says July 06, 2011, and then it says
3 "08:37:24 via fax, Matrix Absence Management,
4 Page 001 of 004." Do you see that?
5 **A** Yes.
6 **Q** And if we flip the pages of Exhibit 5 we can see
7 that the second page has the same header and it
8 says "Page 002 of 004."
9 **A** Yes.
10 **Q** And then we flip to the third page of Exhibit 5,
11 same header, and it says "003 of 004." Do you see
12 that?
13 **A** Yes.
14 **Q** And then finally the fourth page of Exhibit 5 we
15 see that it has the same header only this time it
16 says "Page 004 of 004." Do you see that?
17 **A** Yes.
18 **Q** Would you agree with me that this indicates that
19 Matrix faxed this document to Dr. Post on July 6,
20 2011 at 8:37 a.m.?
21 **A** Yes.
22 **Q** Now, above that you can see another fax line. And
23 this says "7/6/11, 10:00 FROM," and then it says
24 T-175 P001/004 F-147." Do you see that line?
25 **A** Yes.

44

1 **Q** And if we flip the pages we can see that that
2 header is present only on every page it says
3 Page 2 of 4, Page 3 of 4 and Page 4 of 4. Do you
4 see that?
5 **A** Yes.
6 **Q** And, again, looking at the first page of Exhibit 5
7 on the very bottom it says "Matrix RCVD via fax
8 7/6/2011." Do you see where I'm indicating?
9 **A** Yes.
10 **Q** Would you agree with me that this indicates that
11 Exhibit 5 was faxed back to Matrix at 10:00 on
12 July 6, 2011?
13 **A** Yes.
14 **Q** And in the center of the first page of Exhibit 5
15 there's a notation that's handwritten that says
16 "7/6/11: Item Number 7 Confirmed." And then
17 there's a "P." Do you see where I'm indicating
18 that?
19 **A** I see "7/6/11, Item Number 7 Confirmed" with
20 **Dr. Post's signature.**
21 **Q** Okay. So would you agree with me that Dr. Post
22 responded to this July 6, 2011 fax on July 6, 2011
23 at 10:00 a.m.?
24 **A** Yes, I agree.
25 **Q** And Dr. Post did not alter your frequency or the

45

1 duration of your condition in this Exhibit 5, did
2 he?
3 **A** Not in Exhibit 5, no.
4 **Q** Okay. Turn back to Exhibit 1. And look, again,
5 at Dr. Post's letter which is marked 001043. Let
6 me know when you're there.
7 **A** Okay.
8 **Q** The very last sentence of the first paragraph that
9 starts with "Further insight into his clinical
10 course." Do you see that?
11 **A** Yes.
12 **Q** "I am amending question 8's answer to increasing
13 the frequency to once a month for a duration of 2
14 to 5 days per episode." Do you see that?
15 **A** Yes.
16 **Q** Your original frequency estimated by Dr. Post was
17 four times every six months, correct?
18 **A** Four to six times every six months, yes.
19 **Q** Dr. Post in his July 26, 2011 letter amended that
20 to once a month, correct?
21 **A** Yes, that's what it says.
22 **Q** How much leave do you think that entitled you to?
23 **A** I don't necessarily think this entitled me to any
24 **leave. This was just the approval that they were**
25 **asking for from Matrix.**

46

1 **Q** The approval from who?
2 **A** From my doctor.
3 **Q** This was the estimate that your doctor provided
4 for how many times or how frequently you would
5 need FMLA leave, correct?
6 **A** That was the estimate and his opinion on how much
7 **he thought I may or may not need.**
8 **Q** Okay.
9 (Exhibit Number 6 was marked.)
10 BY MR. AZIERE:
11 **Q** I'm handing you Exhibit 6, which is a chart of the
12 FMLA leave that is referred to in your complaint.
13 Please take a minute to review that and let me
14 know when you're done.
15 **A** Okay.
16 **Q** The first column states "Date From Complaint."
17 And taking a look at each of these, these are the
18 dates in your complaint that you referred to for
19 FMLA leave, correct?
20 **A** Yes.
21 **Q** So May 3rd through the 6th, 2011 was alleged in
22 your complaint, correct?
23 **A** Yes.
24 **Q** As was May 9, 2011, correct?
25 MR. AZIERE: Would you mark that.

47

1 (Exhibit Number 7 was marked.)
2 BY MR. AZIERE:
3 Q I'm going to give you Exhibit 7, which is your
4 Second Amended Complaint in this case. Please
5 turn to Page 4 of Exhibit 7 and look at
6 Paragraph 23.
7 In Paragraph 23 the first date of your
8 claimed FMLA leave is May 3rd through the 6th of
9 2011, correct?
10 A Yes.
11 Q And that's indicated in the first block on
12 Exhibit 6, correct?
13 A Yes.
14 Q The second date from Paragraph 23 is May 9, 2011,
15 correct?
16 A Yes.
17 Q And in Exhibit 6 May 9, 2011 is indicated as the
18 second date, correct?
19 A Yes.
20 Q Your complaint lists May 23rd as the next date.
21 May 23rd is in Exhibit 6 as the next date,
22 correct?
23 A Yes.
24 Q Your complaint indicates on Paragraph 23 May 31st
25 through June 1st of 2011. And in the next block

48

1 on Exhibit 6 it indicates May 31st through June 1,
2 2011, correct?
3 A Yes.
4 Q Your complaint next indicates June 13th through
5 the 15th of 2011. And Exhibit 6 has the next date
6 as June 13th through 2011, correct?
7 A Yes.
8 Q Your complaint at Paragraph 23 lists June 22, 2011
9 as the next date. And on Exhibit 6 June 22, 2011
10 is the next indicated date, correct?
11 A Yes.
12 Q The next date in your complaint is June 27, 2011.
13 And the next date on Exhibit 6 is June 27, 2011,
14 correct?
15 A Yes.
16 Q The next date in Paragraph 23 of your complaint is
17 July 1, 2011. And the next date in Exhibit 6 is
18 July 1, 2011, correct?
19 A Yes.
20 Q The next date in Paragraph 23 of your complaint is
21 July 11 through the 13th of 2011, which is the
22 same date, July 11th through the 13th, 2011 in
23 Exhibit 6, correct?
24 A Yes.
25 Q And the final date on Paragraph 23 of your

49

1 complaint is July 18, 2011, which is also the
2 final date on Exhibit 6, July 18, 2011, correct?
3 A Yes.
4 Q So Exhibit 6 lists all the dates that you have
5 indicated in your complaint that are relevant to
6 your cause of action against Fincantieri and
7 Marinette Marine, correct?
8 A Yes.
9 Q Now let's go up to May 3rd through the 6th, 2011.
10 You allege that those dates were approved for
11 FMLA, correct?
12 A Yes.
13 Q And that is indicated on Exhibit 6, correct?
14 A Yes.
15 Q May 9th you indicated in your complaint that that
16 date was approved for FMLA, which was also
17 indicated on Exhibit 6, correct?
18 A Yes.
19 Q May 23rd was also approved as is indicated in
20 Exhibit 6, correct?
21 A Yes.
22 Q May 31st through June 1st of 2011 was also
23 approved, according to your complaint, which is
24 indicated on Exhibit 6, correct?
25 A Yes.

50

1 Q June 13th through the 15th of 2011 was approved,
2 according to your complaint, as is indicated on
3 Exhibit 6, correct?
4 A Yes.
5 Q June 22, 2011, according to your complaint, was
6 approved, which is indicated in Exhibit 6,
7 correct?
8 A Yes.
9 Q June 27th of 2011 was approved, which is indicated
10 on Exhibit 6, correct?
11 A Yes.
12 Q And then the last dates in July, July 1st,
13 July 13th -- 11th through the 13th and July 18th
14 you allege all of those were denied by
15 Marinette Marine and they are indicated as denied
16 in Exhibit 6, correct?
17 A Yes.
18 Q Now, again, looking at Exhibit 6, if we go up to
19 that first date, May 3rd through the 6th of 2011
20 was your first occurrence in the dates that you
21 have indicated in your complaint, correct?
22 A Yes.
23 Q By June 27, 2011 you are at your seventh
24 occurrence, correct?
25 A Yes.

51

1  Q  And then July 1st of 2011 is your eighth
2     occurrence in the dates set forth in your
3     complaint, correct?
4  A  Yes.
5  Q  July 11th through the 13th is your ninth
6     occurrence, correct?
7  A  Yes.
8  Q  And July 18th is your tenth occurrence, correct?
9  A  Yes.
10 Q  According to Dr. Post's letter, which is found in
11    Exhibit 1, which is marked 001043, it was
12    anticipated that you would have one incident, or
13    one episode, or one occurrence per month, correct?
14 A  It was an estimate. It was an opinion.
15 Q  But you had four occurrences in May alone, did you
16    not?
17 A  Yes.
18 Q  And you had three episodes in June of 2011, did
19    you not?
20 A  Yes.
21 Q  And you had three episodes in July of 2011, did
22    you not?
23 A  Yes.
24 Q  Then how in the world can you claim that you did
25    not exceed the frequency established by your own

52

1     doctor?
2  A  The frequency established by my doctor was an
3     opinion. It was an estimate.
4  Q  And you believe that you're entitled to leave
5     outside of that opinion or estimate of your
6     doctor?
7  A  Yes.
8  Q  What evidence do you have that supports that
9     contention?
10       MS. REIB: Just object. That calls for
11    a legal conclusion. You can go ahead and answer.
12       THE WITNESS: On top of each page that
13    Matrix returns to me stating whether or not I was
14    approved or denied for FMLA it shows that I was
15    approved for State and Federal FMLA. And I would
16    say that State and Federal laws also approved me
17    for up to 60 days of FMLA.
18 BY MR. AZIERE:
19 Q  Are there any documents that are not contained in
20    Exhibit 1 that support your contention that you
21    were entitled to FMLA leave for the days denied as
22    set forth in your complaint?
23 A  Yes, I'm sorry, I do have that updated version of
24    the FMLA approval form.
25 Q  Did you ever specifically obtain a letter from

53

1     Dr. Post that addressed your absence on July 1,
2     2011?
3  A  A letter directly referring to that day?
4  Q  Yes.
5  A  Not to my knowledge.
6  Q  Did you obtain a letter from any health care
7     provider that directly addressed the date of
8     July 1, 2011 and your absence on that day?
9  A  Not to my knowledge.
10 Q  What about for July 11th, 12th, 13th and 18th, did
11    you ever obtain a letter from any health care
12    provider that specifically addressed your absence
13    on any of those dates?
14 A  Could you repeat the question?
15       MR. AZIERE: Could you read that back,
16    please.
17       (Last question read.)
18       THE WITNESS: Yes, it's Exhibit 1,
19    001043, probably three-quarters of the way down in
20    the main paragraph it covers, it says,
21    furthermore, "I am increasing to cover the entire
22    year of 2011 until December 31st."
23 BY MR. AZIERE:
24 Q  You're referring to the July 26, 2011 letter?
25 A  I'm referring to all of them.

54

1  Q  No, I'm saying you're referring to the July 26,
2     2011 letter from Dr. Post --
3  A  Yes.
4  Q  -- to Yvonne Rangl and Tami Hansen, correct?
5  A  Yes.
6  Q  And this is found on Page 001043, correct?
7  A  Yes.
8  Q  Can you show me where in this document it
9     specifically refers to your absence on July 1,
10    2011?
11 A  Well, three-quarters of the way down it starts
12    about -- three-quarters of the way down it says,
13    "I am increasing to cover the entire year of 2011
14    until December 31st."
15 Q  I understand that. But this letter does not
16    specifically address your absence on July 1, 2011,
17    does it?
18 A  This letter specifically addresses the entire year
19    of 2011.
20 Q  Point me where in this letter it specifically
21    mentions by date July 1, 2011.
22 A  It doesn't.
23 Q  And it doesn't specifically by date identify
24    July 11, 2011, does it?
25 A  No.

55

1 Q It doesn't specifically by date identify July 12,
2    2011, does it?
3 A No.
4 Q And it doesn't specifically identify by date
5    July 13 or July 18, 2011, does it?
6 A No.
7 Q This letter that's found at Page 001043 was
8    written by Dr. Post on July 26, 2011, correct?
9 A Yes.
10 Q That was after your absences in July of 2011 that
11   were counted as absences by Marinette Marine,
12   correct?
13 A Yes.
14 Q Do you have any letter from any health care
15   provider that specifically addresses any of the
16   July dates that we've discussed previously?
17 A Yes.
18 Q Where?
19 A I would say that Exhibit 1, 001043, specifically
20   covers the entire year of 2011, which is those
21   five days.
22 Q Other than this document do you have any other
23   letters from any health care providers that
24   specifically address any of the July dates that
25   are set forth in your complaint and Exhibit 6?

56

1 A No.
2 Q Take a look at Page 001010 again. Again, this is
3    the "Certification of Health Care Provider for
4    Employee's Serious Health Condition" that we
5    discussed earlier.
6        Do you have a certification form like
7    this for your absence that specifically addresses
8    your absence on July 1, 2011?
9 A Yes, I think I do at home.
10 Q And where is that?
11 A At home.
12 Q And it's your contention that it specifically
13   addresses your absence on July 1, 2011?
14 A I think it might.
15 Q What about the other absences in July that are set
16   forth in your complaint and Exhibit 6?
17 A I think that might cover those five days.
18 Q You believe that it specifically addresses those
19   dates?
20 A I'm not positive, but I think it very well might.
21 Q Okay. Again, I'd like a copy of that as soon as
22   possible.
23      MR. AZIERE: All right. Let's take
24   about a 10-minute break and then come back and
25   finish up in the next section.

57

1        (Recess taken.)
2 BY MR. AZIERE:
3 Q Okay. When we left off we were talking about a
4    number of things. I would like you to take out
5    Exhibit 1 again. I want to ask you about your
6    discovery responses themselves as opposed to
7    talking about the documents that are attached to
8    it.
9        So if you could take that out. And the
10   first thing I'd like to do is turn to Page 6 and
11   look at Interrogatory Number 5.
12       Okay. On Page 6 on Interrogatory
13   Number 5 I asked you -- I'm going to grab one
14   thing. On Page 6, Interrogatory Number 5, I asked
15   you to demonstrate any documents or provide any
16   documents that show that you requested and were
17   granted FMLA leave on or about January 1, 2009.
18   And you indicate that we should look at the pages
19   Bates stamped 1001 and 1002, and then 1005 and
20   1009. So I'd like to take a look at those.
21       First if you could turn to 1001 and
22   1002. Now, 1001, the two pages that start there,
23   is an intake form from Matrix, correct?
24 A Yes.
25 Q Can you tell me where in this document, these two

58

1    pages, does it indicate that you were ever
2    approved for any type of FMLA leave?
3 A This is after my FMLA that I had in 2010 that I
4    didn't end up using. I ended up taking points for
5    these days. This isn't even the current intake
6    form.
7 Q Do these two pages on 1001 and 1002 have any
8    indication that you have been approved for FMLA
9    leave for any period of time?
10 A No, it doesn't.
11 Q Turn to Page 001005. Now, in your response to
12   Interrogatory Number 5 where you are asked to
13   identify all documents that show that you
14   requested and were granted FMLA leave on
15   January 1, 2009 you also pointed to Pages 1005
16   through 1009. So I'd like you to take a look at
17   first Page 1005. Tell me when you're there. Are
18   you on Page 1005?
19 A Yeah, I'm reviewing it.
20 Q Okay.
21 A Okay.
22 Q Look at the second sentence at the top of the
23   page. It says, "This letter is to confirm your
24   requested leave of absence and is not a
25   determination of eligibility or approval." Did I

59

1  read that correctly?
2  **A  Yes.**
3  Q  So how does this document support your contention
4  that you requested and were approved leave on
5  January 1st of 2009?
6  **A  This document doesn't.**
7  Q  Okay.  Turning to Page 1006.  The second paragraph
8  contains one sentence that is both bolded and
9  underlined -- I'm sorry -- two sentences that are
10  bolded and underlined.  Do you see where I'm
11  indicating?
12  **A  Yes.**
13  Q  It reads, "This letter is ONLY about your
14  ELIGIBILITY based on federal and/or state
15  employment requirements.  APPROVAL of your leave
16  is pending medical certification."  Did I read
17  that correctly?
18  **A  Yes.**
19  Q  So how does this document prove that you were
20  approved for leave on January 1, 2009?
21  **A  Again, this document is wrong.  This is from 2010.**
22  **It's from a different case.  It's dated 2011 at**
23  **the top.  And if you go down to the fourth**
24  **paragraph it's going back to 2001 -- or 10/1/2010**
25  **and that's an old claim.**

60

1  Q  Okay.  So this document at 1006 does not support
2  your contention that you requested and were
3  granted FMLA leave on January 1, 2009, correct?
4  **A  No.**
5  Q  No -- Explain that answer, please.
6  **A  Could you repeat the question, please.**
7  MR. AZIERE:  Would you read that back,
8  please.
9  (Last question read.)
10  THE WITNESS:  No.  I don't even know
11  what we're talking about.
12  BY MR. AZIERE:
13  Q  Okay.  When you say "no" are you agreeing that
14  this does not support the position that you were
15  granted leave on January 1, 2009?
16  **A  I don't remember my claim from 2009.**
17  Q  Okay.  But can you tell me on Page 1006 does this
18  have anything to do with your claim in 2009?
19  **A  No.**
20  Q  Okay.  Let's look at Page 1007.  Does that page
21  have anything to do with your claim in 2009?
22  **A  No.**
23  Q  Page 1008, does that have anything to do with your
24  claim in 2009?
25  **A  No, but I found the lost document I was talking**

61

1  **about.**
2  Q  Which document is that?
3  **A  I'm sorry, the updated version of the**
4  **certification.**
5  Q  Where is that?
6  **A  Exhibit 1, 001010.**
7  Q  You mean the exhibit that's 001010?
8  **A  Yes.**
9  Q  Okay.  You contest that this is the updated
10  version?
11  **A  This is the version that had the dates that you**
12  **were asking for and then it went on to cover the**
13  **month.**
14  Q  Which dates?
15  **A  "Part A: Medical Facts," Number 1.**
16  Q  Okay.  What are you indicating?
17  **A  It says, "Approximate date condition commenced:**
18  **10/25/10, exacerbated" --**
19  Q  Exacerbated?
20  **A  "5/3/11.  Probable Duration of Condition:"  For**
21  **the month.**
22  Q  So according to Page 001010 your condition was
23  only expected to last for a month following
24  5/3/2011, correct?
25  MS. REIB:  I object that that misstates

62

1  his testimony.  Go ahead.
2  THE WITNESS:  Can you repeat the
3  question?
4  BY MR. AZIERE:
5  Q  Let me ask a different question.  You read a
6  section that said "exacerbated 5/3/11," correct?
7  **A  Yes.**
8  Q  And below that it read "Probable duration of
9  Condition: Month."
10  **A  Yes.  This is referring to the letter that they**
11  **asked for -- if we go all the way to -- this is**
12  **going back to the letter that they said that we**
13  **had the confusion on.**
14  Q  You're talking about Dr. Post's July 26, 2011
15  letter?
16  **A  Yes.**
17  Q  Okay.
18  **A  It asks for something to be updated.**
19  Q  Okay.
20  **A  And then on the next page I think where it said**
21  **that it covered the entire year.**
22  Q  Well, go back to Page 001010.  Flip the page to
23  001011.  Do you see that that page is signed by
24  Michael Post on 5/11/11, correct?
25  **A  Yes.**

63

1  Q  And if we go up to Number 8 it says, "Frequency,
2      4 times per 6 months," correct?
3  A  Yes.
4  Q  So how is this updating anything?
5  A  I'm not sure.
6  Q  Okay.  Let's go back to the line of questions I
7      was asking you.  Flip back to Page 6 of your
8      discovery responses.  Interrogatory Number 5 asks
9      you to identify any documents that show that you
10     requested and were granted FMLA leave on or about
11     January 1, 2009.
12           I asked you about your answer here, the
13     documents that were labeled 1001 through 1002 and
14     the documents labeled 1005 through 1009, and you
15     testified that none of those documents pertain to
16     your leave in January of 2009.
17           So do you have any documents that show
18     that you requested and were granted FMLA leave on
19     or about January 1st of 2009?
20 A  No.
21 Q  Okay.  Take a look at Interrogatory Number 6,
22     which is on that same page on Page 6.  It says,
23     "With regard to the allegations contained in
24     Paragraph 13 of your Complaint, identify any and
25     all documents that show that you 'requested' and

64

1      were 'granted permission to take intermittent FMLA
2      leave if necessary for the period of October 1st
3      through the 19th of 2010.'"  Did I read that
4      correctly?
5  A  Yes.
6  Q  In your answer you indicated those same pages,
7      pages numbered 1001 through 1002 and 1005
8      through 1009, correct?
9  A  Yes.
10 Q  Let's flip to those pages again.  Start with 1001.
11     Can you tell me where that shows that you were
12     granted permission to take leave for the period of
13     1 through 19 of 2010 -- October 1 through 19 of
14     2010?
15 A  It doesn't.
16 Q  Okay.  Let's flip to Page 1005.  Does that
17     document show that you were approved to take leave
18     for the period of October 1st through the 19th of
19     2010?
20 A  No.
21 Q  What about Page 1006, same question?
22 A  No.
23 Q  And Page 1007, where does that indicate that you
24     had permission to take intermittent leave for the
25     period from October 1st through the 19th of 2010?

65

1  A  It doesn't.
2  Q  What about Page 1008, same question?
3  A  It doesn't.
4  Q  And 1009, same question.
5  A  It doesn't.
6  Q  Flipping back to Page 6 in your discovery
7      responses.  Do you have any documents that show
8      that you were "granted permission to take
9      intermittent FMLA leave if necessary for the
10     period of October 1st through the 19th of 2010"?
11 A  Yes.
12 Q  Where are those documents?
13 A  Can I talk to her?
14           MR. AZIERE:  Sure.  Do you want to take
15     a break?
16           THE WITNESS:  Yeah, actually just a
17     quick one.
18           MR. AZIERE:  Why don't you step out so
19     you can talk to her.
20           (Recess taken.)
21           MR. AZIERE:  Let's go back on the
22     record.  All right.  I don't remember the last
23     question I asked.  Could you go back and read the
24     last question where we left off?
25           (The following questions and answers

66

1      were read:
2           "Question: Flipping back to Page 6 in
3      your discovery responses.  Do you have any
4      documents that show that you were "granted
5      permission to take intermittent FMLA leave if
6      necessary for the period of October 1st through
7      the 19th of 2010"?
8           Answer: Yes.
9           Question: Where are those documents?
10          Answer: Can I talk to her?")
11          THE WITNESS:  Yeah, I do have them.
12     They're at home.
13          MR. AZIERE:  Okay.  I would ask for
14     supplementation of that discovery response as soon
15     as possible.
16 BY MR. AZIERE:
17 Q  Take a look again at Page 6, Interrogatory
18     Number 7.  You were asked with regard to the
19     allegations in Paragraph 14 to "identify the time,
20     date and manner in which you 'informed Matrix'
21     that your absences on October 18th through 19th of
22     2010 were related to your serious health condition
23     and identify any documents."
24          You responded that you called the Matrix
25     case manager and you also "called Defendants

67

1   call-in line."
2           Do you have any documents that support
3   these claims or is it just the verbal phone calls
4   that you've indicated in your answer to
5   Interrogatory Number 7?
6   A   I have those documents.  They'd be at home.
7           MR. AZIERE:  Okay.  Again, I'd ask for
8   supplementation to the response to Interrogatory
9   Number 7 --
10          MS. REIB:  Okay.
11          MR. AZIERE:  -- and the request for
12  production of documents.
13  BY MR. AZIERE:
14  Q   Interrogatory Number 9, you were asked with regard
15  to the allegations contained in Paragraph 22 of
16  your complaint to "set forth all facts that
17  support your assertion that your absences
18  identified in Paragraph 22 did not exceed the
19  frequency and duration of your FMLA leave as
20  estimated by your doctor."
21          Your answer was, "Although the absences
22  exceeded the estimate, they did not exceed my FMLA
23  eligibility."  Did I read that correctly?
24  A   Yes.
25  Q   What did you mean by that?

68

1   A   It meant that it may have exceeded the doctor's
2   estimate, but it didn't exceed the 60 days that
3   are given by FMLA.
4   Q   So what did you believe your FMLA eligibility was?
5   A   Up to 60 days.
6   Q   For what time period?
7   A   5/3 through the 31st of that year, 2011.  5/3/2011
8   through 12/31/2011.
9   Q   Got it.  Interrogatory Number 10 on Page 7 you
10  were asked to, "Identify the 'additional
11  paperwork' to which you refer in Paragraph 25 of
12  your Complaint."
13          And your answer was, "Plaintiff offered
14  to provide an updated certification or any other
15  medical documentation Defendant desired regarding
16  Plaintiff's FMLA qualifying absences."  Did I read
17  that correctly?
18  A   Yes.
19  Q   When did you offer to provide an updated
20  certification?
21  A   I did give the updated certification.  I think it
22  was on the 11th -- 5/11/2011.
23  Q   Okay.  So the 5/11/2011 update is that located on
24  Page 001010?
25  A   No.

69

1   Q   Where is that located?
2   A   I think that's the document that I do have at home
3   still.
4   Q   To whom did you offer to provide that?
5   A   It was faxed to Tami Hansen and Yvonne Rangl at
6   Matrix.
7   Q   When?
8   A   5/11/2011.
9   Q   Please take out Exhibit 7, which is your "Second
10  Amended Complaint."  Actually -- Okay.  Let me
11  back up a minute.
12          In the "Second Amended Complaint" it's
13  Paragraph 27.  It was Paragraph 25 in your
14  original complaint.  So look at Paragraph 27 on
15  Page 4 of your complaint, which is Exhibit 7.  Let
16  me know when you're done reading that.
17  A   Okay.
18  Q   So in Paragraph 27 you say, "At the time of his
19  termination, Plaintiff told Defendants that his
20  absences on or about July 1, 11, 12, 13 and 18
21  should be deemed FMLA leave, not occurrences.
22  Plaintiff offered to provide additional paperwork,
23  but Defendants did not respond or otherwise
24  request further medical information."
25          That's the additional paperwork that's

70

1   referred to in Interrogatory Number 10.  So to
2   whom did you offer to provide that documentation?
3   A   To HR, Tami Hansen at Marinette Marine, and Yvonne
4   Rangl at Matrix, and Yvonne Rangl's boss at
5   Matrix.
6   Q   Did you provide that additional paperwork?
7   A   Yes, it was faxed to both of them.
8   Q   When?
9   A   Probably on the 11th of 2011.  5/11/2011.
10  Q   But according to your complaint it was at the time
11  of your termination, which was July 22, 2011, that
12  you offered to provide additional paperwork.
13  A   I'm sorry, then I have my dates confused.  I don't
14  know right off the top of my head which day those
15  were faxed.  I do know they were faxed to them.
16  Q   Do you recall at the time of your termination
17  offering to provide this additional paperwork?
18  A   Yes.
19  Q   And to whom did you offer to provide
20  additional paperwork?
21  A   Tami Hansen, Rich Robinson, Jim Johnson.  And I
22  think there was one other person in there, the
23  person taking notes.
24  Q   Did you provide that additional paperwork?
25  A   Not that particular day, no.

71

1  Q  When did you?  Did you at any particular --
2  A  **Yes, I would say within a week or two of that**
3     **meeting I did provide it.**
4  Q  To whom did you provide it?
5  A  **I faxed it to Marinette Marine with attention to**
6     **Tami Hansen and I faxed it to Matrix with**
7     **attention to Yvonne Rangl.**
8  Q  And do you have a copy of that?
9  A  **No, I don't.**
10 Q  Do you have -- not with you -- do you have a copy
11    of it anywhere?
12 A  **I might at home.  I'd have to look.**
13 Q  Okay.  I'd like a copy in supplementation of the
14    discovery response if you find that.
15        Take a look at Page 8, Interrogatory
16    Number 15.  You were asked to, "Identify all steps
17    you have taken to seek employment since July 22,
18    2011."  And your response was, "During this period
19    of unemployment, Plaintiff complied with the
20    Unemployment Insurance requisites for job
21    searches."  Did I read that correctly?
22 A  **Yes.**
23 Q  What did you do to comply "with the Unemployment
24    Insurance Requisites for job searches"?
25 A  **I filled out two job applications a week and**

72

1     **submitted them to unemployment.**
2  Q  Two a week?
3  A  **Two a week is what they require.**
4  Q  And for whom did you apply, or to whom did you
5     apply?
6  A  **I don't have the list with me.**
7  Q  Do you have a list somewhere at home?
8  A  **I might.**
9  Q  I'd like a supplementation of that interrogatory
10    with a list of all the companies to which you
11    applied and all the positions to which you
12    applied.
13        On Page 9, Interrogatory 16, it says, it
14    asks you to, "Identify all positions for which you
15    have applied since July 22, 2011, including all
16    details regarding the position applied for, the
17    date of application, and the responses received."
18        Your answer was, "Plaintiff applied for
19    the position he currently holds in February of
20    2010."
21        Is that the only position for which you
22    applied from July 22, 2011 to present?
23 A  **No, I actually took a different job with Tradesman**
24    **International in early May.  May 3rd.**
25 Q  Prior to obtaining the job in February of 2012 did

73

1     you apply for any other positions?
2  A  **Yes, twice a week.**
3  Q  I'd like a supplementation for that interrogatory
4     as well with that information.
5        MR. AZIERE:  Let's take about a
6     five-minute break.  I think that's all I have.  I
7     just want to go through my notes one last time and
8     then we'll probably be done.
9        MS. REIB:  Good.
10       (Exhibit Numbers 8, 9 and 10 were
11       marked.)
12 BY MR. AZIERE:
13 Q  Okay.  Before we went off the record you mentioned
14    a couple times about faxes that you had sent to
15    somebody at Marinette Marine with regard to your
16    absences.  And you said you had a copy of those at
17    home.  And I have located three faxes.  I want to
18    see whether any of these are the ones that you
19    have been referring to.
20       The first one I'm handing you is
21    Exhibit 8.  This is a fax from you to it says
22    "Ms. Hansen."  I assume that that is Tami Hansen.
23    Please take a minute to look at that.
24       What is the date on Exhibit 8?
25 A  **The date of the fax or the date of the --**

74

1  Q  The date of the fax on the front page of
2     Exhibit 8.
3  A  **5/19/2011.**
4  Q  You have testified a couple of times about a
5     medical certification form, an updated form that
6     you sent in May of 2011 via facsimile.  Is that
7     Exhibit 8?
8  A  **I'm not sure.**
9  Q  Do you recall sending that fax that's marked as
10    Exhibit 8?
11 A  **I'm not sure.  I'm not sure right now.**
12 Q  Can you look at the first page of Exhibit 8.  Do
13    you see there's -- the very first page.  You see
14    there's a fax confirmation line on the very top
15    that says "John and Kathy Hansen" and provides a
16    number?
17 A  **Yes.**
18 Q  Is that your facsimile number?
19 A  **Yes.**
20 Q  Okay.  So is there any reason that you have to
21    believe that you did not send that facsimile on
22    the date at the time indicated on the facsimile
23    confirmation line at the top of Exhibit 8?
24 A  **This was sent by me.**
25 Q  Okay.  Take a look at Exhibit 9, which is a

75

1 facsimile dated July 23, 2011 to Tami Hansen from
2 James Hansen. Take a minute to review that.
3     Exhibit 9 consists of two fax pages from
4 you to Tami Hansen, correct?
5 **A** **(Witness nods.)**
6 **Q** Is that a "yes"?
7 **A** **Oh, yes.**
8 **Q** Do you recall sending that fax that is marked
9 Exhibit 9?
10 **A** **It was sent by me.**
11 **Q** Why did you send that fax to Tami Hansen?
12 **A** **I'm not sure right now.**
13 **Q** Is that the updated medical certification form
14 contained on Exhibit 9 that you testified to
15 previously?
16 **A** **No.**
17 **Q** I'm handing you what's been marked as Exhibit 10,
18 which is another fax, consists of nine pages,
19 faxed from you to Tami Hansen on July 23, 2011 at
20 8:22 a.m. Take a minute to review that.
21 **A** **Okay.**
22 **Q** Do you recall sending the fax that you are now
23 looking at that is marked Exhibit 10?
24 **A** **Yes.**
25 **Q** Does that fax, that exhibit, Exhibit 10, contain

76

1 the updated medical certification about which you
2 have testified previously today?
3 **A** **No.**
4 **Q** So it's your testimony that there's another
5 document out there that's not contained in the
6 three exhibits I just handed you that has an
7 updated medical certification form?
8 **A** **Yes.**
9 **Q** And do you believe that you sent that fax before
10 or after the last fax that you have in front of
11 you marked as Exhibit 10?
12 **A** **It would have been sent before. I'm not positive,**
13 **but I would say it was sent before.**
14 **Q** Was it sent before or after your termination?
15 **A** **After.**
16 **Q** Okay. Are there any other faxes that you sent
17 besides the three that you have in front of you
18 marked as Exhibits 8, 9 and 10 and the one that
19 you've testified to that you don't have in front
20 of you at this time?
21 **A** **I will go through everything I have and dig up**
22 **everything and get it to Erica.**
23     MR. AZIERE: Okay. Those are all the
24 questions I have. Thank you.
25     (Proceedings concluded at 2:58 p.m.)

77

1 STATE OF WISCONSIN )
             ) SS:
2 COUNTY OF MILWAUKEE )
3
4
5     I, LINDA J. SAARI, a Registered Merit
6 Reporter and Notary Public in and for the State of
7 Wisconsin, do hereby certify that the above deposition
8 of JAMES G. HANSEN was recorded by me on November 30,
9 2012, and reduced to writing under my personal
10 direction.
11     I further certify that I am not a
12 relative or employee or attorney or counsel of any of
13 the parties, or a relative or employee of such attorney
14 or counsel, or financially interested directly or
15 indirectly in this action.
16     In witness whereof I have hereunder set
17 my hand and affixed my seal of office at Milwaukee,
18 Wisconsin, this 6th day of December, 2012.
19
20
21
22     _____
              Notary Public
23
          In and for the State of Wisconsin
24
25 My Commission Expires: October 11, 2015.

'

**'additional** [1] - 68:10

**'granted** [1] - 64:1

**'informed** [1] - 66:20

**'requested'** [1] - 63:25

# 0

**001** [1] - 43:4
**0100** [1] - 34:14
**001005** [1] - 58:11
**001010** [10] - 10:10, 12:25, 38:16, 38:17, 56:2, 61:6, 61:7, 61:22, 62:22, 68:24
**001011** [4] - 13:2, 13:16, 38:18, 62:23
**001012** [3] - 28:19, 28:20, 28:24
**0010137** [1] - 37:12
**001014** [1] - 29:18
**001015** [2] - 28:21, 29:5
**001022** [2] - 30:10, 30:16
**001024** [3] - 30:16, 30:25, 31:13
**001031** [5] - 35:17, 36:6, 36:17, 37:21, 37:22
**001032** [1] - 40:12
**001035** [2] - 33:13, 34:9
**001037** [2] - 34:15, 34:22
**001038** [5] - 33:14, 33:20, 34:9, 34:22, 37:13
**001043** [9] - 3:16, 11:12, 39:14, 45:5, 51:11, 53:19, 54:6, 55:7, 55:19
**0010737** [1] - 34:21
**001738** [1] - 34:15
**002** [1] - 43:8
**003** [1] - 43:11
**004** [5] - 43:4, 43:8, 43:11, 43:16
**05/3/2011** [1] - 35:20
**06** [1] - 43:2
**08:37:24** [1] - 43:3

# 1

**1** [26] - 2:16, 3:21, 8:5, 36:7, 36:18, 36:24, 48:1, 48:17, 48:18, 53:1, 53:8, 54:9, 54:16, 54:21,
56:8, 56:13, 57:17, 58:15, 59:20, 60:3, 60:15, 61:15, 63:11, 64:13, 69:20
**10** [11] - 3:9, 4:15, 16:12, 16:15, 16:17, 17:15, 17:16, 68:9, 70:1, 73:10, 76:18
**10-minute** [1] - 56:24
**10/1/2010** [1] - 59:24
**10/12/2004** [1] - 19:12
**10/12/2006** [1] - 22:24
**10/15/1999** [1] - 15:24
**10/25/10** [1] - 61:18
**10/30/2008** [1] - 23:20
**1001** [8] - 2:3, 57:19, 57:21, 57:22, 58:7, 63:13, 64:7, 64:10
**1002** [5] - 57:19, 57:22, 58:7, 63:13, 64:7
**1005** [7] - 57:19, 58:15, 58:17, 58:18, 63:14, 64:7, 64:16
**1006** [4] - 59:7, 60:1, 60:17, 64:21
**1007** [2] - 60:20, 64:23
**1008** [2] - 60:23, 65:2
**1009** [5] - 57:20, 58:16, 63:14, 64:8, 65:4
**101** [1] - 2:3
**1022** [1] - 30:10
**1010** [3] - 43:23, 44:11, 44:23
**11** [9] - 16:10, 16:12, 16:13, 17:16, 37:2, 48:21, 54:24, 69:20, 77:25
**11/15/1999** [1] - 15:24
**11/3/2010** [1] - 25:2
**118** [1] - 22:20
**11th** [6] - 48:22, 50:13, 51:5, 53:10, 68:22, 70:9
**12** [7] - 3:16, 26:10, 28:5, 30:4, 37:1, 55:1, 69:20
**12-C-32** [1] - 1:7
**12/12/2005** [2] - 21:8, 21:20
**12/31/2011** [2] - 35:20, 68:8

**120** [2] - 22:11, 22:18
**12:55** [1] - 1:18
**12th** [1] - 53:10
**13** [6] - 33:22, 34:5, 34:7, 55:5, 63:24, 69:20
**137** [2] - 21:25, 22:8
**13th** [9] - 48:4, 48:6, 48:21, 48:22, 50:1, 50:13, 51:5, 53:10
**14** [1] - 66:19
**14-and-a-half** [1] - 28:5
**14.5** [1] - 29:8
**15** [2] - 4:8, 71:16
**15th** [2] - 48:5, 50:1
**16** [2] - 4:12, 72:13
**18** [5] - 2:20, 49:1, 49:2, 55:5, 69:20
**18th** [4] - 50:13, 51:8, 53:10, 66:21
**19** [2] - 64:13
**19th** [6] - 64:3, 64:18, 64:25, 65:10, 66:7, 66:21
**1st** [15] - 22:1, 22:21, 23:7, 24:12, 47:25, 49:22, 50:12, 51:1, 59:5, 63:19, 64:2, 64:18, 64:25, 65:10, 66:6

# 2

**2** [5] - 2:18, 14:7, 18:10, 44:3, 45:13
**200** [1] - 2:6
**2001** [2] - 59:24
**2005** [1] - 20:13
**2009** [13] - 57:17, 58:15, 59:5, 59:20, 60:3, 60:15, 60:16, 60:18, 60:21, 60:24, 63:11, 63:16, 63:19
**2010** [12] - 26:3, 58:3, 59:21, 64:3, 64:13, 64:14, 64:19, 64:25, 65:10, 66:7, 66:22, 72:20
**2011** [89] - 3:19, 26:7, 26:10, 26:22, 28:5, 29:1, 29:12, 30:4, 31:15, 32:3, 32:16, 33:1, 33:4, 36:7, 36:18, 36:24, 37:1, 37:3, 39:17, 40:18, 40:24, 40:25, 41:2, 41:16, 41:17, 43:2, 43:20, 44:12, 44:22, 45:19, 46:21, 46:24, 47:9, 47:14,
47:17, 47:25, 48:2, 48:5, 48:6, 48:8, 48:9, 48:12, 48:13, 48:17, 48:18, 48:21, 48:22, 49:1, 49:2, 49:9, 49:22, 50:1, 50:5, 50:9, 50:19, 50:23, 51:1, 51:18, 51:21, 53:2, 53:8, 53:22, 53:24, 54:2, 54:10, 54:13, 54:16, 54:19, 54:21, 54:24, 55:2, 55:5, 55:8, 55:10, 55:20, 56:8, 56:13, 59:22, 62:14, 68:7, 70:9, 70:11, 71:18, 72:15, 72:22, 74:6, 75:1, 75:19
**2012** [4] - 1:17, 72:25, 77:9, 77:18
**2015** [1] - 77:25
**20855** [1] - 2:6
**217** [1] - 24:25
**218** [1] - 24:12
**22** [12] - 31:15, 32:3, 33:4, 48:8, 48:9, 50:5, 67:15, 67:18, 70:11, 71:17, 72:15, 72:22
**23** [10] - 47:6, 47:7, 47:14, 47:24, 48:8, 48:16, 48:20, 48:25, 75:1, 75:19
**23rd** [3] - 47:20, 47:21, 49:19
**25** [2] - 68:11, 69:13
**253** [1] - 23:16
**254** [2] - 23:6, 23:13
**26** [10] - 2:21, 39:17, 40:25, 41:2, 41:16, 45:19, 53:24, 54:1, 55:8, 62:14
**262-241-8444** [1] - 2:4
**262-364-0250** [1] - 2:7
**27** [7] - 4:6, 48:12, 48:13, 50:23, 69:13, 69:14, 69:18
**27th** [1] - 50:9
**297** [2] - 24:1, 24:10
**2:58** [2] - 1:18, 76:25
**2nd** [8] - 20:12, 20:21, 21:2, 21:7, 21:12, 21:15, 21:17, 22:12

# 3

**3** [3] - 2:20, 26:14,

47:17, 47:25, 48:2, 48:5, 48:6, 48:8, 48:9, 48:12, 48:13, 48:17, 48:18, 48:21, 48:22, 49:1, 49:2, 49:9, 49:22, 50:1, 50:5, 50:9, 50:19, 50:23, 51:1, 51:18, 51:21, 53:2, 53:8, 53:22, 53:24, 54:2, 54:10, 54:13, 54:16, 54:19, 54:21, 54:24, 55:2, 55:5, 55:8, 55:10, 55:20, 56:8, 56:13, 59:22, 62:14, 68:7, 70:9, 70:11, 71:18, 72:15, 72:22, 74:6, 75:1, 75:19
**3/10/2005** [1] - 20:4
**3/12/2009** [1] - 24:2
**30** [2] - 1:17, 77:8
**302** [2] - 21:6, 21:23
**308** [1] - 20:18
**309** [1] - 20:13
**311** [1] - 20:3
**314** [1] - 19:10
**31st** [6] - 47:24, 48:1, 49:22, 53:22, 54:14, 68:7
**32** [1] - 2:22
**333** [1] - 1:16
**3rd** [7] - 23:17, 24:1, 46:21, 47:8, 49:9, 50:19, 72:24

# 4

**4** [13] - 2:21, 4:6, 14:3, 19:7, 24:14, 31:25, 44:3, 47:5, 63:2, 69:15
**40** [1] - 2:25
**46** [1] - 3:3
**47** [1] - 3:3

# 5

**5** [12] - 2:14, 2:22, 14:7, 22:5, 23:10, 40:15, 45:14, 57:11, 57:13, 57:14, 58:12, 63:8
**5.5** [2] - 20:6, 23:1
**5/11/11** [2] - 3:6, 62:24
**5/11/2011** [5] - 13:18, 68:22, 68:23, 69:8, 70:9
**5/12/11** [1] - 2:20
**5/12/2008** [1] - 23:8
**5/12/2011** [2] - 26:17, 27:21
**5/12/2012** [1] - 29:12
**5/15/2006** [1] - 22:2
**5/19** [1] - 3:6
**5/19/11** [3] - 2:24, 3:4, 3:6
**5/19/2011** [1] - 74:3
**5/23/2011** [1] - 31:8
**5/26/2011** [2] - 30:20, 30:23
**5/3** [2] - 29:19, 68:7
**5/3/11** [2] - 61:20, 62:6
**5/3/2011** [3] - 31:8, 61:24, 68:7
**5/4/11** [1] - 3:10
**5/9** [1] - 29:19
**53092** [1] - 2:3

**44:3**

**53186** [1] - 2:7
**56** [1] - 3:19

**6**

**6** [23] - 3:3, 3:21,
14:3, 22:16, 40:17,
40:24, 41:16, 43:19,
44:12, 44:22, 46:9,
57:10, 57:12, 57:14,
63:2, 63:7, 63:21,
63:22, 65:6, 66:2,
66:17
**6/23/11** [1] - 3:11
**6/27/11** [1] - 3:10
**60** [9] - 9:22, 9:23,
9:25, 14:16, 14:23,
15:19, 52:17, 68:2,
68:5
**66** [1] - 3:21
**67** [1] - 3:25
**6th** [6] - 5:11,
46:21, 47:8, 49:9,
50:19, 77:18

**7**

**7** [13] - 3:3, 3:24,
21:3, 25:2, 41:12,
41:14, 44:16, 44:19,
47:1, 66:18, 67:5,
67:9, 68:9
**7**..................... [1] -
4:6
**7/1/2011** [6] -
34:11, 35:4, 35:11,
36:12, 37:24, 38:3
**7/11/2011** [1] -
34:11
**7/12/2011** [2] -
34:11, 38:7
**7/13/2010** [1] -
24:14
**7/13/2011** [1] -
34:11
**7/14/11** [1] - 3:10
**7/18/2011** [1] -
34:12
**7/22/11** [1] - 2:21
**7/22/2011** [2] -
32:8, 33:23
**7/23/11** [2] - 3:7,
3:10
**7/26/11** [1] - 3:15
**7/6/11** [5] - 2:22,
3:8, 43:23, 44:16,
44:19
**7/6/2011** [2] - 40:1,
44:8
**71** [1] - 4:6
**72** [1] - 4:10
**73** [2] - 3:6, 4:13
**74** [1] - 3:9
**75** [1] - 3:12

**76** [1] - 4:17

**8**

**8** [13] - 2:18, 3:4,
4:8, 4:15, 13:24,
14:2, 15:11, 16:16,
36:12, 63:1, 71:15,
73:10, 76:18
**8's** [1] - 45:12
**8/16/2006** [1] -
22:15
**8/18/2004** [1] - 19:2
**8/31/2005** [1] -
20:22
**8:22** [1] - 75:20
**8:37** [1] - 43:20

**9**

**9** [14] - 3:7, 4:12,
4:15, 16:16, 17:12,
23:21, 24:6, 46:24,
47:14, 47:17, 67:14,
72:13, 73:10, 76:18
**9-and-a-half** [3] -
28:11, 30:3, 30:6
**9-point** [2] - 2:21,
26:17
**9.5** [2] - 31:4, 31:12
**904193** [2] - 2:23,
3:8
**906-863-5403** [1] -
5:13
**918** [1] - 5:11
**9th** [1] - 49:15

**A**

**a.m** [1] - 43:20,
44:23, 75:20
**ability** [1] - 6:8
**able** [1] - 41:15
**absence** [9] - 53:1,
53:8, 53:12, 54:9,
54:16, 56:7, 56:8,
56:13, 58:24
**Absence** [1] - 43:3
**Absences** [2] -
3:18, 3:19
**absences** [9] -
55:10, 55:11, 56:15,
66:21, 67:17, 67:21,
68:16, 69:20, 73:16
**according** [9] -
33:25, 35:5, 41:2,
49:23, 50:2, 50:5,
51:10, 61:22, 70:10
**accumulated** [1] -
24:5
**accumulating** [2] -
23:10, 23:21
**accurately** [2] -
27:20, 33:3
**acknowledgemen**

**t** [1] - 37:17
**Act** [1] - 36:12
**Act).** [1] - 2:25
**action** [2] - 49:6,
77:15
**additional** [7] -
69:22, 69:25, 70:6,
70:12, 70:17, 70:20,
70:24
**address** [4] - 5:10,
42:18, 54:16, 55:24
**addressed** [4] -
42:17, 53:1, 53:7,
53:12
**Addresses** [1] -
3:18
**addresses** [5] -
54:18, 55:15, 56:7,
56:13, 56:18
**Adkins** [2] - 27:11,
32:25
**Admission** [1] -
2:17
**affect** [1] - 6:7
**affixed** [1] - 77:17
**ago** [1] - 29:23
**agree** [10] - 37:22,
38:2, 38:6, 42:6,
42:13, 42:18, 43:18,
44:10, 44:21, 44:24
**agreeing** [1] -
60:13
**ahead** [3] - 12:20,
52:11, 62:1
**alcohol** [1] - 6:11
**allegations** [3] -
63:23, 66:19, 67:15
**allege** [3] - 38:24,
49:10, 50:14
**alleged** [1] - 46:21
**allow** [2] - 6:20,
24:20
**alone** [1] - 51:15
**alter** [1] - 44:25
**altered** [1] - 38:24
**Amended** [4] - 3:3,
47:4, 69:10, 69:12
**amended** [1] -
45:19
**amending** [1] -
45:12
**amount** [2] - 13:23,
19:19
**amounts** [1] -
15:15
**answer** [13] - 6:1,
6:9, 6:22, 7:4,
45:12, 52:11, 60:5,
63:12, 64:6, 67:4,
67:21, 68:13, 72:18
**Answer** [2] - 66:8,
66:10
**answering** [1] -

6:5, 8:20
**answers** [1] - 65:25
**anticipated** [1] -
51:12
**appeared** [2] - 2:4,
2:8
**application** [1] -
72:17
**applications** [1] -
71:25
**Applied** [1] - 4:9
**applied** [6] - 72:11,
72:12, 72:15, 72:16,
72:18, 72:22
**Applied**.................
.......... [1] - 4:10
**apply** [3] - 72:4,
72:5, 73:1
**approval** [4] -
45:24, 46:1, 52:24,
58:25
**APPROVAL** [1] -
59:15
**approved** [30] -
9:10, 9:22, 9:25,
10:5, 14:22, 14:23,
15:4, 28:10, 30:1,
31:9, 34:3, 35:6,
35:9, 35:20, 36:8,
49:10, 49:16, 49:19,
49:23, 50:1, 50:6,
50:9, 52:14, 52:15,
52:16, 58:2, 58:8,
59:4, 59:20, 64:17
**approves** [1] -
37:15
**approximate** [2] -
11:19, 25:16
**Approximate** [1] -
61:17
**approximately** [2] -
13:12, 26:1
**asserted** [2] -
10:16, 10:25
**assertion** [2] -
9:19, 67:17
**assessed** [1] - 28:5
**assistant** [1] - 27:4
**assume** [1] - 73:22
**Attached** [2] - 3:15,
4:19
**attached** [4] - 9:3,
10:7, 12:10, 57:7
**Attachments** [1] -
3:10
**Attendance** [8] -
2:19, 2:20, 2:21,
2:21, 28:25, 30:19,
33:18
**attendance** [36] -
16:1, 16:4, 16:7,
16:10, 16:19, 16:21,
17:4, 17:8, 18:1,

18:6, 19:7, 19:14,
19:17, 19:23, 20:7,
21:3, 22:5, 22:16,
22:21, 23:2, 23:10,
23:21, 24:6, 24:14,
25:10, 26:4, 26:8,
26:17, 26:18, 26:22,
28:4, 28:12, 30:4,
30:7, 31:19, 34:5
**attended** [2] - 26:7,
26:22
**attending** [1] - 27:1
**attention** [2] - 71:5,
71:7
**Attention** [4] -
2:23, 4:4, 4:5, 42:13
**Attention***..........
................... [1] - 3:9
**attorney** [4] - 7:18,
8:16, 77:12, 77:13
**Avenue** [1] - 5:11
**Aziere** [1] - 3:14
**AZIERE** [40] - 2:6,
5:6, 8:3, 8:6, 10:19,
10:23, 12:24, 18:8,
18:11, 26:12, 26:15,
32:1, 35:14, 35:21,
39:2, 39:8, 40:14,
40:16, 46:10, 46:25,
47:2, 52:18, 53:15,
53:23, 56:23, 57:2,
60:7, 60:12, 62:4,
65:14, 65:18, 65:21,
66:13, 66:16, 67:7,
67:11, 67:13, 73:5,
73:12, 76:23
**Aziere**...................
................... [1] -
2:14

**B**

**based** [3] - 9:16,
34:7, 59:14
**basically** [2] -
15:10, 17:22
**basis** [6] - 9:6,
9:21, 33:25, 34:2,
37:1, 37:3
**Bates** [3] - 3:16,
57:19
**bear** [2] - 20:9, 40:9
**bears** [1] - 29:11
**become** [1] - 7:13
**behalf** [2] - 2:4, 2:8
**behind** [1] - 18:18
**below** [4] - 13:23,
36:1, 42:6, 62:8
**best** [1] - 27:23
**best of your
recollection** [1] -
27:21
**bit** [1] - 6:13

**block** [2] - 47:11, 47:25
**bold** [1] - 43:2
**bolded** [2] - 59:8, 59:10
**boss** [1] - 70:4
**bottom** [5] - 14:2, 18:16, 18:23, 19:10, 44:7
**break** [3] - 56:24, 65:15, 73:6
**brought** - 28:11
**Brown** [1] - 2:24
**BUELOW** [1] - 2:5
**BUIKEMA** [1] - 2:5
**BY** [20] - 5:6, 8:6, 10:23, 12:24, 18:11, 26:15, 32:1, 35:21, 39:8, 40:16, 46:10, 47:2, 52:18, 53:23, 57:2, 60:12, 62:4, 66:16, 67:13, 73:12

**C**

**call-in** [1] - 67:1
**cannot** [2] - 6:24, 7:4
**Care** [7] - 2:24, 3:5, 3:11, 3:14, 10:13, 13:1, 56:3
**care** [8] - 10:24, 12:5, 12:9, 13:9, 53:6, 53:11, 55:14, 55:23
**Case** [1] - 1:7
**case** [3] - 47:4, 59:22, 66:25
**Cavin** [1] - 2:10
**center** [1] - 44:14
**certification** [16] - 10:24, 11:14, 11:17, 12:6, 14:15, 14:25, 56:6, 59:16, 61:4, 68:14, 68:20, 68:21, 74:5, 75:13, 76:1, 76:7
**Certification** [7] - 2:24, 3:4, 3:11, 3:17, 10:13, 13:1, 56:3
**certifications** [1] - 10:4
**certify** [2] - 77:7, 77:11
**chance** [1] - 40:21
**chart** [1] - 46:11
**circled** [1] - 35:1
**Civil** [1] - 1:14
**claim** [7] - 9:6, 51:24, 59:25, 60:16, 60:18, 60:21, 60:24
**claimed** [1] - 47:8

**claims** [1] - 67:3
**clear** [2] - 7:13, 39:21
**clinical** [1] - 45:9
**column** [1] - 46:16
**commenced** [1] - 61:17
**commencing** [1] - 1:17
**Commission** [1] - 77:25
**companies** [1] - 72:10
**Companies** [1] - 4:9
**company** [3] - 25:25, 33:25, 34:4
**complaint** [29] - 7:25, 8:1, 10:17, 11:1, 46:12, 46:18, 46:22, 47:20, 47:24, 48:4, 48:8, 48:12, 48:16, 48:20, 49:1, 49:5, 49:15, 49:23, 50:2, 50:5, 50:21, 51:3, 52:22, 55:25, 56:16, 67:16, 69:14, 69:15, 70:10
**Complaint** [6] - 46:16, 47:4, 63:24, 68:12, 69:10, 69:12
**Complaint............** .... [1] - 3:3
**Complaint............** ..... [1] - 3:3
**complete** [1] - 8:20
**completed** [1] - 13:11
**complied** [1] - 71:19
**comply** [1] - 71:23
**concluded** [1] - 76:25
**concluding** [1] - 1:18
**Condition** [6] - 2:25, 3:5, 10:14, 56:4, 61:20, 62:9
**condition** [5] - 14:2, 45:1, 61:17, 61:22, 66:22
**Condition............** .... [1] - 3:12
**conditions** [1] - 6:3
**confirm** [1] - 58:23
**confirmation** [4] - 12:15, 41:12, 74:14, 74:23
**Confirmed** [2] - 44:16, 44:19
**confused** [1] - 70:13
**confusing** [4] -

40:11, 41:3, 41:6, 41:9
**confusion** [1] - 62:13
**consider** [1] - 25:10
**consisting** [1] - 18:13
**Consisting** [1] - 2:18
**consists** [2] - 75:3, 75:18
**consumed** [1] - 6:11
**contain** [1] - 75:25
**contained** [6] - 27:14, 52:19, 63:23, 67:15, 75:14, 76:5
**contains** [1] - 59:8
**contend** [2] - 9:12, 10:15
**contention** [7] - 37:3, 37:5, 52:9, 52:20, 56:12, 59:3, 60:2
**contest** [4] - 9:19, 19:17, 20:1, 61:9
**Continued** [2] - 3:1, 4:1
**continued** [1] - 17:22
**conversation** [1] - 26:1
**Copies** [1] - 3:4
**copy** [10] - 8:7, 11:20, 11:22, 11:23, 12:17, 56:21, 71:8, 71:10, 71:13, 73:16
**Copy** [3] - 3:5, 3:14, 3:17
**Corporation** [1] - 2:10
**correct** [129] - 13:6, 13:19, 14:11, 14:12, 14:13, 15:6, 17:24, 19:2, 19:4, 19:7, 19:12, 19:15, 20:4, 20:7, 20:13, 20:23, 20:25, 21:4, 21:9, 21:18, 21:20, 21:23, 22:2, 22:6, 22:9, 22:13, 22:16, 22:18, 22:22, 22:24, 23:2, 23:8, 23:11, 23:14, 23:18, 23:21, 23:23, 24:3, 24:7, 24:10, 24:14, 24:18, 25:2, 25:4, 25:8, 26:5, 26:8, 28:6, 28:12, 28:15, 29:2, 29:9, 29:12, 29:15, 29:20, 30:1, 30:4, 30:20, 30:23, 31:1, 31:4,

31:9, 31:13, 31:16, 31:19, 33:1, 33:23, 34:1, 34:15, 34:23, 35:1, 37:9, 37:25, 38:4, 38:8, 39:15, 39:19, 39:23, 40:25, 41:4, 42:7, 42:9, 42:15, 45:17, 45:20, 46:5, 46:19, 46:22, 46:24, 47:9, 47:12, 47:15, 47:18, 47:22, 48:2, 48:6, 48:10, 48:14, 48:18, 48:23, 49:2, 49:7, 49:11, 49:13, 49:17, 49:20, 49:24, 50:3, 50:7, 50:10, 50:16, 50:21, 50:24, 51:3, 51:6, 51:8, 51:13, 54:4, 54:6, 55:8, 55:12, 57:23, 60:3, 61:24, 62:6, 62:24, 63:2, 64:8, 75:4
**correctly** [6] - 59:1, 59:17, 64:4, 67:23, 68:17, 71:21
**counsel** [2] - 77:12, 77:14
**counted** [2] - 36:4, 55:11
**COUNTY OF MILWAUKEE** [1] - 77:2
**couple** [5] - 6:18, 16:17, 42:11, 73:14, 74:4
**course** [1] - 45:10
**COURT** [1] - 1:1
**court reporter** [1] - 6:15
**Cover** [3] - 2:22, 3:7, 42:3
**cover** [4] - 53:21, 54:13, 56:17, 61:12
**covered** [1] - 62:21
**covers** [1] - 53:20, 55:20
**current** [2] - 5:10, 58:5

**D**

**D** [3] - 2:12, 3:1, 4:1
**Date** [1] - 46:16
**date** [43] - 11:19, 12:3, 12:12, 19:6, 22:5, 23:11, 25:16, 28:4, 28:14, 29:12, 37:4, 38:7, 47:7, 47:14, 47:18, 47:20, 47:21, 48:5, 48:9, 48:10, 48:12, 48:13, 48:16, 48:17, 48:20, 48:22, 48:25, 49:2,

49:16, 50:19, 53:7, 54:21, 54:23, 55:1, 55:4, 61:17, 66:20, 72:17, 73:24, 73:25, 74:1, 74:22
**dated** [5] - 12:2, 13:18, 19:4, 59:22, 75:1
**dates** [19] - 26:11, 29:19, 29:22, 29:25, 31:6, 34:13, 46:18, 49:4, 49:10, 50:12, 50:20, 51:2, 53:13, 55:16, 55:24, 56:19, 61:11, 61:14, 70:13
**day** [15] - 16:22, 16:23, 16:24, 17:2, 17:10, 17:14, 18:5, 31:23, 37:6, 41:18, 53:3, 53:8, 70:14, 70:25, 77:18
**days** [24] - 9:22, 9:23, 9:25, 14:7, 14:16, 14:23, 15:10, 15:15, 15:19, 28:6, 28:8, 36:3, 37:5, 37:12, 37:18, 38:12, 45:14, 52:17, 52:21, 55:21, 56:17, 58:5, 68:2, 68:5
**Dear** [1] - 40:10
**December** [3] - 53:22, 54:14, 77:18
**deducted** [3] - 17:17, 17:21, 17:24
**deemed** [1] - 69:21
**Defendant** [4] - 1:9, 1:13, 2:8, 68:19
**Defendant's** [1] - 2:16
**Defendants** [3] - 66:25, 69:19, 69:23
**definition** [1] - 5:15
**demonstrate** [2] - 35:10, 57:15
**denied** [6] - 34:7, 37:23, 50:14, 50:15, 52:14, 52:21
**Denied** [2] - 36:13, 36:14
**denies** [2] - 38:3, 38:6
**deposed** [2] - 5:14, 5:15
**deposition** [7] - 5:16, 6:14, 7:13, 7:17, 7:22, 9:4, 77:7
**Deposition............** [1] - 4:17
**depression** [1] - 13:14
**desired** [1] - 68:15
**despite** [1] - 15:18

**Detail** [3] - 28:25, 30:19, 33:19
**details** [1] - 72:16
**Details................
.......** [1] - 2:20
**determination** [1] - 58:25
**different** [5] - 42:23, 42:24, 59:22, 62:5, 72:23
**dig** [1] - 76:21
**directed** [1] - 40:10
**direction** [1] - 77:10
**directly** [4] - 12:8, 53:3, 53:7, 77:14
**director** [2] - 25:12, 27:6
**disclosed** [1] - 8:25
**discovery** [15] - 8:8, 8:18, 8:20, 8:24, 10:9, 18:15, 28:18, 30:12, 33:11, 57:6, 63:8, 65:6, 66:3, 66:14, 71:14
**discussed** [7] - 28:1, 29:23, 31:7, 33:8, 38:13, 55:16, 56:5
**discussion** [2] - 27:20, 33:3
**Disposition** [1] - 4:18
**dispute** [4] - 30:6, 31:12, 31:14, 34:10
**DISTRICT** [2] - 1:1, 1:2
**DIVISION** [1] - 1:3
**doctor** [10] - 10:4, 12:1, 12:8, 41:10, 46:2, 46:3, 52:1, 52:2, 52:6, 67:20
**doctor's** [4] - 14:17, 14:24, 15:3, 68:1
**Document** [1] - 3:22
**document** [40] - 8:12, 13:15, 20:15, 20:25, 21:22, 22:8, 23:4, 23:13, 23:23, 23:25, 24:9, 28:20, 28:24, 29:5, 29:11, 30:25, 33:18, 34:8, 36:6, 36:17, 36:19, 37:15, 37:16, 38:18, 39:6, 43:19, 54:8, 55:22, 57:25, 59:3, 59:6, 59:19, 59:21, 60:1, 60:25, 61:2, 64:17, 69:2, 76:5
**documentation** [2] - 68:15, 70:2

**Documentation** [3] - 4:3, 4:8, 4:12
**documents** [33] - 7:21, 9:3, 9:24, 10:2, 25:17, 30:11, 30:15, 33:15, 35:5, 35:10, 36:20, 36:23, 37:8, 38:10, 52:19, 57:7, 57:15, 57:16, 58:13, 63:9, 63:13, 63:14, 63:15, 63:17, 63:25, 65:7, 65:12, 66:4, 66:9, 66:23, 67:2, 67:6, 67:12
**Documents..........
........** [1] - 2:18
**Documents.
..............** [1] - 3:25
**done** [10] - 8:10, 18:20, 25:23, 26:19, 32:5, 33:15, 40:20, 46:14, 69:16, 73:8
**down** [11] - 6:16, 6:24, 7:3, 7:12, 28:11, 36:10, 42:11, 53:19, 54:11, 54:12, 59:23
**Dr** [37] - 2:22, 2:24, 3:7, 3:16, 13:5, 13:10, 13:13, 13:18, 15:11, 38:19, 38:25, 39:9, 39:17, 39:22, 39:25, 40:10, 40:18, 40:25, 41:2, 41:11, 41:15, 41:21, 42:7, 42:9, 42:17, 43:19, 44:20, 44:21, 44:25, 45:5, 45:16, 45:19, 51:10, 53:1, 54:2, 55:8, 62:14
**Drew** [2] - 2:23, 40:18
**Drew@matrixcos.
com** [1] - 3:8
**duly** [1] - 5:3
**duration** [5] - 14:1, 45:1, 45:13, 62:8, 67:19
**Duration** [1] - 61:20
**During** [1] - 71:18
**during** [6] - 15:25, 18:2, 18:5, 25:11, 29:1, 33:4

**E**

**early** [1] - 72:24
**EASTERN** [1] - 1:2
**eight** [1] - 19:20
**eighth** [1] - 51:1
**eligibility** [3] - 58:25, 67:23, 68:4
**ELIGIBILITY** [1] -

59:14
**employee** [2] - 77:12, 77:13
**Employee's** [5] - 2:25, 3:5, 3:11, 10:14, 56:4
**employment** [5] - 16:1, 18:2, 25:11, 59:15, 71:17
**end** [1] - 58:4
**ended** [1] - 58:4
**enrollment** [4] - 41:13, 41:21, 41:24
**entire** [5] - 53:21, 54:13, 54:18, 55:20, 62:21
**entitled** [13] - 14:14, 14:16, 15:19, 15:22, 35:11, 36:23, 37:4, 37:11, 38:12, 45:22, 45:23, 52:4, 52:21
**entitlement** [1] - 36:4
**entitlements** [1] - 35:19
**episode** [3] - 14:7, 45:14, 51:13
**episodes** [2] - 51:18, 51:21
**ereib@
heinslawoffice.
com** [1] - 2:4
**Erica** [2] - 12:22, 76:22
**ERICA** [1] - 2:2
**established** [2] - 51:25, 52:2
**estimate** [7] - 46:3, 46:6, 51:14, 52:3, 52:5, 67:22, 68:2
**estimated** [4] - 38:19, 38:22, 45:16, 67:20
**eventually** [1] - 29:25
**evidence** [1] - 52:8
**exacerbated** [3] - 61:18, 61:19, 62:6
**exact** [3] - 15:15, 27:24, 37:19
**Examination** [2] - 1:12, 2:13
**EXAMINATION** [1] - 5:5
**examined** [1] - 5:4
**exceed** [5] - 9:23, 51:25, 67:18, 67:22, 68:2
**exceeded** [6] - 36:13, 37:24, 38:4, 38:7, 67:22, 68:1

36:14
**excuse** [1] - 36:6
**Exhibit** [3] - 2:15, 3:2, 4:6
**exhibit** [3] - 24:24, 61:7, 75:25
**Exhibit 1** [18] - 4:9, 4:13, 8:7, 8:12, 10:6, 28:17, 33:12, 35:5, 35:17, 38:17, 41:20, 45:4, 51:11, 52:20, 53:18, 55:19, 57:5, 61:6
**Exhibit 10** [4] - 75:17, 75:23, 75:25, 76:11
**Exhibit 2** [3] - 18:12, 25:6, 26:5
**Exhibit 3** [6] - 26:16, 26:25, 27:3, 27:14, 27:19, 28:2
**Exhibit 4** [5] - 32:2, 32:7, 32:11, 33:3, 33:9
**Exhibit 5** [14] - 40:17, 40:22, 41:4, 41:7, 42:1, 42:25, 43:6, 43:10, 43:14, 44:6, 44:11, 44:14, 45:1, 45:3
**Exhibit 6** [23] - 46:11, 47:12, 47:17, 47:21, 48:1, 48:5, 48:9, 48:13, 48:17, 48:23, 49:2, 49:4, 49:13, 49:17, 49:20, 49:24, 50:3, 50:6, 50:10, 50:16, 50:18, 55:25, 56:16
**Exhibit 7** [4] - 47:3, 47:5, 69:9, 69:15
**Exhibit 8** [7] - 73:21, 73:24, 74:2, 74:7, 74:10, 74:12, 74:23
**Exhibit 9** [4] - 74:25, 75:3, 75:9, 75:14
**Exhibit Number** [8] - 3:21, 8:5, 18:10, 26:14, 31:25, 40:15, 46:9, 47:1
**Exhibit Numbers** [1] - 73:10
**Exhibits** [3] - 4:15, 4:18, 76:18
**exhibits** [1] - 76:6
**expected** [3] - 14:1, 15:12, 61:23
**expects** [1] - 14:6
**expired** [1] - 17:23
**Expires** [1] - 77:25
**Explain** [1] - 60:5

**explain** [1] - 16:6
**explanation** [1] - 25:21

**F**

**F-147** [1] - 43:24
**facsimile** [5] - 74:6, 74:18, 74:21, 74:22, 75:1
**fact** [6] - 22:18, 23:23, 24:9, 24:16, 25:4, 38:19
**Facts** [1] - 61:15
**facts** [1] - 67:16
**fair** [1] - 15:25
**familiar** [1] - 40:3
**Family** [2] - 2:25, 36:12, 36:13
**fax** [26] - 12:16, 39:25, 40:3, 40:8, 40:18, 40:24, 41:16, 42:3, 43:1, 43:3, 43:22, 44:7, 44:22, 73:21, 73:25, 74:1, 74:9, 74:14, 75:3, 75:8, 75:11, 75:18, 75:22, 75:25, 76:9, 76:10
**Fax** [6] - 2:22, 2:23, 3:4, 3:7, 3:7, 3:9
**faxed** [18] - 3:6, 4:4, 4:5, 11:23, 11:25, 12:8, 12:13, 39:21, 43:19, 44:11, 69:5, 70:7, 70:15, 71:5, 71:6, 75:19
**Faxes** [1] - 4:15
**faxes** [3] - 73:14, 73:17, 76:16
**February** [2] - 72:19, 72:25
**federal** [2] - 35:19, 59:14
**Federal** [10] - 1:14, 10:3, 14:22, 35:6, 36:8, 36:21, 36:22, 37:7, 52:15, 52:16
**federally** [1] - 9:10
**felt** [1] - 15:17
**file** [1] - 18:14
**File** [1] - 2:19
**filled** [3] - 13:5, 15:3, 71:25
**final** [5] - 17:13, 24:24, 33:17, 48:25, 49:2
**finally** [1] - 43:14
**financially** [1] - 77:14
**Fincantieri** [3] - 9:7, 37:17, 49:6
**FINCANTIERI** [1] -

1:8
**find** [2] - 41:14, 71:14
**fine** [1] - 12:23
**finish** [2] - 6:21, 56:25
**finished** [1] - 8:11
**fired** [6] - 9:8, 9:11, 9:13, 9:14, 9:16
**first** [27] - 5:3, 6:19, 17:20, 18:22, 19:1, 19:25, 20:3, 25:7, 27:2, 32:12, 35:18, 37:6, 44:6, 44:14, 45:8, 46:16, 47:7, 47:11, 50:19, 50:20, 57:10, 57:21, 58:17, 73:20, 74:12, 74:13
**First** [1] - 2:17
**Five** [1] - 3:18
**five** [9] - 25:7, 28:6, 28:8, 37:5, 37:12, 38:12, 55:21, 56:17, 73:6
**five-minute** [1] - 73:6
**flip** [13] - 10:6, 19:9, 29:17, 30:9, 33:12, 38:16, 43:6, 43:10, 44:1, 62:22, 63:7, 64:10, 64:16
**flipping** [13] - 18:20, 20:2, 20:11, 20:18, 21:6, 21:25, 22:11, 22:20, 23:6, 23:16, 23:25, 65:6, 66:2
**FMLA** [59] - 3:3, 9:10, 9:12, 9:14, 9:17, 9:22, 9:25, 10:15, 11:4, 11:22, 14:16, 14:22, 15:1, 15:2, 15:5, 25:14, 28:6, 28:9, 29:20, 29:22, 31:7, 34:3, 34:7, 35:4, 35:7, 36:4, 36:17, 37:4, 37:18, 38:15, 41:12, 46:5, 46:12, 46:19, 47:8, 49:11, 49:16, 52:14, 52:15, 52:17, 52:21, 52:24, 57:17, 58:2, 58:3, 58:8, 58:14, 60:3, 63:10, 63:18, 64:1, 65:9, 66:5, 67:19, 67:22, 68:3, 68:4, 68:16, 69:21
**following** [3] - 35:25, 61:23, 65:25
**follows** [1] - 5:4
**forced** [1] - 24:22
**foreman** [1] -

24:20, 27:8
**form** [22] - 10:14, 10:15, 11:7, 11:10, 11:11, 11:14, 11:17, 12:10, 13:2, 13:5, 13:11, 14:15, 19:4, 41:13, 52:24, 56:6, 57:23, 58:6, 74:5, 75:13, 76:7
**Form** [1] - 3:15
**forms** [4] - 10:25, 11:5, 12:6, 15:3
**forth** [7] - 26:5, 27:19, 51:2, 52:22, 55:25, 56:16, 67:16
**forward** [1] - 24:23
**found** [4] - 51:10, 54:6, 55:7, 60:25
**four** [7] - 15:12, 17:4, 38:20, 38:20, 45:17, 45:18, 51:15
**four-page** [1] - 28:20
**fourth** [4] - 29:4, 33:17, 43:14, 59:23
**frequency** [6] - 14:1, 14:3, 15:12, 37:24, 38:3, 38:8, 38:15, 38:20, 38:22, 39:11, 44:25, 45:13, 45:16, 51:25, 52:2, 67:19
**Frequency** [3] - 36:13, 36:14, 63:1
**frequently** [1] - 46:4
**FROM** [1] - 43:23
**front** [4] - 74:1, 76:10, 76:17, 76:19
**Front** [1] - 4:16
**full** [3] - 5:7, 16:24
**furthermore** [1] - 53:21

**G**

**general** [1] - 9:14
**given** [2] - 16:22, 68:3
**Glen** [1] - 2:3
**Gordon** [1] - 5:9
**grab** [1] - 57:13
**grant** [1] - 36:17
**granted** [10] - 35:4, 57:17, 58:14, 60:3, 60:15, 63:10, 63:18, 64:12, 65:8, 66:4
**Green Bay** [2] - 1:3, 1:17
**ground** [1] - 6:13
**Group** [1] - 37:17
**GROUP** [1] - 1:8
**guys** [1] - 11:22

**H**

**H-A-N-S-E-N** [1] - 5:9
**half** [4] - 17:2, 17:3, 38:16, 28:17
**hand** [1] - 77:17
**handed** [1] - 76:6
**handing** [7] - 8:7, 18:12, 26:16, 40:17, 46:11, 73:20, 75:17
**Handwritten** [1] - 3:6
**handwritten** [1] - 44:15
**handy** [1] - 9:2
**HANSEN** [4] - 1:5, 1:12, 5:2, 77:8
**Hansen** [40] - 2:23, 3:3, 3:4, 3:7, 3:8, 3:9, 3:10, 3:22, 4:3, 4:5, 4:7, 4:11, 4:14, 5:9, 25:13, 27:5, 31:22, 32:12, 32:13, 39:18, 39:22, 40:10, 42:12, 42:15, 42:18, 54:4, 69:5, 70:3, 70:21, 71:6, 73:22, 74:15, 75:1, 75:2, 75:4, 75:11, 75:19
**Hansen's** [3] - 2:19, 3:18, 27:4
**head** [4] - 7:5, 12:4, 70:14
**header** [4] - 43:7, 43:11, 43:15, 44:2
**Health** [12] - 2:24, 2:25, 3:5, 3:5, 3:11, 3:12, 3:14, 10:13, 11:24, 13:1, 56:3, 56:4
**health** [9] - 10:24, 12:5, 12:9, 13:9, 53:6, 53:11, 55:14, 55:23, 66:22
**heard** [1] - 25:19
**HEINS** [1] - 2:2
**helps** [1] - 26:23
**hereby** [1] - 77:7
**herein** [1] - 5:3
**hereunder** [1] - 77:16
**Hermes** [1] - 27:2
**hired** [1] - 15:23
**holds** [1] - 72:19
**Home** [1] - 3:23
**home** [8] - 56:9, 56:11, 66:12, 67:6, 69:2, 71:12, 72:7, 73:17
**Hotel** [1] - 1:16
**hours** [2] - 36:3, 36:12

**HR** [3] - 25:12, 27:6, 70:3
**Hyatt** [1] - 1:16

**I**

**identified** [1] - 67:18
**Identified** [2] - 2:15, 3:2
**identify** [8] - 54:23, 55:1, 55:4, 58:13, 63:9, 63:24, 66:19, 66:23
**Identify** [3] - 68:10, 71:16, 72:14
**illness** [2] - 14:11, 14:13
**inaccuracies** [2] - 41:6, 41:9
**incident** [1] - 51:12
**Incident** [2] - 2:20, 28:25, 30:19, 33:19
**including** [1] - 72:15
**increasing** [3] - 45:12, 53:21, 54:13
**incur** [1] - 16:19
**incurred** [5] - 20:6, 21:3, 22:5, 22:16, 23:1
**incurring** [4] - 19:7, 24:13, 25:1, 25:2
**indicate** [3] - 57:18, 58:1, 64:23
**indicated** [21] - 34:13, 34:17, 34:25, 37:12, 47:11, 47:17, 48:10, 49:5, 49:13, 49:15, 49:17, 49:19, 49:24, 50:2, 50:6, 50:9, 50:15, 50:21, 64:6, 67:4, 74:22
**indicates** [8] - 14:6, 29:8, 33:22, 43:18, 44:10, 47:24, 48:1, 48:4
**indicating** [5] - 13:24, 44:8, 44:17, 59:11, 61:16
**indication** [1] - 58:8
**indirectly** [4] - 42:20, 42:21, 77:15
**individuals** [2] - 25:19, 26:24
**Information** [2] - 3:11, 4:13
**information** [4] - 6:24, 8:23, 69:24, 73:4
**initial** [2] - 8:8, 10:9
**insight** [1] - 45:9

**instance** [1] - 1:13
**instead** [1] - 7:11
**Insurance** [2] - 71:20, 71:24
**intake** [2] - 57:23, 58:5
**interested** [1] - 77:14
**Intermittent** [1] - 36:11
**intermittent** [6] - 15:5, 15:9, 64:1, 64:24, 65:9, 66:5
**International** [1] - 72:24
**Interrogatories** [1] - 2:17
**Interrogatory** [3] - 4:8, 4:12, 72:13
**interrogatory** [2] - 72:9, 73:3
**Interrogatory Number** [15] - 3:20, 3:24, 57:11, 57:12, 57:14, 58:12, 63:8, 63:21, 66:17, 67:5, 67:8, 67:14, 68:9, 70:1, 71:15
**interrupt** [1] - 6:22
**involved** [1] - 11:24
**issues** [6] - 16:1, 16:4, 19:23, 25:11, 26:4, 41:3
**Item Number** [2] - 44:16, 44:19

**J**

**JAMES** [4] - 1:5, 1:12, 5:2, 77:8
**James** [10] - 2:23, 3:4, 3:7, 3:8, 3:9, 5:9, 42:12, 42:15, 42:18, 75:2
**January** [9] - 57:17, 58:15, 59:5, 59:20, 60:3, 60:15, 63:11, 63:16, 63:19
**jaziere@ buelowvetter.com** [1] - 2:7
**Jim** [3] - 32:18, 70:21
**job** [5] - 71:20, 71:24, 71:25, 72:23, 72:25
**JOEL** [1] - 2:6
**John** [3] - 31:22, 32:23, 74:15
**Johnson** [3] - 32:18, 70:21
**July** [64] - 3:19, 31:15, 32:3, 33:4,

36:7, 36:18, 36:24,
37:1, 37:2, 38:13,
39:17, 40:17, 40:24,
40:25, 41:2, 41:16,
43:2, 43:19, 44:12,
44:22, 45:19, 48:17,
48:18, 48:21, 48:22,
49:1, 49:2, 50:12,
50:13, 51:1, 51:5,
51:8, 51:21, 53:1,
53:8, 53:10, 53:24,
54:1, 54:9, 54:16,
54:21, 54:24, 55:1,
55:5, 55:8, 55:10,
55:16, 55:24, 56:8,
56:13, 56:15, 62:14,
69:20, 70:11, 71:17,
72:15, 72:22, 75:1,
75:19
 **June** [14] - 47:25,
48:1, 48:4, 48:6,
48:8, 48:9, 48:12,
48:13, 49:22, 50:1,
50:5, 50:9, 50:23,
51:18

## K

 **Karla** [3] - 2:23,
3:8, 40:18
 **Kathy** [1] - 74:15
 **keep** [3] - 7:2, 7:9,
9:2
 **Klann** [3] - 27:7,
32:15
 **knowledge** [3] -
36:25, 53:5, 53:9
 **Kristina** [2] - 27:11,
32:25

## L

 **labeled** [2] - 63:13,
63:14
 **Lane** [1] - 2:3
 **Last** [4] - 10:21,
35:16, 53:17, 60:9
 **last** [13] - 5:8,
11:12, 14:7, 16:17,
39:14, 41:20, 45:8,
50:12, 61:23, 65:22,
65:24, 73:7, 76:10
 **late** [1] - 26:3
 **latest** [1] - 16:9
 **law** [4] - 14:20,
14:21, 36:22, 37:7
 **Law** [1] - 2:10
 **LAW OFFICE** [1] -
2:2
 **laws** [6] - 10:3,
14:19, 36:21, 37:14,
52:16
 **Leave** [6] - 2:23,
2:25, 3:8, 3:11,

13:23, 36:12
 **leave** [56] - 9:12,
9:18, 9:25, 10:16,
14:14, 14:23, 14:25,
15:5, 28:9, 30:3,
35:4, 35:11, 35:18,
35:19, 36:2, 36:7,
36:9, 36:18, 36:23,
37:4, 37:11, 37:23,
38:3, 38:7, 38:12,
38:16, 38:20, 45:22,
45:24, 46:5, 46:12,
46:19, 47:8, 52:4,
52:21, 57:17, 58:2,
58:9, 58:14, 58:24,
59:4, 59:15, 59:20,
60:3, 60:15, 63:10,
63:16, 63:18, 64:2,
64:12, 64:17, 64:24,
65:9, 66:5, 67:19,
69:21
 **leaves** [1] - 10:5
 **left** [2] - 57:3, 65:24
 **legal conclusion**
[1] - 52:11
 **Letter** [1] - 3:15
 **letter** [33] - 11:9,
11:11, 12:8, 12:10,
39:12, 39:13, 39:17,
39:21, 39:25, 40:25,
41:2, 41:17, 41:19,
41:22, 45:5, 45:19,
51:10, 52:25, 53:3,
53:6, 53:11, 53:24,
54:2, 54:15, 54:18,
54:20, 55:7, 55:14,
58:23, 59:13, 62:10,
62:12, 62:15
 **Letters** [1] - 3:10
 **letters** [1] - 55:23
 **Lieu** [9] - 20:12,
20:21, 21:2, 21:7,
21:12, 21:17, 22:12,
23:17, 24:1
 **LINDA** [2] - 1:14,
77:5
 **line** [8] - 42:7,
42:12, 43:22, 43:24,
63:6, 67:1, 74:14,
74:23
 **lines** [3] - 42:11,
43:1
 **list** [3] - 72:6, 72:7,
72:10
 **List** [1] - 4:9
 **listed** [4] - 26:25,
27:3, 32:11
 **lists** [3] - 47:20,
48:8, 49:4
 **LLC** [3] - 1:8, 2:2,
2:5
 **located** [4] - 34:14,
68:23, 69:1, 73:17

 **look** [35] - 8:9,
10:6, 13:15, 13:21,
18:16, 18:22, 18:23,
19:20, 28:22, 29:4,
31:3, 33:17, 34:8,
36:10, 36:11, 42:1,
42:25, 45:4, 46:17,
47:5, 56:2, 57:11,
57:18, 57:20, 58:16,
58:22, 60:20, 63:21,
66:17, 69:14, 71:12,
71:15, 73:23, 74:12,
74:25
 **looking** [4] - 41:11,
44:6, 50:18, 75:23
 **lost** [1] - 60:25

## M

 **main** [1] - 53:20
 **Main Street** [1] -
1:16
 **Management** [1] -
43:3
 **manager** [1] -
66:25
 **manner** [1] - 66:20
 **Marine** [18] - 2:10,
4:4, 9:6, 12:14,
15:23, 16:7, 18:3,
18:6, 25:11, 25:25,
35:8, 39:19, 49:7,
50:15, 55:11, 70:3,
71:5, 73:15
 **MARINE** [1] - 1:8
 **Marinette** [18] -
2:10, 4:4, 9:6,
12:14, 15:23, 16:7,
18:3, 18:6, 25:11,
25:25, 35:8, 39:19,
49:7, 50:15, 55:11,
70:3, 71:5, 73:15
 **mark** [5] - 8:3, 18:8,
26:12, 39:2, 46:25
 **marked** [44] - 8:5,
8:12, 10:10, 12:25,
13:2, 13:16, 13:22,
18:10, 18:23, 19:10,
20:2, 20:11, 20:18,
21:6, 21:25, 22:11,
22:20, 23:6, 23:16,
23:25, 24:12, 24:24,
26:14, 28:19, 29:5,
29:18, 30:10, 31:25,
33:13, 33:19, 38:18,
39:14, 40:15, 45:5,
46:9, 47:1, 51:11,
73:11, 74:9, 75:8,
75:17, 75:23, 76:11,
76:18
 **Matrix** [24] - 2:24,
4:5, 12:6, 12:8,
12:11, 35:7, 41:19,
43:3, 43:19, 44:7,

44:11, 45:25, 52:13,
57:23, 66:24, 69:6,
70:4, 70:5, 71:6
 **Matrix'** [1] - 66:20
 **MD** [1] - 3:16
 **mean** [5] - 9:15,
15:8, 21:11, 61:7,
67:25
 **means** [2] - 14:9,
15:6
 **meant** [2] - 15:11,
68:1
 **Medical** [3] - 2:25,
36:12, 61:15
 **medical** [8] - 6:3,
59:16, 68:15, 69:24,
74:5, 75:13, 76:1,
76:7
 **medication** [1] -
6:7
 **meet** [1] - 7:19
 **Meeting** [1] - 2:21
 **meeting** [23] - 7:18,
17:9, 26:7, 26:10,
26:17, 26:18, 26:22,
27:1, 27:21, 28:1,
28:4, 29:2, 31:16,
31:21, 32:3, 32:8,
32:11, 32:13, 32:16,
33:1, 33:5, 33:7,
71:3
 **Meeting..** [1] - 2:21
 **Meeting................**
**..................** [1] - 2:22
 **meetings** [1] -
26:11
 **Menominee** [1] -
5:11
 **mentioned** [1] -
73:13
 **mentions** [1] -
54:21
 **Mequon** [1] - 2:3
 **Merit** [2] - 1:15,
77:5
 **Michael** [3] - 3:16,
13:5, 62:24
 **Michelle** [2] - 27:2,
31:22
 **Michigan** [1] - 5:11
 **might** [6] - 41:19,
56:14, 56:17, 56:20,
71:12, 72:8
 **Mike** [2] - 27:9,
29:14
 **Milwaukee** [1] -
77:17
 **mind** [2] - 7:2, 7:9
 **minute** [13] - 8:9,
26:18, 28:21, 29:23,
32:4, 35:12, 40:19,
46:13, 69:11, 73:6,
73:23, 75:2, 75:20

 **missed** [2] - 16:24,
17:2
 **missing** [1] - 41:25
 **misstates** [1] -
61:25
 **mistake** [1] - 32:23
 **MMC** [1] - 18:18
 **MMC000315** [1] -
18:23
 **modification** [2] -
38:22, 39:10
 **Monday** [7] - 45:13,
45:20, 51:13, 61:13,
61:21, 61:23, 62:9
 **months** [6] - 14:3,
15:13, 38:21, 45:17,
45:18, 63:2
 **MR** [40] - 2:6, 5:6,
8:3, 8:6, 10:19,
10:23, 12:24, 18:8,
18:11, 26:12, 26:15,
32:1, 35:14, 35:21,
39:2, 39:8, 40:14,
40:16, 46:10, 46:25,
47:2, 52:18, 53:15,
53:23, 56:23, 57:2,
60:7, 60:12, 62:4,
65:14, 65:18, 65:21,
66:13, 66:16, 67:7,
67:11, 67:13, 73:5,
73:12, 76:23
 **MS** [6] - 2:2, 12:23,
52:10, 61:25, 67:10,
73:9
 **multiple** [1] - 42:24

## N

 **name** [3] - 5:7, 5:8,
24:18
 **necessarily** [1] -
45:23
 **necessary** [3] -
64:2, 65:9, 66:6
 **need** [10] - 6:17,
6:19, 12:17, 14:24,
15:3, 15:16, 19:19,
35:12, 46:5, 46:7
 **Needed** [1] - 13:23
 **needed** [1] - 15:21
 **Needs** [2] - 2:23,
3:8, 42:12
 **never** [1] - 41:14
 **new** [1] - 12:9
 **next** [25] - 19:9,
20:2, 20:18, 21:6,
21:25, 22:11, 22:20,
23:6, 23:16, 24:12,
47:20, 47:21, 47:25,
48:4, 48:5, 48:9,
48:10, 48:12, 48:13,
48:16, 48:17, 48:20,
56:25, 62:20

nine [1] - 75:18
ninth [1] - 51:5
none [1] - 63:15
Notary Public [3] -
1:15, 77:6, 77:22
notation [1] - 44:15
Note [1] - 3:6
notes [8] - 27:12,
27:13, 27:16, 27:17,
27:18, 31:23, 70:23,
73:7
Notes [1] - 3:6
Notice [1] - 2:19
notice [1] - 39:9
noticed [1] - 39:7
November [2] -
1:17, 77:8
number [13] - 5:12,
10:7, 16:1, 16:5,
18:13, 18:18, 25:10,
29:18, 37:20, 41:3,
57:4, 74:16, 74:18
Number [10] - 13:24,
14:2, 15:11, 21:23,
22:8, 41:12, 41:14,
61:15, 63:1
numbered [2] -
18:17, 64:7

**O**

Oaks [1] - 2:3
oath [2] - 5:3, 5:19
object [2] - 52:10,
61:25
obtain [3] - 52:25,
53:6, 53:11
obtaining [1] -
72:25
occurrence [10] -
17:3, 28:14, 28:16,
28:17, 50:20, 50:24,
51:2, 51:6, 51:8,
51:13
occurrences [8] -
25:2, 29:8, 31:4,
31:12, 33:22, 34:10,
51:15, 69:21
October [8] - 64:2,
64:13, 64:18, 64:25,
65:10, 66:6, 66:21,
77:25
OF [2] - 1:2, 5:1
offer [4] - 68:19,
69:4, 70:2, 70:19
offered [3] - 68:13,
69:22, 70:12
offering [1] - 70:17
office [1] - 77:17
old [1] - 59:25
OLSON [1] - 2:5
once [1] - 17:4,
17:7, 45:13, 45:20

one [27] - 6:20,
11:3, 11:5, 12:7,
16:8, 16:9, 17:19,
17:23, 18:19, 19:12,
24:17, 28:14, 29:17,
39:5, 41:10, 43:1,
51:12, 51:13, 57:13,
59:8, 65:17, 70:22,
73:7, 73:20, 76:18
One [1] - 4:15
ones [1] - 73:18
ONLY [1] - 59:13
opinion [9] - 14:10,
14:17, 15:14, 15:17,
15:18, 46:6, 51:14,
52:3, 52:5
opposed [1] - 57:6
orally [1] - 7:4
order [1] - 6:17
original [4] - 39:6,
39:11, 45:16, 69:14
Original [2] - 4:18,
4:19
otherwise [1] -
69:23
outside [1] - 52:5
own [2] - 9:5, 51:25

**P**

P")....... [1] - 3:6
p.m [3] - 1:18,
76:25
P001/004 [1] -
43:24
packet [6] - 11:3,
18:12, 25:6, 30:11,
30:15, 33:15
Packet [1] - 2:18
page [59] - 10:10,
12:25, 13:2, 13:15,
18:22, 19:1, 19:9,
20:2, 20:9, 20:11,
20:18, 21:6, 21:25,
22:11, 22:20, 23:6,
23:16, 23:25, 24:12,
24:24, 25:4, 28:19,
28:20, 29:4, 29:17,
30:9, 33:12, 33:13,
33:17, 33:19, 36:11,
37:20, 38:2, 38:18,
39:14, 41:20, 43:7,
43:10, 43:14, 44:2,
44:6, 44:14, 52:12,
58:23, 60:20, 62:20,
62:22, 62:23, 63:22,
74:1, 74:12, 74:13
Page [58] - 2:13,
2:15, 3:2, 3:13,
3:21, 4:2, 4:6, 4:8,
4:12, 10:6, 21:22,
22:8, 22:18, 23:13,
24:10, 28:24, 30:25,
31:13, 34:9, 34:22,

37:22, 38:16, 43:4,
43:8, 43:16, 44:3,
47:5, 54:6, 55:7,
56:2, 57:10, 57:12,
57:14, 58:11, 58:17,
58:18, 59:7, 60:17,
60:20, 60:23, 61:22,
62:22, 63:7, 63:22,
64:16, 64:21, 64:23,
65:2, 65:6, 66:2,
66:17, 68:9, 68:24,
69:15, 71:15, 72:13
pages [19] - 10:7,
10:8, 13:1, 18:13,
18:14, 18:17, 34:18,
34:25, 43:6, 44:1,
57:18, 57:22, 58:1,
58:7, 64:6, 64:7,
64:10, 75:3, 75:18
Pages [4] - 2:18,
34:14, 37:12, 58:15
paperwork [8] -
41:13, 69:22, 69:25,
70:6, 70:12, 70:17,
70:20, 70:24
paperwork' [1] -
68:11
Paragraph [18] -
4:6, 47:6, 47:7,
47:14, 47:24, 48:8,
48:16, 48:20, 48:25,
63:24, 66:19, 67:15,
67:18, 68:11, 69:13,
69:14, 69:18
paragraph [5] -
35:18, 45:8, 53:20,
59:7, 59:24
Part [2] - 13:22,
61:15
particular [9] -
20:15, 27:17, 31:23,
33:18, 36:19, 37:14,
37:18, 70:25, 71:1
parties [1] - 77:13
pending [4] - 28:6,
29:22, 31:7, 59:16
Pending [1] - 29:20
people [1] - 42:24
per [6] - 14:3,
15:13, 38:20, 45:14,
51:13, 63:2
Per [1] - 3:3
period [13] - 10:16,
10:25, 15:9, 17:18,
58:9, 64:2, 64:12,
64:18, 64:25, 65:10,
66:6, 68:6, 71:18
permission [5] -
64:1, 64:12, 64:24,
65:8, 66:5
person [3] - 27:2,
70:22, 70:23
personal [2] - 9:17,

77:9
Personal [1] -
36:14
Personnel [1] -
2:19
personnel [1] -
18:14
pertain [1] - 63:15
phone [3] - 5:12,
25:18, 67:3
physician [1] - 42:9
pinpoint [1] - 15:15
place [8] - 16:11,
26:2, 27:20, 29:3,
30:21, 32:3, 32:8,
33:4
Plaintiff [6] - 1:6,
2:4, 68:13, 69:19,
71:19, 72:18
plaintiff [1] - 69:22
Plaintiff's [2] -
2:16, 68:16
point [12] - 16:10,
16:19, 16:21, 16:25,
17:20, 17:23, 24:22,
29:3, 30:21, 38:11,
39:6, 54:20
pointed [1] - 58:15
points [30] - 16:12,
17:5, 17:8, 17:12,
17:15, 17:17, 17:21,
17:22, 19:7, 19:17,
20:1, 20:7, 21:4,
22:5, 22:16, 23:2,
23:10, 23:21, 24:6,
24:14, 25:13, 28:6,
28:12, 30:4, 30:7,
34:2, 34:5, 34:7,
58:4
policies [2] - 19:24,
35:25
policy [3] - 15:2,
16:7, 16:10
position [10] - 37:8,
37:10, 37:11, 38:11,
38:21, 39:9, 60:14,
72:16, 72:19, 72:21
positions [3] -
72:11, 72:14, 73:1
Positions [1] - 4:10
positive [2] - 56:20,
76:12
possible [5] -
12:17, 17:10, 36:3,
56:22, 66:15
Possible. [1] - 3:16
Possible...... [1] -
3:21
Possible...............
........... [1] - 3:19
Post [7] - 2:22, 3:7,
3:16, 13:5, 53:1,
55:8, 62:24

post [23] - 13:10,
13:13, 13:18, 15:11,
38:19, 38:25, 39:9,
39:17, 39:22, 39:25,
40:18, 41:11, 41:15,
41:21, 42:7, 42:9,
42:17, 43:19, 44:21,
44:25, 45:16, 45:19,
54:2
Post's [1] - 51:10
post's [5] - 40:25,
41:2, 44:20, 45:5,
62:14
Post/Christy [1] -
2:24
preparation [1] -
7:21
prepare [1] - 7:16
present [4] - 28:2,
32:10, 44:2, 72:22
presented [1] -
29:1
pretty [1] - 17:13
prevent [1] - 6:4
previously [5] -
31:7, 38:13, 55:16,
75:15, 76:2
print [1] - 24:22
printed [1] - 24:18
probable [1] -
61:20
Probable [1] - 62:8
Procedure [1] -
1:14
Proceedings [1] -
76:25
PROCEEDINGS [1]
- 5:1
Production [2] -
2:18, 3:24
production [1] -
67:12
properly [1] - 42:17
prove [1] - 59:19
Provide [2] - 3:22,
4:3, 4:7, 4:11
provide [14] - 36:3,
57:15, 68:14, 68:19,
69:4, 69:22, 70:2,
70:6, 70:12, 70:17,
70:19, 70:24, 71:3,
71:4
provided [6] - 8:16,
10:8, 10:15, 18:15,
30:12, 46:3
Provider [7] - 2:25,
3:5, 3:11, 3:15,
10:13, 13:2, 56:3
provider [8] - 11:4,
11:23, 12:5, 12:10,
13:9, 53:7, 53:12,
55:15
providers [1] -

55:23
  **provides** [1] - 74:15
  **pull** [1] - 28:17
  **purpose** [1] - 13:13
  **pursuant** [1] - 1:13
  **put** [1] - 16:10

**Q**

  **qualifying** [1] - 68:16
  **quarters** [4] - 36:10, 53:19, 54:11, 54:12
  **questions** [6] - 6:1, 6:4, 6:8, 63:6, 65:25, 76:24
  **quick** [2] - 7:18, 65:17

**R**

  **ran** [1] - 9:17
  **Rangl** [8] - 3:15, 4:5, 39:18, 39:22, 54:4, 69:5, 70:4, 71:7
  **Rangl's** [1] - 70:4
  **RCVD** [1] - 44:7
  **Re** [4] - 2:19, 2:21, 2:23, 3:8
  **read** [18] - 10:19, 10:21, 35:14, 35:16, 53:15, 53:17, 59:1, 59:16, 60:7, 60:9, 62:5, 62:8, 64:3, 65:23, 66:1, 67:23, 68:16, 71:21
  **reading** [1] - 69:16
  **reads** [1] - 59:13
  **reason** [3] - 5:25, 24:19, 74:20
  **Rebecca** [1] - 12:19
  **recall** [7] - 27:16, 27:18, 27:25, 32:19, 33:8, 39:5, 70:16, 74:9, 75:8, 75:22
  **receipt** [1] - 43:1
  **receive** [2] - 14:21, 18:2
  **received** [27] - 12:16, 19:2, 19:6, 19:11, 19:14, 19:18, 20:4, 20:13, 20:22, 21:2, 21:8, 21:17, 22:1, 22:4, 22:15, 22:24, 23:1, 23:7, 23:18, 23:20, 24:2, 24:5, 24:13, 24:24, 25:1, 40:1, 72:17
  **Recess** [2] - 57:1, 65:20

  **recollection** [3] - 26:21, 27:23, 32:7
  **record** [2] - 65:22, 73:13
  **recorded** [1] - 77:8
  **reduced** [1] - 77:9
  **Refaxed** [1] - 3:6
  **refer** [1] - 68:11
  **referred** [5] - 40:24, 41:11, 46:12, 46:18, 70:1
  **referring** [8] - 40:3, 42:21, 53:3, 53:24, 53:25, 54:1, 62:10, 73:19
  **refers** [1] - 54:9
  **reflect** [2] - 27:20, 33:3
  **reflected** [1] - 33:8
  **refresh** [2] - 26:21, 32:7
  **refused** [4] - 20:15, 20:25, 21:22, 23:13
  **regard** [6] - 28:8, 32:8, 63:23, 66:18, 67:14, 73:15
  **Regarding** [1] - 42:11
  **regarding** [3] - 26:7, 68:15, 72:16
  **Registered** [2] - 1:15, 77:5
  **regular** [1] - 16:22
  **REIB** [6] - 2:2, 12:23, 52:10, 61:25, 67:10, 73:9
  **related** [1] - 66:22
  **relative** [2] - 77:12, 77:13
  **relevant** [1] - 49:5
  **remain** [1] - 31:12
  **remember** [6] - 26:10, 26:11, 28:3, 31:21, 60:16, 65:22
  **rep** [1] - 32:22
  **repeat** [5] - 10:18, 35:12, 53:14, 60:6, 62:2
  **report** [3] - 28:25, 30:19, 33:19
  **Reporter** [1] - 1:15, 77:6
  **representative** [3] - 27:10, 29:14, 32:19
  **Request** [3] - 3:13, 3:24, 4:2
  **request** [2] - 67:11, 69:24
  **requested** [8] - 11:4, 57:16, 58:14, 58:24, 59:4, 60:2, 63:10, 63:18
  **Requested**............

............ [1] - 4:13
  **requests** [5] - 8:21, 8:24, 10:9, 18:15, 30:12
  **Requests** [2] - 2:17, 2:17
  **require** [1] - 72:3
  **requirements** [1] - 59:15
  **requisites** [1] - 71:20
  **Requisites** [1] - 71:24
  **respond** [2] - 41:15, 69:23
  **responded** [2] - 44:22, 66:24
  **responding** [1] - 7:10
  **Response** [2] - 3:23, 4:6
  **response** [9] - 8:23, 10:9, 18:15, 30:12, 58:11, 66:14, 67:8, 71:14, 71:18
  **Responses** [1] - 2:16
  **responses** [10] - 8:8, 8:15, 8:18, 28:18, 33:11, 57:6, 63:8, 65:7, 66:3, 72:17
  **returns** [1] - 52:13
  **review** [10] - 7:21, 7:24, 8:15, 26:19, 32:4, 40:19, 40:21, 46:13, 75:2, 75:20
  **reviewing** [3] - 8:10, 33:15, 58:19
  **Rich** [2] - 32:23, 70:21
  **Richard** [1] - 32:21
  **right** [11] - 12:3, 19:10, 31:3, 31:6, 31:15, 42:6, 56:23, 65:22, 70:14, 74:11, 75:12
  **Road** [1] - 2:6
  **Robinson** [3] - 32:21, 32:24, 70:21
  **Rodney** [4] - 27:7, 27:8, 32:15
  **Rules** [1] - 1:14
  **rules** [1] - 6:13
  **run** [1] - 29:19
  **running** [2] - 30:16, 33:13

**S**

  **SAARI** [2] - 1:14, 77:5
  **saw** [1] - 40:9

  **schedule** [1] - 15:10
  **scheduled** [1] - 16:23
  **seal** [1] - 77:17
  **Search** [1] - 4:14
  **searches** [2] - 71:21, 71:24
  **second** [13] - 11:12, 13:2, 13:15, 25:1, 25:7, 38:17, 39:14, 43:1, 43:7, 47:14, 47:18, 58:22, 59:7
  **Second** [5] - 3:3, 3:5, 47:4, 69:9, 69:12
  **second-to-last** [2] - 11:12, 39:14
  **section** [3] - 13:22, 56:25, 62:6
  **see** [38] - 6:15, 11:21, 13:3, 13:16, 13:24, 14:4, 14:7, 18:17, 18:24, 19:10, 20:19, 29:18, 30:17, 31:6, 33:20, 36:15, 40:1, 42:3, 42:25, 43:4, 43:6, 43:11, 43:15, 43:16, 43:22, 43:24, 44:1, 44:4, 44:8, 44:17, 44:19, 45:10, 45:14, 59:10, 62:23, 73:18, 74:13
  **seeing** [2] - 13:10, 13:13
  **seek** [1] - 71:17
  **Semrau** [2] - 31:22, 32:23
  **send** [2] - 74:21, 75:11
  **sending** [3] - 74:9, 75:8, 75:22
  **Sent** [1] - 4:15
  **sent** [9] - 73:14, 74:6, 74:24, 75:10, 76:9, 76:12, 76:13, 76:14, 76:16
  **sentence** [3] - 45:8, 58:22, 59:8
  **sentences** [1] - 59:9
  **serious** [1] - 66:22
  **Serious** [5] - 2:25, 3:5, 3:12, 10:14, 56:4
  **set** [8] - 26:5, 27:19, 51:2, 52:22, 55:25, 56:15, 67:16, 77:16
  **Set** [1] - 2:17
  **seven** [1] - 25:6
  **seventh** [1] - 50:23

  **several** [1] - 19:23
  **shake** [1] - 7:5
  **Sheet** [3] - 2:22, 3:7, 42:4
  **show** [12] - 9:24, 10:4, 35:10, 54:8, 57:16, 58:13, 63:9, 63:17, 63:25, 64:17, 65:7, 66:4
  **shows** [2] - 52:14, 64:11
  **sick** [1] - 16:22
  **sign** [10] - 20:15, 20:25, 21:22, 22:8, 22:18, 23:13, 23:23, 24:9, 24:17, 25:4
  **signature** [7] - 13:22, 20:9, 24:19, 24:21, 29:11, 31:3, 44:20
  **signed** [9] - 13:18, 19:4, 19:12, 20:4, 23:4, 24:16, 29:14, 30:25, 62:23
  **six** [6] - 15:13, 17:7, 38:20, 45:17, 45:18
  **sloppy** [1] - 24:21
  **somewhere** [2] - 11:22, 72:7
  **Soon** [3] - 3:16, 3:19, 3:21
  **soon** [3] - 12:17, 56:21, 66:14
  **sorry** [11] - 12:20, 21:15, 29:12, 34:14, 34:22, 37:2, 41:24, 52:23, 59:9, 61:3, 70:13
  **Specialist** [1] - 2:10
  **specific** [1] - 26:11
  **specifically** [18] - 9:12, 27:25, 37:23, 52:25, 53:12, 54:9, 54:16, 54:18, 54:20, 54:23, 55:1, 55:4, 55:15, 55:19, 55:24, 56:7, 56:12, 56:18
  **Specifically** [1] - 3:18
  **spell** [1] - 5:7
  **SS** [1] - 77:1
  **stamped** [1] - 57:19
  **start** [6] - 15:2, 29:19, 37:2, 57:22, 64:10
  **starting** [3] - 30:15, 30:16, 33:13
  **starts** [4] - 28:20, 28:24, 45:9, 54:11
  **state** [6] - 5:7, 10:3,

29:25, 34:20, 35:19, 59:14

**State** [10] - 9:10, 14:22, 35:6, 36:8, 36:21, 36:22, 37:7, 52:15, 52:16

**State of Wisconsin** [4] - 1:16, 77:1, 77:6, 77:23

**states** [4] - 14:3, 14:21, 35:18, 46:16

**stating** [1] - 52:13

**step** [1] - 65:18

**steps** [1] - 71:16

**still** [1] - 69:3

**submitted** [1] - 72:1

**Suite** [2] - 2:3, 2:6

**supplementation** [5] - 66:14, 67:8, 71:13, 72:9, 73:3

**Supplementation** [5] - 3:20, 3:23, 4:3, 4:8, 4:12

**support** [10] - 25:17, 37:8, 37:10, 38:11, 52:20, 59:3, 60:1, 60:14, 67:2, 67:17

**supports** [1] - 52:8

**Suspension** [9] - 20:12, 20:22, 21:3, 21:8, 21:12, 21:17, 22:13, 23:17, 24:2

**suspension** [2] - 17:11, 17:14

**suspensions** [1] - 18:5

**swearing** [1] - 5:22

**sworn** [1] - 5:3

**system** [2] - 29:3, 30:21

**T**

**T-175** [1] - 43:24

**talks** [2] - 14:1, 39:25

**Tami** [19] - 4:4, 25:12, 27:4, 27:5, 31:22, 32:12, 32:13, 39:18, 39:22, 54:4, 69:5, 70:3, 70:21, 71:6, 73:22, 75:1, 75:4, 75:11, 75:19

**Tammy** [2] - 3:7, 3:9

**Tanguay** [2] - 27:9, 29:15

**tenth** [1] - 51:8

**term** [1] - 15:6

**terminated** [4] -

28:15, 31:18, 34:5, 34:6

**termination** [11] - 16:9, 17:16, 31:15, 32:2, 33:5, 34:1, 34:2, 69:19, 70:11, 70:16, 76:14

**Testified** [1] - 4:16

**testified** [7] - 5:4, 31:11, 63:15, 74:4, 75:14, 76:2, 76:19

**testimony** [2] - 62:1, 76:4

**THE** [9] - 10:22, 35:17, 39:4, 52:12, 53:18, 60:10, 62:2, 65:16, 66:11

**themselves** [1] - 57:6

**third** [6] - 21:7, 21:14, 21:15, 21:16, 25:8, 43:10

**three** [12] - 17:10, 17:14, 18:5, 36:10, 51:18, 51:21, 53:19, 54:11, 54:12, 73:17, 76:6, 76:17

**three-day** [3] - 17:10, 17:14, 18:5

**three-quarters** [4] - 36:10, 53:19, 54:11, 54:12

**throughout** [1] - 9:3

**time-to-time** [1] - 15:9

**today** [8] - 5:17, 5:20, 6:1, 6:11, 7:17, 7:22, 12:18, 76:2

**took** [7] - 17:19, 27:20, 32:3, 32:8, 33:4, 37:17, 72:23

**top** [10] - 12:3, 32:11, 42:3, 42:25, 52:12, 58:22, 59:23, 70:14, 74:14, 74:23

**Tracy** [1] - 2:10

**Tradesman** [1] - 72:23

**TRANSCRIPT** [1] - 5:1

**transcript** [3] - 26:16, 27:19, 32:2

**Transcript** [3] - 2:20, 2:21, 4:19

**treating** [1] - 42:9

**truth** [1] - 5:23

**truthful** [1] - 8:18

**truthfully** [3] - 6:1, 6:5, 6:9

**try** [4] - 6:22, 6:23, 7:12, 34:15

**Tuesday** [1] - 12:19

**turn** [10] - 10:10, 12:20, 12:25, 28:18, 33:11, 45:4, 47:5, 57:10, 57:21, 58:11

**turned** [2] - 11:8, 15:3

**turning** [2] - 38:17, 59:7

**twice** [1] - 73:2

**Two** [1] - 3:4

**two** [18] - 10:5, 12:25, 19:25, 25:8, 34:18, 34:25, 42:23, 43:1, 57:22, 57:25, 58:7, 59:9, 71:2, 71:25, 72:2, 72:3, 75:3

**type** [1] - 58:2

**U**

**Uhh** [2] - 7:11

**Uhh-Uhh** [1] - 7:11

**unable** [1] - 5:25

**under** [8] - 1:13, 5:19, 14:15, 14:16, 14:25, 35:18, 35:25, 77:9

**underlined** [2] - 59:9, 59:10

**understood** [1] - 14:17

**unemployment** [2] - 71:19, 72:1

**Unemployment** [2] - 71:20, 71:23

**union** [4] - 27:10, 29:14, 32:19, 32:22

**UNITED STATES** [1] - 1:1

**unscheduled** [1] - 36:2

**unwilling** [1] - 5:25

**up** [15] - 9:22, 9:25, 14:16, 14:23, 15:19, 49:9, 50:18, 52:17, 56:25, 58:4, 63:1, 68:5, 69:11, 76:21

**update** [2] - 41:21, 68:23

**Updated** [1] - 3:14

**updated** [20] - 11:3, 11:9, 11:10, 11:11, 11:16, 12:11, 12:12, 12:13, 41:24, 52:23, 61:3, 61:9, 62:18, 68:14, 68:19, 68:21, 74:5, 75:13, 76:1, 76:7

**updating** [1] - 63:4

**V**

**vacation** [1] - 25:13

**verbal** [2] - 17:9, 67:3

**version** [5] - 12:12, 52:23, 61:3, 61:10, 61:11

**VETTER** [1] - 2:5

**via** [3] - 43:3, 44:7, 74:6

**violation** [1] - 22:21

**Violations** [1] - 2:19

**violations** [2] - 19:15, 31:19

**VLIET** [1] - 2:5

**vs** [1] - 1:7

**W**

**Warning** [13] - 20:12, 20:21, 21:2, 21:7, 21:12, 21:17, 22:1, 22:12, 22:21, 23:7, 23:17, 24:1, 24:13

**warning** [12] - 17:6, 17:10, 17:13, 19:1, 19:6, 19:11, 19:14, 20:3, 21:16, 22:4, 24:25, 25:1

**warnings** [4] - 18:1, 25:7, 25:8

**Watertown** [1] - 2:6

**Waukesha** [1] - 2:7

**week** [5] - 71:2, 71:25, 72:2, 72:3, 73:2

**weeks** [1] - 36:3

**West** [1] - 2:3

**whereof** [1] - 77:16

**whiteout** [2] - 39:5, 39:7

**WISCONSIN** [1] - 1:2

**Wisconsin** [5] - 1:17, 2:3, 2:7, 36:13, 77:18

**withholding** [1] - 8:24

**WITNESS** [9] - 10:22, 35:17, 39:4, 52:12, 53:18, 60:10, 62:2, 65:16, 66:11

**Witness** [2] - 4:14, 75:5

**witness** [2] - 5:2, 77:16

**words** [1] - 9:5

**work** [2] - 6:17, 16:23

**working** [1] - 16:17

**world** [1] - 51:24

**writing** [1] - 77:9

**written** [5] - 17:6, 18:1, 19:1, 19:6, 55:8

**wrongfully** [1] - 9:8

**Y**

**year** [9] - 13:12, 17:19, 17:23, 53:22, 54:13, 54:18, 55:20, 62:21, 68:7

**years** [1] - 16:17

**years ago** [1] - 19:21

**Yvonne** [7] - 3:15, 4:5, 39:18, 39:22, 54:4, 69:5, 70:3, 70:4, 71:7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

JAMES G. HANSEN,

Plaintiff,

vs.                                    Case No: 12-C-32

FINCANTIERI MARINE GROUP, LLC,

Defendant.

PLAINTIFF'S RESPONSES TO DEFENDANT'S
FIRST SET OF REQUESTS FOR ADMISSION, INTERROGATORIES,
AND REQUESTS FOR PRODUCTION OF DOCUMENTS

**TO:**    Joel S. Aziere, Esq.
Sarrie L. Pozolinski, Esq.
Buelow, Vetter, Buikema, Olson & Vliet, LLC
20855 Watertown Road, Suite 200
Waukesha, Wisconsin 53186

### REQUESTS FOR ADMISSION

**REQUEST NO. 1:** Admit that you were never approved for intermittent FMLA leave for the period of October 1 – 19, 2010.

**RESPONSE TO REQUEST NO. 1:** Deny. *See* Bates 1006-07.

**REQUEST NO. 2:** Admit that you did not contact Matrix regarding your absences from work on October 18-19, 2010 until May 2, 2011.

**RESPONSE TO REQUEST NO. 2:** Admit.

**REQUEST NO. 3:** Admit that attached Exhibit A is a true and accurate copy of the Certification of Health Care Provider form submitted by your health care provider regarding your serious health condition for which you applied for the FMLA leave alleged in your Complaint.

**RESPONSE TO REQUEST NO. 3:** Admit.

**REQUEST NO. 4:** Admit that, as set forth in Exhibit A, the frequency of your alleged serious health condition for which you applied for the FMLA leave alleged in your Complaint is "4 times" per "6 months(s)."

**RESPONSE TO REQUEST NO. 4:** Admit that the estimate of the frequency in Exhibit A is "4 times" per "6 month(s)."

**REQUEST NO. 5:** Admit that, as set forth in attached Exhibit A, the duration of your alleged serious health condition for which you applied for the FMLA leave alleged in your Complaint is "2-5 day(s) per episode."

**RESPONSE TO REQUEST NO. 5:** Admit that the estimate of the duration in Exhibit A is "2-5 day(s) per episode."

**REQUEST NO. 6:** Admit that at no time prior to your termination did any health care provider modify the FMLA certified frequency and duration of your serious health condition, as set forth in Exhibit A.

**RESPONSE TO REQUEST NO. 6:** Admit that Plaintiff's physician was unable to provide a modification until July 26, 2011. *See* Bates 1043.

2

**REQUEST NO. 7:** Admit that at no time prior to your termination did you present any FMLA health care provider form modifying the FMLA certified frequency and duration of your serious health condition as set forth in Exhibit A.

**RESPONSE TO REQUEST NO. 7:** Admit that Plaintiff's physician was unable to provide a modification until July 26, 2011. *See* Bates 1043.

**REQUEST NO. 8:** Admit that, on July 6, 2011, your health care provider, Dr. Michael Post, confirmed the FMLA certified frequency and duration of your serious health condition as set forth in Exhibit A.

**RESPONSE TO REQUEST NO. 8:** Deny. Dr. Post was unable to update the frequency and duration of Plaintiff's FMLA leave for his serious health condition until July 26, 2011.

**REQUEST NO. 9:** Admit that your absences on July 1, 11-13, and 18, 2011, allegedly for your serious health condition, exceeded the FMLA certified frequency and duration of your serious health condition as set forth in Exhibit A.

**RESPONSE TO REQUEST NO. 9:** Admit that the July 1, 11-13, and 18, 2011 absences for my serious health condition exceeded the estimated FMLA certified frequency and duration of my serious health condition as set forth in Exhibit A.

**REQUEST NO. 10:** Admit that it was not until July 26, 2011 that your health care provider, Dr. Michael Post, modified the FMLA certified frequency and duration of your serious health condition as set forth in Exhibit A by "increasing the frequency to one a month for a duration of 2-5 days per episode."

3

**RESPONSE TO REQUEST NO. 10:** Admit that Dr. Post was unable to send a modified FMLA certification until July 16, 2011 because "[t]here was a lot of confusion due to the inaccuracy of [Defendant's] form." *See* Bates 1043.

**REQUEST NO. 11:** Admit that even after the July 26, 2011 modification by Dr. Michael Post, your absences on July 11-13, and 18, 2011, allegedly for your serious health condition, exceeded the FMLA certified frequency and duration of your serious health condition as modified by Dr. Post on July 26, 2011.

**RESPONSE TO REQUEST NO. 11:** Deny.

**REQUEST NO. 12:** Admit that your absences on July 11-13, and 18, 2011 put you over the Defendant's 10 occurrence termination threshold.

**RESPONSE TO REQUEST NO. 12:** Deny.

**REQUEST NO. 13:** Admit that you were properly terminated on July 22, 2011 for violating Company attendance rules.

**RESPONSE TO REQUEST NO. 13:** Deny.

**REQUEST NO. 14:** Admit that you were not subject to FMLA retaliation by Defendant.

**RESPONSE TO REQUEST NO. 14:** Deny.

**REQUEST NO. 15:** Admit that you were not subject to FMLA interference by Defendant.

**RESPONSE TO REQUEST NO. 15:** Deny.

4

## INTERROGATORIES

**INTERROGATORY NO. 1:** For each Request for Admission, above, which you deny:

      a.     State any and all basis and facts for each denial; and

      b.     Identify each person who you believe has knowledge of the facts supporting your

           denial.

**ANSWER TO INTERROGATORY NO. 1:** Please see Response to Requests, above.


**INTERROGATORY NO. 2:** For each Request for Admission, above, for which you claim lack of information:

      a.     Describe the steps you took in attempting to respond to the request; and

      b.     Identify each person you contacted in attempting to respond to the request.

**ANSWER TO INTERROGATORY NO. 2:** Not applicable.


**INTERROGATORY NO. 3:** Identify every person who participated in answering these interrogatories.

**ANSWER TO INTERROGATORY NO. 3:** Plaintiff and counsel of record.


**INTERROGATORY NO. 4:** Identify the basis for the allegation in your Complaint that you worked for Fincantieri Marine Group, LLC.

**ANSWER TO INTERROGATORY NO. 4:** All FMLA certification paperwork was sent to Fincantieri Marine Group. All paperwork regarding Plaintiff's FMLA absences, including but not limited to Defendant's July 22, 2011, July 14, 2011, June 27, 2011, June 23, 2011, May 31, 2011, May 23, 2011, May 16, 2011, May 9, 2011, and May 4, 2011 were sent on Fincantieri

5

Marine Group letterhead and referenced his employment by Fincantieri Marine Group, LLC and his ability to contact Fincantieri Marine Group's Human Resources Group. *See* Bates 1001-11, 1016-21, 1025-31, 1033-34.

**INTERROGATORY NO. 5:** With regard to the allegations contained in Paragraph 12 of your Complaint, identify any and all documents that show you "requested" and were "granted" FMLA leave on or about January 1, 2009.

**ANSWER TO INTERROGATORY NO. 5:** *See* Bates 1001-02, 1005-09.

**INTERROGATORY NO. 6:** With regard to the allegations contained in Paragraph 13 of your Complaint, identify any and all documents that show you "requested" and were "granted permission to take intermittent FMLA leave if necessary for the period of October 1-19, 2010."

**ANSWER TO INTERROGATORY NO. 6:** *See* Bates 1001-02, 1005-09.

**INTERROGATORY NO. 7:** With regard to the allegations contained in Paragraph 14 of your Complaint, identify the time, date, and manner in which you "informed Matrix" that your absences on October 18-19, 2010, were related to your serious health condition and identify any documents that support the allegations contained in Paragraph 14.

**ANSWER TO INTERROGATORY NO. 7:** Plaintiff called his Matrix case manager on October 18, 2010 and October 19, 2010 related to his FMLA leave. Plaintiff also called Defendant's call-in line.

**INTERROGATORY NO. 8:** With regard to the allegations contained in Paragraph 18 of your Complaint, identify any and all documents that support the claims set forth in paragraph 18.

**ANSWER TO INTERROGATORY NO. 8:** *See* Bates 1010-11.

**INTERROGATORY NO. 9:** With regard to the allegations contained in Paragraph 22 of your Complaint, set forth all facts that support you assertion that your absences identified in Paragraph 22 did not exceed the frequency and duration of your FMLA leave as estimated by your doctor.

**ANSWER TO INTERROGATORY NO. 9:** Although the absences exceeded the estimate, they did not exceed my FMLA eligibility.

**INTERROGATORY NO. 10:** Identify the "additional paperwork" to which you refer in Paragraph 25 of your Complaint.

**ANSWER TO INTERROGATORY NO. 10:** Plaintiff offered to provide an updated certification or any other medical documentation Defendant desired regarding Plaintiff's FMLA-qualifying absences.

**INTERROGATORY NO. 11:** Identify the "appropriate paperwork" to which you refer in Paragraph 26 of your Complaint.

**ANSWER TO INTERROGATORY NO. 11:** On Plaintiff's behalf, Attorney Holly Lutz offered to have Plaintiff provide an updated certification or any other medical documentation Defendant desired regarding Plaintiff's FMLA-qualifying absences.

7

**INTERROGATORY NO. 12:** With regard to the allegations contained in Paragraph 28 of your Complaint, identify all documents and all witnesses who support your allegations contained therein.

**ANSWER TO INTERROGATORY NO. 12:** *See* Complaint and Initial Disclosures.


**INTERROGATORY NO. 13:** With regard to the allegations contained in Paragraph 31 of your Complaint, identify all documents and all witnesses who support your allegations contained therein.

**ANSWER TO INTERROGATORY NO. 13:** *See* Complaint and Initial Disclosures.


**INTERROGATORY NO. 14:** Identify all jobs you have held since July 22, 2011, including employer name, employer address, employer phone, position held, rate of pay, duration of employment, and reason(s) for separation from employment.

**ANSWER TO INTERROGATORY NO. 14:** Plaintiff has been employed from April 5, 2012 through the present at Plutchak Fabricating, LLC; N4181 US Highway 41, Wallace, Michigan 49893; (906) 864-4650; Metal Fabricator/Welder; $15.00/hour.


**INTERROGATORY NO. 15:** Identify all steps you have taken to seek employment since July 22, 2011.

**ANSWER TO INTERROGATORY NO. 15:** During his period of unemployment, Plaintiff complied with the Unemployment Insurance requisites for job searches. Additionally, Plaintiff looked through local newspaper advertisements seeking iron worker and steel worker positions.

8

Plaintiff applied for the position he currently holds in February 2012 and called back multiple times between his application and hiring.

**INTERROGATORY NO. 16:** Identify all positions for which you have applied since July 22, 2011, including all details regarding the position applied for, the date of application, and the response(s) received.

**ANSWER TO INTERROGATORY NO. 16:** Plaintiff applied for the position he currently holds in February 2012.

**INTERROGATORY NO. 15 [SIC]:** Identify all income you have received since July 22, 2011.

**ANSWER TO INTERROGATORY NO. 17:** From August 2011 until April 5, 2012, Plaintiff received $363 per week in unemployment. Since August 5, 2012, Plaintiff has worked approximately 42.5 hours per week at Plutchak Fabricating, LLC, for an average weekly salary of $656.25.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:** All documents identified in your responses to the above requests for admission and/or interrogatories.

**RESPONSE TO REQUEST NO. 1:** *See* Bates 1001-11, 1016-21, 1025-31, 1033-34, 1043.

**REQUEST NO. 2:** All documents reviewed or relied upon in formulating answers to the above requests for admission and/or interrogatories.

9

**RESPONSE TO REQUEST NO. 2:** *See* Bates 1001-44.

**REQUEST NO. 3:** Copies of your tax returns for 2011.

**RESPONSE TO REQUEST NO. 3:** Plaintiff will provide these documents.

**REQUEST NO. 4:** All documents you allege support the claims set forth in your Complaint.

**RESPONSE TO REQUEST NO. 4:** *See* Bates 1001-44.

Dated this _____ day of June, 2012.

_____
James G. Hansen, Plaintiff

Subscribed to and sworn before me
This _____ day of _____, 2012

_____
Notary Public, State of Wisconsin
My commission is permanent.

AS TO OBJECTIONS:

HEINS LAW OFFICE LLC
Counsel for the Plaintiff

_____
Janet L. Heins, WI Bar No. 1000677
Erica N. Reib, WI Bar No. 1084760
Robert Finn Jensen, WI Bar No. 1073976

HEINS LAW OFFICE LLC
1001 West Glen Oaks Lane, Suite 101
Mequon, Wisconsin 53092
(262) 241-8444 voice
(262) 241-8455 facsimile
e-mail: jheins@heinslawoffice.com

10

ereib@heinslawoffice.com
rjensen@heinslawoffice.com

11

# MATRIX
## Absence Management, Inc.

Intake Form: # 1170920

# FINCANTIERI
### MARINE GROUP

**Type of Claim :** FMLA for Self

Personal Information

**Last Name :** Hansen

**Nickname :**

**Middle Init. :** G

**First Name :** James

**Date of Birth :** 04/24/80

**Gender:** MALE

### Home Address

**Street Address (Home) :** 918 6TH AVE

**City :** Menominee

**Zip Code :** 49858

**Line 2 (optional) :**

**State :** MI

**Home Phone Number :** 715-923-1781

**Which address would you like us to mail communications to you? :** Home

### Reason for Leave

**Reason For Leave :** FMLA/SELF-INTER. EE MISSED 10/18-8HRS-10/19-4HRS-EE STATED THAT HE DID MISS OTHER DAYS AND USED HIS VAC TIME BUT DID NOT HAVE DATES WITH HIM-GOING FORWARD AS NEEDED

### Return to Work Information

**What was or will be your last day of Work :** 09/30/2010

**First Leave Date :** 10/01/2010

**Last Leave Date :** 10/01/2010

**Have you returned to Work? :** Not applicable

### Intermittent or Continuous

**Are you requesting Leave on an intermittent / part-time basis? :** YES

**Intermittent Schedule :** EE MISSED 10/18-8HRS-10/19-4HRS-EE STATED THAT HE DID MISS OTHER DAYS AND USED HIS VAC TIME BUT DID NOT HAVE DATES WITH HI-GOING FORWARD AS NEEDED

### Additional Information

**Date of Hire :** 11/15/1999

**Original Date of Hire :** 11/15/1999

**The person completing the form is the person requesting the leave of absence? :** NO

### Work Address

**Street Address (Work) :** 1600 Ely Street

**City :** Marinette

**Zip Code :** 54143

**Line 2 (optional) :**

**State :** WI

**Work Phone Number (including area code) :**

715/587-9911

### Work Information

**Location Code/Department ID :** Welder

**Employee ID :** 06000

**Full-Time or Part-Time :** YES

**Are you Exempt/Salaried? :** NO

**Do you have a typical schedule: Monday through Friday 40 hours per week :** YES

**Job Title :** Journeyman Shipbuilder

### Supervisor and HR Information

**Supervisor/Manager's Name :** RODNEY C

**Supervisor/Manager's Phone Number :**

715-735-9341

**Have you notified your supervisor of your absence? :** YES

**If yes, date supervisor was notified of your absence: :** 10/01/2010

0 0 1 0 0 1

## Misc. Information

Do you have more than one Employer? : NO

Additional Comments : EE STATED THAT TAMMY HENSON IS LEAD HR REP #715-735-9341 EXT 6131

## FMLA Self Questions

Was the disability caused by work : NO

Have you ever had a previous disability with this company? : YES

If yes, what was the start date of the disability? 01/01/2009

Have you taken a Leave within the past 12 months? : NO

Describe your level of physical activity at work : Heavy

## Physician Information

Last Name : POST

Address 1 :

City : PESHTIGO

Zip Code :

Fax Number : 715-582-9201

First Name : MICHAEL

Address 2 :

STATE : WI

Phone Number : 715-582-3622

Speciality : FAMILY MEDICINE

When was your last scheduled office visit : 03/03/2011

When is your next scheduled office visit : 05/20/2011

Are you seeing another physician or specialist : NO

Have you given your authorization form to your physician : YES

If you are a Kaiser member, what is your record number : HUMANA

## Income Information

Have you ever worked for FINCANTIERI MARINE GROUP as a temp employee? : NO

## Custom Questions

| | |
|---|---|
| Have you been off on a Workman's Comp Injury in the past 12 months? | NO |
| Are you a Union Employee | YES |
| Have you been hospitalized for this condition | NO |
| What shift are you currently working? | 1ST |
| Are you scheduled for overtime? | NO |

## Reminders

| | |
|---|---|
| If you have been off work for more than 3 days, you are required to report to HR/OH with a return to work slip from your doctor before reporting for work. | YES |
| If you would like to add your new baby to your benefits you can do that via Employee Self Service. | NO |
| IF FILING INTERMITTENT LEAVE, BSC asks that you inform the HR Department that you are going to be off on FMLA. This will impact your receiving OT for the weekend if applicable. | YES |
| You need to contact Matrix every time you are off for FMLA. | YES |
| You are responsible for ensuring your doctor completes and returns the medical certification form to us. | YES |
| You need to retain a copy of your completed medical certification form for your records. | YES |
| Your employer will not be initiating calls for employees for FMLA or STD. | YES |

001002

Matrix Absence Management, Inc.
11221 North 28th Drive, Suite E100
Phoenix, AZ 85029
Confidential Fax: 408-361-9030
Phone: 800-866-2301, Extension 52276
Email: Karla.Drew@Matrixcos.com

## Leave Information:

Once we obtain the information from you as specified above, we will inform you, within five (5) business days, whether your leave will be designated as federal and/or state leave and count towards your federal and/or state leave entitlement. If your FMLA leave entitlement is approved, you have the following rights under FMLA:

- You have a right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as a fixed leave year starting on January 1.

- Your health benefits must be maintained during any period of unpaid leave under the same conditions as if you continued to work; and

- You must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on your return from leave.

If this is an intermittent leave, you are also required to report your absences to Matrix by calling 877-840-2136. For scheduled appointments, you must inform Human Resources and Matrix in advance of your absence. If advance notice is not possible, notify Matrix within one business day. Please notify Matrix once the need for intermittent leave is no longer required.

## Paid Time Off Usage

Please refer to the paid time off policy or union contract (if applicable).

## Benefit Responsibilities/Information

- If you are on leave for less than 30 consecutive days, Fincantieri Marine Group, LLC will place your portion of the premium payments of your health insurance in arrears until you return to work at which time payments will resume.

- If you remain on leave beyond 30 consecutive days, you will be required to pay a portion of the premiums for your health insurance, you must continue to make these payments while you are on federal and/or state leave, whether you are receiving disability payments or are on unpaid leave. You may submit your payments to:

Fincantieri Marine Group, LLC
3301 South Packerland Drive Suite A
DePere, WI 54115
Attention : Benefits Group

- You have a minimum thirty (30) day grace period in which to make health insurance premium payments. If you don't pay on time, your group health insurance will be cancelled *provided* Fincantieri Marine Group, LLC notifies you in writing at least fifteen (15) days before the date that your health coverage will lapse.

001003

• For more detail, please refer to the eligibility letter sent to you previously.

Matrix Absence Management, Inc.
11221 North 28th Drive, Suite E100
Phoenix, AZ 85029
Confidential Fax: 408-361-9030
Phone: 800-866-2301, Extension 52276
Email: Karla.Drew@Matrixcos.com

If this is an intermittent leave, you are also required to report your absences to Matrix by calling 877-840-2136. For scheduled appointments, you must inform Human Resources and Matrix in advance of your absence. If advance notice is not possible, notify Matrix within one business day. Please notify Matrix once the need for intermittent leave is no longer required.

If you return to work within your federal and/or state family leave entitlement period, you will be reinstated to the former or equivalent position, unless Fincantieri Marine Group, LLC is unable to do so for reasons unrelated to the leave.

If you have any questions regarding the leave process or have information to add to your leave request, please contact the Matrix Absence Management, Inc. Leave Coordinator. If you have questions regarding the continuation of your benefits during your leave, please contact Fincantieri Marine Group, LLC's Human Resources Group.

Karla Drew, Leave Coordinator
Matrix Absence Management, Inc. on behalf of
The Comp and Benefits Group, Fincantieri Marine Group, LLC

Attachment: Absence Report (if applicable for intermittent leave)

001004

**MATRIX**
Absence Management, Inc.

a *DELPHI* company

05-3-2011

James G Hansen
918 6TH AVE
Menominee, MI 49858

Dear Mr./Ms. Hansen:

Matrix Absence Management, Inc. is the absence administrator for FINCANTIERI MARINE GROUP. This letter is to confirm your requested leave of absence and is not a determination of eligibility or approval. You will be notified regarding your leave status. If you have any questions or documents to provide to Matrix they can be faxed or mailed to:

Matrix Absence Management, Inc
11221 N. 28th Drive, Building E, Suite 100
Phoenix, AZ 85029
Confidential Fax: (602) 866-9707

Once your leave has become active, you can view your claim information at www.matrixeservices.com. (A return email address is required). You will be able to check the status of your leave, verify your personal information, and email your Leave Specialist.

Please check the dates listed as your **last day at work** and your **estimated return to work date** on the enclosed Intake Statement. If these dates are incorrect or have changed, please contact us immediately to correct them.

If you have any questions or if there is anything we can do for you during your leave of absence, please do not hesitate to call your Absence Management Specialist, at 1 (800) 866-2301.

Sincerely,

Matrix Absence Management, Inc.

001005



**FINCANTIERI**
**MARINE GROUP**

May 04, 2011

James Hansen
918 6th Ave
Menominee, MI 49858

Dear Mr. Hansen:

Fincantieri Marine Group, LLC has received your notification for a leave for your own health condition under federal and/or state leave entitlements.

**This letter is ONLY about your ELIGIBILITY based on federal and/or state employment requirements. APPROVAL of your leave is pending medical certification.**

Some states have family and/or medical leave entitlements that may differ from federal entitlements. In your Absence Packet, mailed on the date you requested the leave, is a summary of your rights and responsibilities under federal and/or state leave entitlements.

You have requested this leave beginning on 10/01/2010 and expect it to continue through on or about 10/19/2010. These dates are an estimate until approved based on documentation requested below. If you need to change these dates, please contact Matrix Absence Management, Inc. (Matrix).

Your eligibility has been reviewed and you are eligible for the following entitlement(s):

**Family and Medical Leave Act** - 12 Weeks starting availability
**WI Family Leave (Personal)** - 2 Weeks starting availability

If any portion of your leave was denied under the policies listed above, that denial pertains only to the federal and/or state leave portion of your leave and does not affect any other benefits for which you may be eligible, such as disability benefits. If additional information or extenuating circumstances are provided, it will be reviewed by Matrix.

You will be required to furnish documentation to certify your leave. The Certification of Health Care Provider must be completed and signed by your provider.

**Certification Responsibilities/Information:**

- The "Certification of Health Care" form is enclosed in your Absence Packet. If supplied Matrix with the Health Care Provider's contact information, the certification form was faxed to the Health Care Provider as a courtesy. It is incumbent to be sure that the certification is returned to Matrix by you or your Health Care Provider

- You are required to furnish the documentation so we can evaluate your request. If the documentation is not received within fifteen (15) days, or does not support your request for leave, your request for federal and/or state leave entitlement(s) may not be approved.

- If the documentation for this leave is not complete, Matrix will return it to you with a request for additional information so that we can complete the evaluation of your leave request.

You have fifteen (15) days from the date on this letter (May 04, 2011) to fax or mail the documentation to Matrix (address below).

001006


**FINCANTIERI**
**MARINE GROUP**

May 04, 2011

James Hansen
918 6th Ave
Menominee, MI 49858

Dear Mr. Hansen:

Fincantieri Marine Group, LLC has received your notification for a leave for your own health condition under federal and/or state leave entitlements.

**This letter is ONLY about your ELIGIBILITY based on federal and/or state employment requirements. APPROVAL of your leave is pending medical certification.**

Some states have family and/or medical leave entitlements that may differ from federal entitlements. In your Absence Packet, mailed on the date you requested the leave, is a summary of your rights and responsibilities under federal and/or state leave entitlements.

You have requested this leave beginning on 05/03/2011 and expect it to continue through on or about 05/04/2011. These dates are an estimate until approved based on documentation requested below. If you need to change these dates, please contact Matrix Absence Management, Inc. (Matrix).

Your eligibility has been reviewed and you are eligible for the following entitlement(s):

**Family and Medical Leave Act** - 12 Weeks starting availability
**WI Family Leave (Personal)** - 2 Weeks starting availability

If any portion of your leave was denied under the policies listed above, that denial pertains only to the federal and/or state leave portion of your leave and does not affect any other benefits for which you may be eligible, such as disability benefits. If additional information or extenuating circumstances are provided, it will be reviewed by Matrix.

You will be required to furnish documentation to certify your leave. The Certification of Health Care Provider must be completed and signed by your provider.

**Certification Responsibilities/Information:**

- The "Certification of Health Care" form is enclosed in your Absence Packet. If supplied Matrix with the Health Care Provider's contact information, the certification form was faxed to the Health Care Provider as a courtesy. It is incumbent to be sure that the certification is returned to Matrix by you or your Health Care Provider

- You are required to furnish the documentation so we can evaluate your request. If the documentation is not received within fifteen (15) days, or does not support your request for leave, your request for federal and/or state leave entitlement(s) may not be approved.

- If the documentation for this leave is not complete, Matrix will return it to you with a request for additional information so that we can complete the evaluation of your leave request.

You have fifteen (15) days from the date on this letter (May 04, 2011) to fax or mail the documentation to Matrix (address below).

001007

**Certification of Health Care Provider for Family Member's Serious Health Condition**
(Family and Medical Leave Act)
U.S. Department of Labor Employment Standards Administration Wage and Hour Division
OMB Control Number: 1215-0181 Expires: 12/31/2011



Employer name:     **Fincantieri Marine Group, LLC**

**SECTION I: For Completion by the EMPLOYEE** INSTRUCTIONS to the EMPLOYEE: Please complete Section II before giving this form to your family member or his/her medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave to care for a covered family member with a serious health condition. If requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request. 29 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form to your employer. 29 C.F.R. § 825.305.

Your name:   **James Hansen**

Name of family member for whom you will provide care: _____

Relationship of family member to you: _____

If family member is your son or daughter, date of birth: _____

Describe care you will provide to your family member and estimate leave needed to provide care: _____

_____

Employee Signature _____     Date _____

**SECTION II: For Completion by the HEALTH CARE PROVIDER** INSTRUCTIONS to the HEALTH CARE PROVIDER: The employee listed above has requested leave under the FMLA to care for your patient. Answer, fully and completely, all applicable parts below. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the patient needs leave. Page 3 provides space for additional information, should you need it. Please be sure to sign the form on the last page.

**To the Health Care Provider: If the patient is in California, you may not disclose the underlying diagnosis without consent of the patient.**

Provider's name and business address: _____

Type of practice / Medical specialty: _____

Telephone: _____     Fax: _____

**PART A: MEDICAL FACTS 1.**

1. Approximate date condition commenced: _____

   Probable duration of condition: _____

   Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?     ☐ Yes ☐ No

   If so, dates of admission: _____

   Date(s) you treated the patient for condition: _____

   Was medication, other than over-the-counter medication, prescribed?     ☐ Yes ☐ No

   Will the patient need to have treatment visits at least twice per year due to the condition?     ☐ Yes ☐ No

   Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?

   ☐ Yes ☐ No          If so, state the nature of such treatments and expected duration of treatment:

   _____

2. Is the medical condition pregnancy?   ☐ Yes ☐ No     If so, expected delivery date: _____

001008

3. Describe other relevant medical facts, if any, related to the condition for which the patient needs care (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment): _____

**PART B: AMOUNT OF CARE NEEDED:** When answering these questions, keep in mind that your patient's need for care by the employee seeking leave may include assistance with basic medical, hygienic, nutritional, safety or transportation needs, or the provision of physical or psychological care:

4. Will the patient be incapacitated for a single continuous period of time, including any time for treatment and recovery? ☐ Yes ☐ No
   Estimate the beginning and ending dates for the period of incapacity: _____
   During this time, will the patient need care? ☐ Yes ☐ No
   Explain the care needed by the patient and why such care is medically necessary: _____

5. Will the patient require follow-up treatments, including any time for recovery? ☐ Yes ☐ No
   Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period: _____
   Explain the care needed by the patient, and why such care is medically necessary: _____

6. Will the patient require care on an intermittent or reduced schedule basis, including any time for recovery? ☐ Yes ☐ No Estimate the hours the patient needs care on an intermittent basis, if any:
   _____ hour(s) per day; _____ days per week from _____ through _____
   Explain the care needed by the patient, and why such care is medically necessary: _____

7. Will the condition cause episodic flare-ups periodically preventing the patient from participating in normal daily activities? ☐ Yes ☐ No
   Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):
   Frequency: _____ times per _____ week(s) month(s) _____ Duration: _____ hours or ___ day(s) per episode
   Does the patient need care during these flare-ups? ☐ Yes ☐ No
   Explain the care needed by the patient, and why such care is medically necessary: _____

**ADDITIONAL INFORMATION: IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER.**

_____
_____

Signature of Health Care Provider: _____ Date: _____

PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210.
DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT.

**Return Completed Form to Matrix Absence Management:**
**Fax: 408-361-9030, or Mail: 11221 North 28th Drive, Suite E100, Phoenix AZ 85029**

001009

Certification of Health Care Provider for
Employee's Serious Health Condition (Family
and Medical Leave Act)

U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division



OMB Control Number: 1215-0181
Expires: 12/31/2011

Employer name: **FINCANTIERI MARINE GROUP**

Employee's job title: _____

Employee name: **James Hansen**

## SECTION I: For Completion by the HEALTH CARE PROVIDER
**INSTRUCTIONS to the HEALTH CARE PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely,
all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your
best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime,"
"unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is
seeking leave. Please be sure to sign the form on the last page.

**To the Health Care Provider: If the patient is in California, you may not disclose the underlying diagnosis without consent of the patient.**

Provider's name and business address: _Michael J. Post MD_

Type of practice / Medical specialty: _IM_

Telephone: _715 · 582 · 3622_ Fax: _715 · 582 · 9201_

## PART A: MEDICAL FACTS

1. Approximate date condition commenced: _10/25/10_ , _exacerbated 5/3/11_

   Probable duration of condition: _months_

   Mark below as applicable:
   Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility? ☐ Yes ☒ No
   If yes, dates of admission: _____
   Date(s) you treated the patient for condition: _10/25/10_ , _1/31/2011_

2. Will the patient need to have treatment visits at least twice per year due to the condition? ☒ Yes ☐ No
   Was medication, other than over-the-counter medication, prescribed? ☒ Yes ☐ No
   Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)? ☐ Yes ☒ No
   If yes, state the nature of such treatments and expected duration of treatment: _____
   _____

3. Is the medical condition pregnancy? ☐ Yes ☒ No
   If yes, expected delivery date: _____

4. Use the information provided by the employer in Section I to answer this question. If the employer fails to provide a list of the employee's
   essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions. Is the
   employee unable to perform any of his/her job functions due to the condition? ☒ Yes ☐ No
   If yes, identify the job functions the employee is unable to perform: _could not concentrate on task_
   _at work_

5. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include
   symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment): _____
   _symptoms of depression including mood disturbance and_
   _anhedonia_

CONTINUED ON NEXT PAGE

**001010**
1

Case 1:12-cv-00032-WCG    Filed 02/11/13    Page 51 of 90  Document 34-2

**PART B: AMOUNT OF LEAVE NEEDED**

6. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery? ☑ Yes ☐ No

   If yes, estimate the beginning and ending dates for the period of incapacity: _May 3 – 7/2011_

7. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition? ☑ Yes ☐ No

   If yes, are the treatments or the reduced number of hours of work medically necessary? ☑ Yes ☐ No

   Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period: _follow up in 1 month, once 2 months after that_

   Estimate the part-time or reduced work schedule the employee needs, if any: _4_ hour(s) per day; _2_ days per week from _7/3/11_ through _8/3/11_ .

8. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions? ☑ Yes ☐ No
   Is it medically necessary for the employee to be absent from work during the flare-ups? ☑ Yes ☐ No

   If so, explain: _to correct the underlying illness_

   Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

   Frequency: _____ times per _____ week(s) per _____ month(s)

   Duration: _____ hours or _2-5_ day(s) per episode

**ADDITIONAL INFORMATION: IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER.**

_____

_____

_____

_____

Signature of Health Care Provider: _Michael H____    Date: _5/11/11_

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**

If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29.C.F.R. § 825.500.Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210.

DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT or **Return completed form to Matrix Absence Management:**

11221 N. 28th Drive, Building E, Suite 100
Phoenix, AZ 85029

001011

2

# Attendance Incident Detail

| Time Period: | 5/12/2010 - 5/12/2011 | | | | | | | Executed on: | 5/12/2011 1:08 PM | |
|---|---|---|---|---|---|---|---|---|---|---|
| Query: | Previously Selected Employee(s) | | | | | | | Printed for: | 52116 | |

Hansen, James G   ID: 08000

Processed through: 5/12/2011 12:00:00 AM        Attendance Profile: 11/15/1999 - Forever        Source Perfect Attendance Definition: MMC Union

| Date | Event/Pattern/Action | Code | Actual Amount | Change | Total | Balance Type | Shift Start Time | Source Policy | Perfect Attendance Disqualification | Source Perfect Attendance Definition |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/23/2010 | POINTS EXPIRATION (5/22/2009) | PT-EXP | | -0.50 | 3.00 | Occurrences | | MMC Union DP Attendance | | |
| 5/29/2010 | POINTS EXPIRATION (5/28/2009) | PT-EXP | | -0.50 | 2.50 | Occurrences | | MMC Union DP Attendance | | |
| 6/7/2010 | Absent Full Occurence | | 8.00 | | | | | | | |
| 6/7/2010 | Full Occurence | | 8.00 | 1.00 | 3.50 | Occurrences | | MMC Union DP Attendance | | |
| 7/9/2010 | Absent Half Occurence | | 4.00 | | | | | | | |
| 7/9/2010 | Half Occurence | | 4.00 | 0.50 | 4.00 | Occurrences | | MMC Union DP Attendance | | |
| 7/9/2010 | 1st Warning | | | | | | | MMC Union TP Attendance | | |
| 8/18/2010 | Absent Half Occurence | | 4.00 | | | | | | | |
| 8/18/2010 | Half Occurence | | 4.00 | 0.50 | 4.50 | Occurrences | | MMC Union DP Attendance | | |
| 8/22/2010 | POINTS EXPIRATION (8/21/2009) | PT-EXP | | -0.50 | 4.00 | Occurrences | | MMC Union DP Attendance | | |
| 8/30/2010 | Absent Full Occurence | | 8.00 | | | | | | | |
| 8/30/2010 | Full Occurence | | 8.00 | 1.00 | 5.00 | Occurrences | | MMC Union DP Attendance | | |
| 9/4/2010 | POINTS EXPIRATION (9/3/2009) | PT-EXP | | -0.50 | 4.50 | Occurrences | | MMC Union DP Attendance | | |
| 9/16/2010 | Absent Full Occurence | | 8.00 | | | | | | | |
| 9/16/2010 | Full Occurence | | 8.00 | 1.00 | 5.50 | Occurrences | | MMC Union DP Attendance | | |
| 9/26/2010 | Absent Half Occurence | | 0.30 | | | | | | | |
| 9/26/2010 | Half Occurence | | 0.30 | 0.50 | 6.00 | Occurrences | | MMC Union DP Attendance | | |

*Multiple transactions related to the same incident   Reason Codes:   (*1) - Action Given   (*2) - Rule Group Change   (*3) - Discipline Level Change

Case 1:12-cv-00032-WCG   Filed 02/11/13   Page 53 of 90   Document 34-2   001012

# Attendance Incident Detail

**Time Period:** 5/12/2010 - 5/12/2011
Previously Selected Employee(s)
**Query:**

**Hansen, James G   ID:** 06000
Processed through: 5/12/2011 12:00:00 AM

**Attendance Profile:**
**Source Perfect Attendance Definition:** MMC Union
Executed on: 11/15/1999 - Forever

| Date | Event/Pattern/Action | Code | Actual Amount | Change | Total | Balance Type | Shift Start Time | Source Policy | Perfect Attendance Disqualification | Source Perfect Attendance Definition |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/26/2010 | 2nd Warning | | | | | | | MMC Union TP Attendance | | |
| 10/3/2010 | POINTS EXPIRATION (10/2/2009) | PT-EXP | | -0.50 | 5.50 | Occurrences | | MMC Union DP Attendance | | |
| 10/18/2010 | Absent Full Occurance | | 8.00 | | | | | | | |
| 10/18/2010 | Full Occurance | | 8.00 | 1.00 | 6.50 | Occurrences | | MMC Union DP Attendance | | |
| 10/18/2010 | 2nd Warning | | | | | | | MMC Union TP Attendance | | |
| 10/19/2010 | Absent Half Occurance | | 4.00 | | | | | | | |
| 10/19/2010 | Half Occurance | | 4.00 | 0.50 | 7.00 | Occurrences | | MMC Union DP Attendance | | |
| 10/25/2010 | Absent Half Occurance | | 4.00 | | | | | | | |
| 10/25/2010 | Half Occurance | | 4.00 | 0.50 | 7.50 | Occurrences | | MMC Union DP Attendance | | |
| 11/10/2010 | POINTS EXPIRATION (11/9/2009) | PT-EXP | | -0.50 | 7.00 | Occurrences | | MMC Union DP Attendance | | |
| 11/18/2010 | Absent - layoff or vac taken | | 8.00 | | | | | | | |
| 11/19/2010 | Absent - layoff or vac taken | | 8.00 | | | | | | | |
| 12/14/2010 | *Requesting Occurrence* | | *4.00* | | | | | | | |
| 12/14/2010 | Half Occurance | | 4.00 | 0.50 | 7.50 | Occurrences | | MMC Union DP Attendance | | |
| 2/7/2011 | Absent Full Occurance | | 8.00 | | | | | | | |
| 2/7/2011 | Full Occurance | | 8.00 | 1.00 | 8.50 | Occurrences | | MMC Union DP Attendance | | |
| 2/15/2011 | *Suspended* | | *8.00* | | | | | | | |
| 2/16/2011 | *Suspended* | | *8.00* | | | | | | | |

*Multiple transactions related to the same incident   Reason Codes:   (*1) - Action Given   (*2) - Rule Group Change   (*3) - Discipline Level Change

Case 1:12-cv-00032-WCG   Filed 02/11/13   Page 54 of 90   Document 305a62-2
091013

# Attendance Incident Detail

| Time Period: | 5/12/2010 - 5/12/2011 | | | | | | Executed on: | 5/12/2011 1:08 PM |
| Query: | Previously Selected Employee(s) | | | | | | Printed for: | 52116 |

| Date | Event/Pattern/Action | Code | Actual Amount | Change | Total | Balance Type | Shift Start Time | Source Policy | Perfect Attendance Disqualification | Source Perfect Attendance Definition |
|---|---|---|---|---|---|---|---|---|---|---|
| Hansen, James G | ID: | | | | | | | 11/15/1999 - Forever | | MMC Union |
| Processed through: | | 08000 5/12/2011 12:00:00 AM | | | | Attendance Profile: | | | | |
| 2/17/2011 | *Suspended* | | 8.00 | | | | | | | |
| 2/18/2011 | Absent Full Occurence | | 8.00 | | | | | | | |
| 2/18/2011 | Full Occurence | | 8.00 | 1.00 | 9.50 | Occurrences | | MMC Union DP Attendance | | |
| 2/18/2011 | 3rd Warning In Lieu of Suspension | | | | | | | MMC Union TP Attendance | | |
| 3/7/2011 | POINTS EXPIRATION (3/6/2010) | PT-EXP | | -0.50 | 9.00 | Occurrences | | MMC Union DP Attendance | | |
| 5/2/2011 | Absent Half Occurence | | 3.90 | | | | | | | |
| 5/2/2011 | Half Occurence | | 3.90 | 0.50 | 9.50 | Occurrences | | MMC Union DP Attendance | | |
| 5/3/2011 | FMLA Pending | | 8.00 | | | | | | | |
| 5/3/2011 | Full Occurence | | 8.00 | 1.00 | 10.50 | Occurrences | | MMC Union DP Attendance | | |
| 5/4/2011 | FMLA Pending | | 8.00 | | | | | | | |
| 5/4/2011 | Full Occurence | | 8.00 | 1.00 | 11.50 | Occurrences | | MMC Union DP Attendance | | |
| 5/5/2011 | FMLA Pending | | 8.00 | | | | | | | |
| 5/5/2011 | Full Occurence | | 8.00 | 1.00 | 12.50 | Occurrences | | MMC Union DP Attendance | | |
| 5/6/2011 | FMLA Pending | | 8.00 | | | | | | | |
| 5/6/2011 | Full Occurence | | 8.00 | 1.00 | 13.50 | Occurrences | | MMC Union DP Attendance | | |
| 5/9/2011 | FMLA Pending | | 8.00 | | | | | | | |
| 5/9/2011 | Full Occurence | | 8.00 | 1.00 | 14.50 | Occurrences | | MMC Union DP Attendance | | |

Multiple transactions related to the same Incident   Reason Codes:   (*1) - Action Given   (*2) - Rule Group Change   (*3) - Discipline Level Change

Case 1:12-cv-00032-WCG     Filed 02/11/13     Page 55 of 90     Document 94-2     001014

# Attendance Incident Detail

**Time Period:** 5/12/2010 - 5/12/2011
**Query:** Previously Selected Employee(s)

**Executed on:** 5/12/2011 1:08 PM
**Printed for:** 52116

| Date | Event/Pattern/Action | Code | Actual Amount | Change | Total | Balance Type | Shift Start Time | Source Policy | Perfect Attendance Disqualification | Source Perfect Attendance Definition |
|------|----------------------|------|---------------|--------|-------|--------------|------------------|---------------|-------------------------------------|--------------------------------------|
| Hansen, James G | ID: | 08000 | | | | Attendance Profile: | | 11/15/1999 - Forever | | MMC Union |
| Processed through: | | 5/12/2011 12:00:00 AM | | | | | | | | |
| **Total:** | | | | | 14.50 Occurrences | | | | | |

Employee:

Foreman:

HR: *[signature]*

Union: *[signature]* 5/12/11

*Multiple transactions related to the same Incident    Reason Codes:    (*1) - Action Given    (*2) - Rule Group Change    (*3) - Discipline Level Change

001015



**MARINE GROUP**

May 16, 2011

James Hansen
918 6th Ave
Menominee, MI 49858

Dear Mr. Hansen:

Fincantieri Marine Group, LLC has received your request for a leave (OR for your own health condition) under federal and/or state leave entitlement(s). You have requested your leave to begin on 05/03/2011 and expect it to continue until on or about 05/09/2011.

For your review, the rights and responsibilities of the federal and/or state leave entitlement is summarized in the Absence Packet sent previously.

Based on the requirements for eligibility outlined under the rights and responsibilities of the federal and/or state leave entitlements, your leave is <u>not approved</u> because:

No documentation was returned to certify the leave.

This denial pertains <u>only</u> to the federal and/or state leave entitlement(s) portion of your absence. It does <u>not</u> affect any other benefits you may be eligible for, such as disability benefits.

If you have any questions regarding the leave process or have information to add to your leave request, please contact the Matrix Absence Management, Inc. Leave Coordinator.

Matrix Absence Management, Inc.
11221 North 28th Drive, Suite E100
Phoenix, AZ 85029
Confidential Fax: 408-361-9030
Phone: 800-866-2301, Extension 52276
Email: Karla.Drew@Matrixcos.com

If you have questions regarding the continuation of your benefits during your leave, please contact Fincantieri Marine Group, LLC's Human Resources Group.

Karla Drew, Leave Coordinator
Matrix Absence Management, Inc. on behalf of
The Comp and Benefits Group, Fincantieri Marine Group, LLC

001016

certificate to your Human Resources Representative and Matrix prior to your return to active duty. If such certification is not received, your return to work may be delayed until certification is provided.

- For more detail, please refer to the eligibility letter sent to you previously.

Matrix Absence Management, Inc.
11221 North 28th Drive, Suite E100
Phoenix, AZ 85029
Confidential Fax: 408-361-9030
Phone: 800-866-2301, Extension 52276
Email: Karla.Drew@Matrixcos.com

If this is an intermittent leave, you are also required to report your absences to Matrix by calling 877-840-2136. For scheduled appointments, you must inform Human Resources and Matrix in advance of your absence. If advance notice is not possible, notify Matrix within one business day. Please notify Matrix once the need for intermittent leave is no longer required.

If you return to work within your federal and/or state family leave entitlement period, you will be reinstated to the former or equivalent position, unless Fincantieri Marine Group, LLC is unable to do so for reasons unrelated to the leave.

If you have any questions regarding the leave process or have information to add to your leave request, please contact the Matrix Absence Management, Inc. Leave Coordinator. If you have questions regarding the continuation of your benefits during your leave, please contact Fincantieri Marine Group, LLC's Human Resources Group.

Karla Drew, Leave Coordinator
Matrix Absence Management, Inc. on behalf of
The Comp and Benefits Group, Fincantieri Marine Group, LLC

Attachment: Absence Report (if applicable for intermittent leave)

001017


**FINCANTIERI**
**MARINE GROUP**

May 20, 2011

James Hansen
918 6th Ave
Menominee, MI 49858

Dear Mr. Hansen:

Matrix Absence Management, Inc. (Matrix) has completed a review of your documentation for your leave for your own health condition. Your leave under federal and/or state leave entitlements has been approved from 05/03/2011 through 12/31/2011 under the following policies:

Because your leave will be unscheduled, it is not possible to provide the hours, days, or weeks that will be counted against your FMLA entitlement at this time. You have the right to request this information once in a 30-day period, if leave was taken in the respective 30-day period. Additionally, below is a listing of the absences that you have taken during the last 8 weeks and their designation under federal, state, or employer-authorized policies:

Intermittent 05/03/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/04/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/05/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/06/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/09/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved

Your certification is valid through 12/31/2011.

If any portion of your leave was denied under the policies listed above, that denial pertains only to the federal a**l** federal and/or state leave portion of your leave and does not affect any other benefits for which you may be eligible, such as disability benefits. If additional information is provided, it will be reviewed by Matrix.

- Your approved time off will be applied against your federal and/or state leave entitlement(s).

- If the leave is for a serious health condition and you need to change the dates of your leave request, you must forward updated information from the Health Care Provider to Matrix (address below) at least two (2) business days prior to the effective date of the change.

- If the leave is for care of a newborn, adopted child or child placed for foster care, contact Matrix (address below) at least two (2) business days prior to the effective date of the change.

- If the leave is for your own serious health condition you will be required to forward a return-to-work certificate to your Human Resources Representative and Matrix prior to your return to active duty. If such certification is not received, your return to work may be delayed until certification is provided.

**001018**

# FINCANTIERI
## MARINE GROUP

May 09, 2011

James Hansen
918 6th Ave
Menominee, MI 49858

Dear Mr. Hansen:

This letter is about the federal and/or state leave request you filed with Matrix Absence Management, Inc. (Matrix) on or about: 05/04/2011.

### If leave is for a Medical Reason:

We received the Certification of Health Care Provider form on 05/09/2011; however, the information was incomplete. It is your responsibility to have the Health Care Provider complete the highlighted areas and return the form to Matrix (address below) no later than 05/16/2011 unless it is not practicable under the particular circumstances despite your diligent good faith efforts, or your leave may be denied under federal and/or state leave laws.

### If leave is for the birth, adoption, foster care placement:

We received the documentation of birth, adoption or foster care placement, as applicable, on 05/09/2011; however, the information was incomplete. A copy of the original documentation is attached. It is your responsibility to have the highlighted areas complete and return the form to Matrix (address below) no later than 05/16/2011. Unless it is not practicable under the particular circumstances despite your diligent good faith efforts your leave may be denied under federal and/or state leave laws.

Matrix Absence Management, Inc.
11221 North 28th Drive, Suite E100
Phoenix, AZ 85029
Confidential Fax: 408-361-9030
Phone: 800-866-2301, Extension 52276
Email: Karla.Drew@Matrixcos.com

If you have any questions or have information to add to your leave request, please contact the Matrix Absence Management, Inc. Leave Coordinator. If you have questions regarding the continuation of your benefits during your leave, please contact Fincantieri Marine Group, LLC's Comp and Benefit Group.

Karla Drew, Leave Coordinator
Matrix Absence Management, Inc. on behalf of
The Comp and Benefits Group, Fincantieri Marine Group, LLC

Attachment: Certification of Health Care Provider

001019


**FINCANTIERI**
**MARINE GROUP**

May 23, 2011

James Hansen
918 6th Ave
Menominee, MI 49858

Dear Mr. Hansen:

Matrix Absence Management, Inc. (Matrix) has completed a review of your documentation for your leave for your own health condition. Your leave under federal and/or state leave entitlements has been approved from 05/03/2011 through 12/31/2011 under the following policies:

Because your leave will be unscheduled, it is not possible to provide the hours, days, or weeks that will be counted against your FMLA entitlement at this time. You have the right to request this information once in a 30-day period, if leave was taken in the respective 30-day period. Additionally, below is a listing of the absences that you have taken during the last 8 weeks and their designation under federal, state, or employer-authorized policies:

Intermittent 05/03/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/04/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/05/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/06/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/09/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/23/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved

Your certification is valid through 12/31/2011.

If any portion of your leave was denied under the policies listed above, that denial pertains only to the **federal a**
**federal and/or state leave portion of your leave and does not affect any other benefits** for which you may be eligible, such as disability benefits. If additional information is provided, it will be reviewed by Matrix.

- Your approved time off will be applied against your federal and/or state leave entitlement(s).

- If the leave is for a serious health condition and you need to change the dates of your leave request, you must forward updated information from the Health Care Provider to Matrix (address below) at least two (2) business days prior to the effective date of the change.

- If the leave is for care of a newborn, adopted child or child placed for foster care, contact Matrix (address below) at least two (2) business days prior to the effective date of the change.

- If the leave is for your own serious health condition you will be required to forward a return-to-work certificate to your Human Resources Representative and Matrix prior to your return to active duty. If such certification is not received, your return to work may be delayed until certification is provided.

001020

least two (2) business days prior to the effective date of the change.

- If the leave is for care of a newborn, adopted child or child placed for foster care, contact Matrix (address below) at least two (2) business days prior to the effective date of the change.

- If the leave is for your own serious health condition you will be required to forward a return-to-work certificate to your Human Resources Representative and Matrix prior to your return to active duty. If such certification is not received, your return to work may be delayed until certification is provided.

- For more detail, please refer to the eligibility letter sent to you previously.

Matrix Absence Management, Inc.
11221 North 28th Drive, Suite E100
Phoenix, AZ 85029
Confidential Fax: 877-788-9736
Phone: 800-866-2301, Ext ension 2204
Email: Yvonne.Rangel@Matrixcos.com

If this is an intermittent leave, you are also required to report your absences to Matrix by calling 800-202-0055. For scheduled appointments, you must inform your supervisor in advance of your absence. If advance notice is not possible, notify your supervisor as soon as possible. Please notify Matrix once the need for intermittent leave is no longer required.

If you return to work within your federal and/or state family leave entitlement period, you will be reinstated to the former or equivalent position, unless Fincantieri Marine Group, LLC is unable to do so for reasons unrelated to the leave.

If you have any questions regarding the leave process or have information to add to your leave request, please contact the Matrix Absence Management, Inc. Integrated Claims Examiner. If you have questions regarding the continuation of your benefits during your leave, please contact Fincantieri Marine Group, LLC's Human Resources Group.

Yvonne Rangel, Absence Management Specialist
Matrix Absence Management, Inc. on behalf of
The Comp and Benefits Group, Fincantieri Marine Group, LLC

Attachment: Absence Report (if applicable for intermittent leave)

001021

# Attendance Incident Detail

| Time Period: | 5/26/2010 - 5/28/2011 | | | | | | | Executed on: | 5/26/2011 7:54 AM | |
| Query: | Previously Selected Employee(s) | | | | | | | Printed for: | 52116 | |

Hansen, James G   ID: 08000
Processed through: 5/26/2011 12:00:00 AM

Attendance Profile: 11/15/1999 - Forever   MMC Union

| Date | Event/Pattern/Action | Code | Actual Amount | Change | Total | Balance Type | Shift Start Time | Source Policy | Perfect Attendance Disqualification | Source Perfect Attendance Definition |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/28/2010 | POINTS EXPIRATION (5/28/2009) | PT-EXP | | -0.50 | 2.50 | Occurrences | | MMC Union DP Attendance | | |
| 6/7/2010 | Absent Full Occurence | | 8.00 | | | | | | | |
| 6/7/2010 | Full Occurence | | 8.00 | 1.00 | 3.50 | Occurrences | | MMC Union DP Attendance | | |
| 7/9/2010 | Absent Half Occurence | | 4.00 | | | | | | | |
| 7/9/2010 | Half Occurence | | 4.00 | 0.50 | 4.00 | Occurrences | | MMC Union DP Attendance | | |
| 7/9/2010 | 1st Warning | | | | | | | MMC Union TP Attendance | | |
| 8/18/2010 | Absent Half Occurence | | 4.00 | | | | | | | |
| 8/18/2010 | Half Occurence | | 4.00 | 0.50 | 4.50 | Occurrences | | MMC Union DP Attendance | | |
| 8/22/2010 | POINTS EXPIRATION (8/21/2009) | PT-EXP | | -0.50 | 4.00 | Occurrences | | MMC Union DP Attendance | | |
| 8/30/2010 | Absent Full Occurence | | 8.00 | | | | | | | |
| 8/30/2010 | Full Occurence | | 8.00 | 1.00 | 5.00 | Occurrences | | MMC Union DP Attendance | | |
| 9/4/2010 | POINTS EXPIRATION (9/3/2009) | PT-EXP | | -0.50 | 4.50 | Occurrences | | MMC Union DP Attendance | | |
| 9/16/2010 | Absent Full Occurence | | 8.00 | | | | | | | |
| 9/16/2010 | Full Occurence | | 8.00 | 1.00 | 5.50 | Occurrences | | MMC Union DP Attendance | | |
| 9/26/2010 | Absent Half Occurence | | 0.30 | | | | | | | |
| 9/26/2010 | Half Occurence | | 0.30 | 0.50 | 6.00 | Occurrences | | MMC Union DP Attendance | | |
| 9/26/2010 | 2nd Warning | | | | | | | MMC Union TP Attendance | | |

*Multiple transactions related to the same incident   Reason Codes:   (*1) - Action Given   (*2) - Rule Group Change   (*3) - Discipline Level Change

Case 1:12-cv-00032-WCG   Filed 02/11/13   Page 63 of 90   Document 34-2

001022

# Attendance Incident Detail

| Time Period: | 5/26/2010 - 5/26/2011 | | | | | | | Executed on: | 5/26/2011 7:54 AM | |
|---|---|---|---|---|---|---|---|---|---|---|
| Query: | Previously Selected Employee(s) | | | | | | | Printed for: | 52116 | |

| Date | Event/Pattern/Action | Code | Actual Amount | Change | Total | Balance Type | Shift Start Time | Source Policy | Perfect Attendance Disqualification | Source Perfect Attendance Definition |
|---|---|---|---|---|---|---|---|---|---|---|
| Hansen, James G | | ID: | 06000 | | | Attendance Profile: | | 11/15/1899 - Forever | | MMC Union |
| Processed through: | | | 5/26/2011 12:00:00 AM | | | | | | | |
| 10/3/2010 | POINTS EXPIRATION (10/2/2009) | PT-EXP | | -0.50 | 5.50 | Occurrences | | MMC Union DP Attendance | | |
| 10/18/2010 | Absent Full Occurence | | | 8.00 | | | | | | |
| 10/18/2010 | Full Occurence | | | 8.00 | 1.00 | 6.50 Occurrences | | MMC Union DP Attendance | | |
| 10/18/2010 | 2nd Warning | | | | | | | MMC Union TP Attendance | | |
| 10/19/2010 | Absent Half Occurence | | | 4.00 | | | | | | |
| 10/19/2010 | Half Occurence | | | 4.00 | 0.50 | 7.00 Occurrences | | MMC Union DP Attendance | | |
| 10/25/2010 | Absent Half Occurence | | | 4.00 | | | | | | |
| 10/25/2010 | Half Occurence | | | 4.00 | 0.50 | 7.50 Occurrences | | MMC Union DP Attendance | | |
| 11/10/2010 | POINTS EXPIRATION (11/9/2009) | PT-EXP | | | -0.50 | 7.00 Occurrences | | MMC Union DP Attendance | | |
| 11/18/2010 | Absent - layoff or vac taken | | | 8.00 | | | | | | |
| 11/19/2010 | Absent - layoff or vac taken | | | 8.00 | | | | | | |
| 12/14/2010 | Requesting Occurrence | | | 4.00 | | | | | | |
| 12/14/2010 | Half Occurence | | | 4.00 | 0.50 | 7.50 Occurrences | | MMC Union DP Attendance | | |
| 2/7/2011 | Absent Full Occurence | | | 8.00 | | | | | | |
| 2/7/2011 | Full Occurence | | | 8.00 | 1.00 | 8.50 Occurrences | | MMC Union DP Attendance | | |
| 2/15/2011 | Suspended | | | 8.00 | | | | | | |
| 2/16/2011 | Suspended | | | 8.00 | | | | | | |
| 2/17/2011 | Suspended | | | 8.00 | | | | | | |

*Multiple transactions related to the same incident   Reason Codes:   (*1) - Action Given   (*2) - Rule Group Change   (*3) - Discipline Level Change

Pag

## Attendance Incident Detail

| Time Period: | 5/26/2010 - 5/26/2011 | | | | | | | Executed on: | 5/26/2011 7:54 AM | |
| Query: | Previously Selected Employee(s) | | | | | | | Printed for: | 52116 | |

| Date | Event/Pattern/Action | Code | Actual Amount | Change | Total | Balance Type | Shift Start Time | Source Policy | Perfect Attendance Disqualification | Source Perfect Attendance Definition |
|------|---------------------|------|---------------|--------|-------|--------------|------------------|---------------|-----------------------------------|-------------------------------------|
| Hansen, James G | | ID: 08000 | | | | Attendance Profile: | | 11/15/1999 - Forever | | MMC Union |
| Processed through:: | | 5/26/2011 12:00:00 AM | | | | | | | | |
| 2/18/2011 | Absent Full Occurence | | 8.00 | | | | | | | |
| 2/18/2011 | Full Occurence | | 8.00 | 1.00 | 9.50 | Occurrences | | MMC Union DP Attendance | | |
| 2/18/2011 | 3rd Warning in Lieu of Suspension | | | | | | | MMC Union TP Attendance | | |
| 3/7/2011 | POINTS EXPIRATION (3/6/2010) | PT-EXP | | -0.50 | 8.00 | Occurrences | | MMC Union DP Attendance | | |
| 5/2/2011 | Absent Half Occurence | | 3.90 | | | | | | | |
| 5/2/2011 | Half Occurence | | 3.90 | 0.50 | 9.50 | Occurrences | | MMC Union DP Attendance | | |
| 5/3/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| 5/4/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| 5/5/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| 5/6/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| 5/9/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| 5/23/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| Total: | | | | | 9.50 | Occurrences | | | | |

*Multiple transactions related to the same incident   Reason Codes:   (*1) - Action Given   (*2) - Rule Group Change   (*3) - Discipline Level Change

Employee _____
Foreman _____
HR _____
Union _____
5/26/11

001024


**FINCANTIERI**
**MARINE GROUP**

May 31, 2011

James Hansen
918 6th Ave
Menominee, MI 49858

Dear Mr. Hansen:

Matrix Absence Management, Inc. (Matrix) has completed a review of your documentation for your leave for your own health condition. Your leave under federal and/or state leave entitlements has been approved from 05/03/2011 through 12/31/2011 under the following policies:

Because your leave will be unscheduled, it is not possible to provide the hours, days, or weeks that will be counted against your FMLA entitlement at this time. You have the right to request this information once in a 30-day period, if leave was taken in the respective 30-day period. Additionally, below is a listing of the absences that you have taken during the last 8 weeks and their designation under federal, state, or employer-authorized policies:

Intermittent 05/03/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/04/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/05/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/06/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/09/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/23/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/31/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved

Your certification is valid through 12/31/2011.

If any portion of your leave was denied under the policies listed above, that denial pertains only to the federal and federal and/or state leave portion of your leave and does not affect any other benefits for which you may be eligible, such as disability benefits. If additional information is provided, it will be reviewed by Matrix.

- Your approved time off will be applied against your federal and/or state leave entitlement(s).

- If the leave is for a serious health condition and you need to change the dates of your leave request, you must forward updated information from the Health Care Provider to Matrix (address below) at least two (2) business days prior to the effective date of the change.

- If the leave is for care of a newborn, adopted child or child placed for foster care, contact Matrix (address below) at least two (2) business days prior to the effective date of the change.

- If the leave is for your own serious health condition you will be required to forward a return-to-work

001025

- If the leave is for a serious health condition and you need to change the dates of your leave request, you must forward updated information from the Health Care Provider to Matrix (address below) at least two (2) business days prior to the effective date of the change.

- If the leave is for care of a newborn, adopted child or child placed for foster care, contact Matrix (address below) at least two (2) business days prior to the effective date of the change.

- If the leave is for your own serious health condition you will be required to forward a return-to-work certificate to your Human Resources Representative and Matrix prior to your return to active duty. If such certification is not received, your return to work may be delayed until certification is provided.

- For more detail, please refer to the eligibility letter sent to you previously.

Matrix Absence Management, Inc.
11221 North 28th Drive, Suite E100
Phoenix, AZ 85029
Confidential Fax: 408-361-9030
Phone: 800-866-2301, Extension 52276
Email: Karla.Drew@Matrixcos.com

If this is an intermittent leave, you are also required to report your absences to Matrix by calling 800-202-0055. For scheduled appointments, you must inform your supervisor in advance of your absence. If advance notice is not possible, notify your supervisor as soon as possible. Please notify Matrix once the need for intermittent leave is no longer required.

If you return to work within your federal and/or state family leave entitlement period, you will be reinstated to the former or equivalent position, unless Fincantieri Marine Group, LLC is unable to do so for reasons unrelated to the leave.

If you have any questions regarding the leave process or have information to add to your leave request, please contact the Matrix Absence Management, Inc. Leave Coordinator. If you have questions regarding the continuation of your benefits during your leave, please contact Fincantieri Marine Group, LLC's Human Resources Group.

Karla Drew, Leave Coordinator
Matrix Absence Management, Inc. on behalf of
The Comp and Benefits Group, Fincantieri Marine Group, LLC

Attachment: Absence Report (if applicable for intermittent leave)

001026



# FINCANTIERI
### MARINE GROUP

June 23, 2011

James Hansen
918 6th Ave
Menominee, MI 49858

Dear Mr. Hansen:

Matrix Absence Management, Inc. (Matrix) has completed a review of your documentation for your leave for your own health condition. Your leave under federal and/or state leave entitlements has been approved from 05/03/2011 through 12/31/2011 under the following policies:

Because your leave will be unscheduled, it is not possible to provide the hours, days, or weeks that will be counted against your FMLA entitlement at this time. You have the right to request this information once in a 30-day period, if leave was taken in the respective 30-day period. Additionally, below is a listing of the absences that you have taken during the last 8 weeks and their designation under federal, state, or employer-authorized policies:

Intermittent 05/03/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/04/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/05/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/06/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/09/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/23/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/31/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/01/2011 for 3.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/13/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/14/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/15/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/22/2011 for 3.08 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Denied (Exhausted)

Your certification is valid through 12/31/2011.

If any portion of your leave was denied under the policies listed above, that denial pertains only to the federal a1 federal and/or state leave portion of your leave and does not affect any other benefits for which you may be eligible, such as disability benefits. If additional information is provided, it will be reviewed by Matrix.

• Your approved time off will be applied against your federal and/or state leave entitlement(s).

**001027**

- If the leave is for a serious health condition and you need to change the dates of your leave request, you must forward updated information from the Health Care Provider to Matrix (address below) at least two (2) business days prior to the effective date of the change.

- If the leave is for care of a newborn, adopted child or child placed for foster care, contact Matrix (address below) at least two (2) business days prior to the effective date of the change.

- If the leave is for your own serious health condition you will be required to forward a return-to-work certificate to your Human Resources Representative and Matrix prior to your return to active duty. If such certification is not received, your return to work may be delayed until certification is provided.

- For more detail, please refer to the eligibility letter sent to you previously.

Matrix Absence Management, Inc.
11221 North 28th Drive, Suite E100
Phoenix, AZ 85029
Confidential Fax: 408-361-9030
Phone: 800-866-2301, Extension 52276
Email: Karla.Drew@Matrixcos.com

If this is an intermittent leave, you are also required to report your absences to Matrix by calling 800-202-0055. For scheduled appointments, you must inform your supervisor in advance of your absence. If advance notice is not possible, notify your supervisor as soon as possible. Please notify Matrix once the need for intermittent leave is no longer required.

If you return to work within your federal and/or state family leave entitlement period, you will be reinstated to the former or equivalent position, unless Fincantieri Marine Group, LLC is unable to do so for reasons unrelated to the leave.

If you have any questions regarding the leave process or have information to add to your leave request, please contact the Matrix Absence Management, Inc. Leave Coordinator. If you have questions regarding the continuation of your benefits during your leave, please contact Fincantieri Marine Group, LLC's Human Resources Group.

Karla Drew, Leave Coordinator
Matrix Absence Management, Inc. on behalf of
The Comp and Benefits Group, Fincantieri Marine Group, LLC

Attachment: Absence Report (if applicable for intermittent leave)

001028



# FINCANTIERI
## MARINE GROUP

June 27, 2011

James Hansen
918 6th Ave
Menominee, MI 49858

Dear Mr. Hansen:

Matrix Absence Management, Inc. (Matrix) has completed a review of your documentation for your leave for your own health condition. Your leave under federal and/or state leave entitlements has been approved from 05/03/2011 through 12/31/2011 under the following policies:

Because your leave will be unscheduled, it is not possible to provide the hours, days, or weeks that will be counted against your FMLA entitlement at this time. You have the right to request this information once in a 30-day period, if leave was taken in the respective 30-day period. Additionally, below is a listing of the absences that you have taken during the last 8 weeks and their designation under federal, state, or employer-authorized policies:

Intermittent 05/03/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/04/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/05/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/06/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/09/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/23/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/31/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/01/2011 for 3.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/13/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/14/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/15/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/22/2011 for 3.08 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Denied (Exhausted)
Intermittent 06/27/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Denied (Exhausted)

Your certification is valid through 12/31/2011.

If any portion of your leave was denied under the policies listed above, that denial pertains only to the **federal a**I **federal and/or state leave portion of your leave and does not affect any other benefits** for which you may be eligible, such as disability benefits. If additional information is provided, it will be reviewed by Matrix.

- Your approved time off will be applied against your federal and/or state leave entitlement(s).

- If the leave is for a serious health condition and you need to change the dates of your leave request, you must forward updated information from the Health Care Provider to Matrix (address below) at least two (2) business days prior to the effective date of the change.

- If the leave is for care of a newborn, adopted child or child placed for foster care, contact Matrix (address below) at least two (2) business days prior to the effective date of the change.

- If the leave is for your own serious health condition you will be required to forward a return-to-work certificate to your Human Resources Representative and Matrix prior to your return to active duty. If such certification is not received, your return to work may be delayed until certification is provided.

- For more detail, please refer to the eligibility letter sent to you previously.

Matrix Absence Management, Inc.
11221 North 28th Drive, Suite E100
Phoenix, AZ 85029
Confidential Fax: 877-788-9736
Phone: 800-866-2301, Ext ension 2204
Email: Yvonne.Rangel@Matrixcos.com

If this is an intermittent leave, you are also required to report your absences to Matrix by calling 800-202-0055. For scheduled appointments, you must inform your supervisor in advance of your absence. If advance notice is not possible, notify your supervisor as soon as possible. Please notify Matrix once the need for intermittent leave is no longer required.

If you return to work within your federal and/or state family leave entitlement period, you will be reinstated to the former or equivalent position, unless Fincantieri Marine Group, LLC is unable to do so for reasons unrelated to the leave.

If you have any questions regarding the leave process or have information to add to your leave request, please contact the Matrix Absence Management, Inc. Integrated Claims Examiner. If you have questions regarding the continuation of your benefits during your leave, please contact Fincantieri Marine Group, LLC's Human Resources Group.

Yvonne Rangel, Absence Management Specialist
Matrix Absence Management, Inc. on behalf of
The Comp and Benefits Group, Fincantieri Marine Group, LLC

Attachment: Absence Report (if applicable for intermittent leave)

001030


**FINCANTIERI**
**MARINE GROUP**

July 14, 2011

James Hansen
918 6th Ave
Menominee, MI 49858

Dear Mr. Hansen:

Matrix Absence Management, Inc. (Matrix) has completed a review of your documentation for your leave for your own health condition. Your leave under federal and/or state leave entitlements has been approved from 05/03/2011 through 12/31/2011 under the following policies:

Because your leave will be unscheduled, it is not possible to provide the hours, days, or weeks that will be counted against your FMLA entitlement at this time. You have the right to request this information once in a 30-day period, if leave was taken in the respective 30-day period. Additionally, below is a listing of the absences that you have taken during the last 8 weeks and their designation under federal, state, or employer-authorized policies:

Intermittent 05/23/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/31/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/01/2011 for 3.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/13/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/14/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/15/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/22/2011 for 3.08 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Denied (Exhausted)
Intermittent 06/27/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Denied (Exhausted)
Intermittent 07/01/2011 for 8.00 hours: Family and Medical Leave Act - Denied (Frequency exceeded), WI Family Leave (Personal) - Denied (Frequency exceeded)
Intermittent 07/11/2011 for 8.00 hours: Family and Medical Leave Act - Denied (Frequency exceeded), WI Family Leave (Personal) - Denied (Frequency exceeded)
Intermittent 07/12/2011 for 8.00 hours: Family and Medical Leave Act - Denied (Frequency exceeded), WI Family Leave (Personal) - Denied (Frequency exceeded)

Your certification is valid through 12/31/2011.

If any portion of your leave was denied under the policies listed above, that denial pertains only to the **federal a**
**federal and/or state leave portion of your leave and does not affect any other benefits** for which you may be eligible, such as disability benefits. If additional information is provided, it will be reviewed by Matrix.

- Your approved time off will be applied against your federal and/or state leave entitlement(s).

- If the leave is for a serious health condition and you need to change the dates of your leave request, you must forward updated information from the Health Care Provider to Matrix (address below) at

**001031**

# FAX COVER SHEET

**To:** Dr Post — **From:** Karla.Drew@matrixcos.com

**Company:**                          **Date:** 07/06/11 08:35:53 AM

**Fax Number:** 7155829201            **Pages (Including cover):** 4

**Re:** Leave 904193 (James Hansen) **Needs attention**

**Notes:**

Hi Doctor Hansen

Steven's 7/1 absence is out of his frequency and duration. Please confirm item # 7. Please respond within 7days.

Thank you,

Karla Drew
Integrated Claims Examiner
Matrix Absence Management, Inc.
Phone: 800-866-2301 X 52276
Fax:    408-361-9030
Karla.Drew@matrixcos.com
http://www.matrixcos.com





≡   0 0 1 0 3 2

Case 1:12-cv-00032-WCG     Filed 02/11/13     Page 73 of 90     Document 34-2



July 14, 2011

James Hansen
918 6th Ave
Menominee, MI 49858

Dear Mr. Hansen:

Matrix Absence Management, Inc. (Matrix) has completed a review of your documentation for your leave for your own health condition. Your leave under federal and/or state leave entitlements has been approved from 05/03/2011 through 12/31/2011 under the following policies:

Because your leave will be unscheduled, it is not possible to provide the hours, days, or weeks that will be counted against your FMLA entitlement at this time. You have the right to request this information once in a 30-day period, if leave was taken in the respective 30-day period. Additionally, below is a listing of the absences that you have taken during the last 8 weeks and their designation under federal, state, or employer-authorized policies:

Intermittent time off to be determined.

Your certification is valid through 12/31/2011.

If any portion of your leave was denied under the policies listed above, that denial pertains only to the federal and federal and/or state leave portion of your leave and does not affect any other benefits for which you may be eligible, such as disability benefits. If additional information is provided, it will be reviewed by Matrix.

- Your approved time off will be applied against your federal and/or state leave entitlement(s).

- If the leave is for a serious health condition and you need to change the dates of your leave request, you must forward updated information from the Health Care Provider to Matrix (address below) at least two (2) business days prior to the effective date of the change.

- If the leave is for care of a newborn, adopted child or child placed for foster care, contact Matrix (address below) at least two (2) business days prior to the effective date of the change.

- If the leave is for your own serious health condition you will be required to forward a return-to-work certificate to your Human Resources Representative and Matrix prior to your return to active duty. If such certification is not received, your return to work may be delayed until certification is provided.

- For more detail, please refer to the eligibility letter sent to you previously.

Matrix Absence Management, Inc.
11221 North 28th Drive, Suite E100
Phoenix, AZ 85029
Confidential Fax: 877-788-9736
Phone: 800-866-2301, Extension 2204

001033

# FINCANTIERI
## MARINE GROUP

July 22, 2011

James Hansen
918 6th Ave
Menominee, MI 49858

Dear Mr. Hansen:

Matrix Absence Management, Inc. (Matrix) has completed a review of your documentation for your leave for your own health condition. Your leave under federal and/or state leave entitlements has been approved from 05/03/2011 through 12/31/2011 under the following policies:

Because your leave will be unscheduled, it is not possible to provide the hours, days, or weeks that will be counted against your FMLA entitlement at this time. You have the right to request this information once in a 30-day period, if leave was taken in the respective 30-day period. Additionally, below is a listing of the absences that you have taken during the last 8 weeks and their designation under federal, state, or employer-authorized policies:

Intermittent 05/23/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 05/31/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/01/2011 for 3.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/13/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/14/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/15/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Approved
Intermittent 06/22/2011 for 3.08 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Denied (Exhausted)
Intermittent 06/27/2011 for 8.00 hours: Family and Medical Leave Act - Approved, WI Family Leave (Personal) - Denied (Exhausted)
Intermittent 07/01/2011 for 8.00 hours: Family and Medical Leave Act - Denied (Frequency exceeded), WI Family Leave (Personal) - Denied (Frequency exceeded)
Intermittent 07/11/2011 for 8.00 hours: Family and Medical Leave Act - Denied (Frequency exceeded), WI Family Leave (Personal) - Denied (Frequency exceeded)
Intermittent 07/12/2011 for 8.00 hours: Family and Medical Leave Act - Denied (Frequency exceeded), WI Family Leave (Personal) - Denied (Frequency exceeded)
Intermittent 07/13/2011 for 8.00 hours: Family and Medical Leave Act - Denied (Frequency exceeded), WI Family Leave (Personal) - Denied (Frequency exceeded)
Intermittent 07/18/2011 for 8.00 hours: Family and Medical Leave Act - Denied (Frequency exceeded), WI Family Leave (Personal) - Denied (Frequency exceeded)

Your certification is valid through 12/31/2011.

If any portion of your leave was denied under the policies listed above, that denial pertains only to the federal a1 federal and/or state leave portion of your leave and does not affect any other benefits for which you may be eligible, such as disability benefits. If additional information is provided, it will be reviewed by Matrix.

• Your approved time off will be applied against your federal and/or state leave entitlement(s).

001034

# Attendance Incident Detail

| Time Period: | 7/22/2010 - 7/22/2011 | | | | | | | Executed on: | 7/22/2011 8:15 AM | |
| Query: | Previously Selected Employee(s) | | | | | | | Printed for: | 52403 | |

Hensen, James G    ID: 05000

Processed through: 7/22/2011 12:00:00 AM

Attendance Profile:

Source Perfect Attendance Definition: MMC Union

| Date | Event/Pattern/Action | Code | Actual Amount | Change | Total | Balance Type | Shift Start Time | Source Policy | Perfect Attendance Disqualification | Source Perfect Attendance Definition |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 11/15/1999 - Forever | | |
| 8/18/2010 | Absent Half Occurence | | 4.00 | | | | | | | |
| 8/18/2010 | Half Occurence | | 4.00 | 0.50 | 4.50 | Occurrences | | MMC Union DP Attendance | | |
| 8/22/2010 | POINTS EXPIRATION (8/21/2009) | PT-EXP | | -0.50 | 4.00 | Occurrences | | MMC Union DP Attendance | | |
| 8/30/2010 | Absent Full Occurence | | 8.00 | | | | | | | |
| 8/30/2010 | Full Occurence | | 8.00 | 1.00 | 5.00 | Occurrences | | MMC Union DP Attendance | | |
| 9/4/2010 | POINTS EXPIRATION (9/3/2009) | PT-EXP | | -0.50 | 4.50 | Occurrences | | MMC Union DP Attendance | | |
| 9/16/2010 | Absent Full Occurence | | 8.00 | | | | | | | |
| 9/16/2010 | Full Occurence | | 8.00 | 1.00 | 5.50 | Occurrences | | MMC Union DP Attendance | | |
| 9/26/2010 | Overtime - Deleted | | 0.30 | | | | | | | |
| 10/3/2010 | POINTS EXPIRATION (10/2/2009) | PT-EXP | | -0.50 | 5.00 | Occurrences | | MMC Union DP Attendance | | |
| 10/18/2010 | Absent Full Occurence | | 8.00 | | | | | | | |
| 10/18/2010 | Full Occurence | | 8.00 | 1.00 | 6.00 | Occurrences | | MMC Union DP Attendance | | |
| 10/19/2010 | Absent Half Occurence | | 4.00 | | | | | | | |
| 10/19/2010 | Half Occurence | | 4.00 | 0.50 | 6.50 | Occurrences | | MMC Union DP Attendance | | |
| 10/25/2010 | Absent Half Occurence | | 4.00 | | | | | | | |
| 10/25/2010 | Half Occurence | | 4.00 | 0.50 | 7.00 | Occurrences | | MMC Union DP Attendance | | |
| 11/10/2010 | POINTS EXPIRATION (11/9/2009) | PT-EXP | | -0.50 | 6.50 | Occurrences | | MMC Union DP Attendance | | |

*Multiple transactions related to the same Incident    Reason Codes:    (*1) - Action Given    (*2) - Rule Group Change    (*3) - Discipline Level Change

Case 1:12-cv-00032-WCG    Filed 02/11/13    Page 76 of 90    Document 34-2    101035

# Attendance Incident Detail

| Time Period: | 7/22/2010 - 7/22/2011 | | | | | | | Executed on: | 7/22/2011 8:15 AM |
|---|---|---|---|---|---|---|---|---|---|
| Query: | Previously Selected Employee(s) | | | | | | | Printed for: | 52403 |

Hansen, James G    ID: 06000
Processed through: 7/22/2011 12:00:00 AM    Attendance Profile:

| Date | Event/Pattern/Action | Code | Actual Amount | Change | Total | Balance Type | Shift Start Time | Source Policy | Perfect Attendance Disqualification | Source Perfect Attendance Definition |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 11/15/1999 - Forever | | MMC Union |
| 11/18/2010 | Absent - layoff or vac taken | | 8.00 | | | | | | | |
| 11/19/2010 | Absent - layoff or vac taken | | 8.00 | | | | | | | |
| 12/14/2010 | Requesting Occurrence | | 4.00 | | | | | | | |
| 12/14/2010 | Half Occurence | | 4.00 | 0.50 | 7.00 | Occurrences | | MMC Union DP Attendance | | |
| 2/7/2011 | Absent Full Occurance | | 8.00 | | | | | | | |
| 2/7/2011 | Full Occurence | | 8.00 | 1.00 | 8.00 | Occurrences | | MMC Union DP Attendance | | |
| 2/15/2011 | Suspended | | 8.00 | | | | | | | |
| 2/16/2011 | Suspended | | 8.00 | | | | | | | |
| 2/17/2011 | Suspended | | 8.00 | | | | | | | |
| 2/18/2011 | Absent Full Occurence | | 8.00 | | | | | | | |
| 2/18/2011 | Full Occurence | | 8.00 | 1.00 | 9.00 | Occurrences | | MMC Union DP Attendance | | |
| 3/7/2011 | POINTS EXPIRATION (3/6/2010) | PT-EXP | | -0.50 | 8.50 | Occurrences | | MMC Union DP Attendance | | |
| 5/2/2011 | Absent Half Occurence | | 3.90 | | | | | | | |
| 5/2/2011 | Half Occurence | | 3.90 | 0.50 | 9.00 | Occurrences | | MMC Union DP Attendance | | |
| 5/3/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| 5/4/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| 5/5/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| 5/6/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| 5/9/2011 | Family Medical Leave | | 8.00 | | | | | | | |

*Multiple transactions related to the same Incident   Reason Codes: (*1) - Action Given  (*2) - Rule Group Change  (*3) - Discipline Level Change

Case 1:12-cv-00032-WCG   Filed 02/11/13   Page 77 of 90   Document 34-2

091036

# Attendance Incident Detail

Hansen, James G    ID: 06000

Processed through: 7/22/2011 12:00:00 AM

Attendance Profile:

| Date | Event/Pattern/Action | Code | Actual Amount | Change | Total | Balance Type | Shift Start Time | Source Policy | Perfect Attendance Disqualification | Source Perfect Attendance Definition |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 11/15/1999 - Forever | | MMC Union |
| 5/23/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| 5/31/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| 6/1/2011 | Family Medical Leave | | 3.00 | | | | | | | |
| 6/8/2011 | POINTS EXPIRATION (6/7/2010) | PT-EXP | | -1.00 | 8.00 | Occurrences | | MMC Union DP Attendance | | |
| 6/13/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| 6/14/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| 6/15/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| 6/17/2011 | Absent Half Occurence | | 4.00 | | | | | | | |
| 6/17/2011 | Half Occurence | | 4.00 | 0.50 | 8.50 | Occurrences | | MMC Union DP Attendance | | |
| 6/22/2011 | Family Medical Leave | | 3.08 | | | | | | | |
| 6/27/2011 | Family Medical Leave | | 8.00 | | | | | | | |
| 7/1/2011 | FMLA Denied | | 8.00 | | | | | | | |
| 7/1/2011 | Full Occurence | | 8.00 | 1.00 | 9.50 | Occurrences | | MMC Union DP Attendance | | |
| 7/4/2011 | Holiday No Pay | | | | | | | | | |
| 7/10/2011 | POINTS EXPIRATION (7/8/2010) | PT-EXP | | -0.50 | 9.00 | Occurrences | | MMC Union DP Attendance | | |
| 7/11/2011 | FMLA Denied | | 8.00 | | | | | | | |
| 7/11/2011 | Full Occurence | | 8.00 | 1.00 | 10.00 | Occurrences | | MMC Union DP Attendance | | |
| 7/12/2011 | FMLA Denied | | 8.00 | | | | | | | |
| 7/12/2011 | Full Occurence | | 8.00 | 1.00 | 11.00 | Occurrences | | MMC Union DP Attendance | | |

\*Multiple transactions related to the same incident   Reason Codes: (\*1) - Action Given   (\*2) - Rule Group Change   (\*3) - Discipline Level Change

Case 1:12-cv-00032-WCG   Filed 02/11/13   Page 78 of 90   Document 54-2

001037

# Attendance Incident Detail

| Time Period: | 7/22/2010 - 7/22/2011 | | | | | | | Executed on: | 7/22/2011 8:15 AM | |
| Query: | Previously Selected Employee(s) | | | | | | | Printed for: | 52403 | |

| Date | Event/Pattern/Action | | Code | Actual Amount | Change | Total | Balance Type | Shift Start Time | Source Policy | Perfect Attendance Disqualification | Source Perfect Attendance Definition |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Hansen, James G | | ID: | 06000 | | | | Attendance Profile: | | 11/15/1999 - Forever | | MMC Union |
| Processed through: | | | 7/22/2011 12:00:00 AM | | | | | | | | |
| 7/13/2011 | FMLA Pending | | | 8.00 | | | | | | | |
| 7/13/2011 | Full Occurence | | | 8.00 | 1.00 | 12.00 Occurrences | | | MMC Union DP Attendance | | |
| 7/18/2011 | FMLA Pending | | | 8.00 | | | | | | | |
| 7/18/2011 | Full Occurence | | | 8.00 | 1.00 | 13.00 Occurrences | | | MMC Union DP Attendance | | |
| Total: | | | | | | 13.00 Occurrences | | | | | |

*Multiple transactions related to the same incident    Reason Codes:  (*1) - Action Given  (*2) - Rule Group Change  (*3) - Discipline Level Change

Tami Hansen  7-22-11

7/22/2011
7-22-11
7-22-11

001038

Case 1:12-cv-00032-WCG    Filed 02/11/13    Page 79 of 90    Document 34-2

# FAX COVER SHEET

**To:** James Hansen

**From:** Yvonne.Rangel@matrixcos.com

**Company:**

**Date:** 07/25/11 02:58:27 PM

**Fax Number:** 9068635403

**Pages (Including cover):** 4

**Re:** Department of Labor- FMLA rules and regualtions.

**Notes:**

Please let me know if you have any additional questions or concerns.

Thank you,

**Yvonne Rangel**
**Integrated Claims Manager**
**Matrix Absence Management, Inc.**
**11221 North 28th Dr. Bldg. C. Suite 100**
**Phoenix, AZ 85209**
*PHONE (800) 866-2301X 32204 | FAX (408) 361-9030 |*
yvonne.rangel@matrixcos.com





001039

# Wage and Hour Division (WHD)

## The Family and Medical Leave Act of 1993

Public Law 103-3 Enacted February 5, 1993

SEC. 103. CERTIFICATION.

(a) IN GENERAL.--An employer may require that a request for leave under subparagraph (C) or (D) of *paragraph (1) or paragraph (3) of section 102(a)* be supported by a certification issued by the health care provider of the eligible employee or of the son, daughter, spouse, or parent of the employee, *or of the next of kin of an individual in the case of leave taken under such paragraph (3),* as appropriate. The employee shall provide, in a timely manner, a copy of such certification to the employer.

(b) SUFFICIENT CERTIFICATION.--Certification provided under subsection (a) shall be sufficient if it states

(1) the date on which the serious health condition commenced;

(2) the probable duration of the condition;

(3) the appropriate medical facts within the knowledge of the health care provider regarding the condition;

(4)(A) for purposes of leave under section 102(a)(1)(C), a statement that the eligible employee is needed to care for the son, daughter, spouse, or parent and an estimate of the amount of time that such employee is needed to care for the son, daughter, spouse, or parent; and
(B) for purposes of leave under section 102(a)(1)(D), a statement that the employee is unable to perform the functions of the position of the employee;

(5) in the case of certification for intermittent leave, or leave on a reduced leave schedule, for planned medical treatment, the dates on which such treatment is expected to be given and the duration of such treatment;

(6) in the case of certification for intermittent leave, or leave on a reduced leave schedule, under section 102(a)(1)(D), a statement of the medical necessity for the intermittent leave or leave on a reduced leave schedule, and the expected duration of the intermittent leave or reduced leave schedule; and

001040

(7) in the case of certification for intermittent leave, or leave on a reduced leave schedule, under section 102(a)(1)(C), a statement that the employee's intermittent leave or leave on a reduced leave schedule is necessary for the care of the son, daughter, parent, or spouse who has a serious health condition, or will assist in their recovery, and the expected duration and schedule of the intermittent leave or reduced leave schedule.

(c) SECOND OPINION.--

(1) IN GENERAL.--In any case in which the employer has reason to doubt the validity of the certification provided under subsection (a) for leave under subparagraph (C) or (D) of section 102(a)(1), the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer concerning any information certified under subsection (b) for such leave.

(2) LIMITATION.--A health care provider designated or approved under paragraph (1) shall not be employed on a regular basis by the employer.

(d) RESOLUTION OF CONFLICTING OPINIONS.--

(1) IN GENERAL.--In any case in which the second opinion described in subsection (c) differs from the opinion in the original certification provided under subsection (a), the employer may require, at the expense of the employer, that the employee obtain the opinion of a third health care provider designated or approved jointly by the employer and the employee concerning the information certified under subsection (b).

(2) FINALITY.--The opinion of the third health care provider concerning the information certified under subsection (b) shall be considered to be final and shall be binding on the employer and the employee.

(e) SUBSEQUENT RECERTIFICATION.--The employer may require that the eligible employee obtain subsequent recertifications on a reasonable basis.

*(f) CERTIFICATION RELATED TO* COVERED ACTIVE DUTY *OR* CALL TO COVERED ACTIVE DUTY.*--An employer may require that a request for leave under section 102(a)(1)(E) be supported by a certification issued at such time and in such manner as the Secretary may by regulation prescribe. If the Secretary issues a regulation requiring such certification, the employee shall provide, in a timely manner, a copy of such certification to the employer.*

Case 1:12-cv-00032-WCG    Filed 02/11/13    Page 82 of 90    Document 34-2

001042

**Aurora Medical Group**

Marinette Menominee Peshtigo Clinic
603 French St.
Peshtigo, WI 54157
(715) 582-3622
(866) 573-7771

July 26, 2011

Re: Hansen, James
    DOB: 04/24/1980

Yvonne Rangl
Fax: 408-361-9030

Attention: Tammy Hansen
Marinette Marine
Fax: 715-735-4741

I am writing this letter to amend the FMLA of James Hansen, date of birth 04/24/1980. I was sent a form by fax from the Matrix Absence Management company on 07/06/2011. There was a lot of confusion due to the inaccuracy of this form. First of all, it referred to Steven's absence, not James Hansen's absence on July 7, being outside of his frequency and duration. Second of all, it was addressed to Dr. Hansen and not to me. My FMLA diagnosis for James remains the same as signs and symptoms of depression including anhedonia, mood disturbance and inability to concentrate. Part 6 regarding the beginning and ending date for his incapacity starting on May 3 through 7 of 2011, I am increasing to cover the entire year of 2011 until December 31. In regards to question number 7, he will continue to need followup treatment as we determined in accordance with his clinical course. With further insight into his clinical course, I am amending question 8's answer to increasing the frequency to once a month for a duration of 2-5 days per episode.

If you have any questions concerning his care, please feel free to contact me.

Sincerely,

Michael J Post, MD

MJP/ed
DT: 07/26/2011

ORIGINAL

001043

*Holly Lutz, Attorney at Law*

_____

lutzlaw@juno.com

*Law Offices of Holly Lutz, LLC*
6705 County Road U
Wausau, WI 54401-9769
Telephone (715) 675-2662
Facsimile (715) 675-9243

August 5, 2011

Tammy Hansen
Marinette Marine
1600 Ely St., Marinette WI
via fax to 715-735-4741

Re: James Hansen
dob 4/24/80
SSN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

Dear Ms. Hansen:

James Hansen has consulted me regarding the present FMLA situation, and I write to clarify what it is. May he return to work on Monday, August 8? If not, what documentation is needed to permit his return to work?

Either way, please fax or email back to me a response this afternoon, so I can discuss it with Mr. Hansen. Thank you for your attention to the matter.

Sincerely,

Holly Lutz

cc:   ✓James G. Hansen

HL/tm8

001044

# FAX COVER SHEET

**To:** Dr Post                                        **From:** Karla.Drew@matrixcos.com

**Company:**                                           **Date:** 07/06/11 08:35:53 AM

**Fax Number:** 7155829201                              **Pages (Including cover):** 4

**Re:** Leave 904193 (James Hansen) **Needs attention***

**Notes:**

Hi Doctor Hansen

Steven's 7/1 absence is out of his frequency and duration. Please confirm item # 7. Please respond within 7days.

Thank you,

Karla Drew
Integrated Claims Examiner
Matrix Absence Management, Inc.
Phone: 800-866-2301 X 52276
Fax:    408-361-9030
Karla.Drew@matrixcos.com
http://www.matrixcos.com

7/6/11:  Item #7 confirmed.

FaxMail
THE INITIATIVE OF FAX VIA YOUR EMAIL

Ex. 5
easylink
services

**Dr. Michael Post, Internal Medicine**

**Christy Brown, Family Nurse Practitioner**

*Fax*

Date: Wed 5/19/11

To: Matrix-Mary

Company: Matrix

Fax Number: 408 361 9030

From: Dr. Post

C:

Number of pages (including cover): 3

As you can see Dr.Post filled out and faxed form to your office on 5/11/11.

CONFIDENTIALITY NOTICE: This facsimile may contain confidential and privileged information. Patient health information is confidential and released according to Wisconsin Statutes and Federal Regulations. Patient health information may not be redisclosed without further written authorization by the patient.

The information contained in this transmission is intended for the addressee only. If the receiver of this information is not the intended recipient or an agent responsible for delivering the information to the intended recipient, you are hereby notified that you have received this document in error. Review, copying, modification or dissemination of this information is strictly prohibited.

IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE PHONE US IMMEDIATELY. THANK YOU.

~ Certification of Health Care Provider for
**Employee's Serious Health Condition** (Family
and Medical Leave Act)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division



OMB Control Number: 1215-018
Expires: 12/31/201

Employer name: **FINCANTIERI MARINE GROUP**

Employee's job title:

Employee name: **James Hansen**

## SECTION I: For Completion by the HEALTH CARE PROVIDER

**INSTRUCTIONS to the HEALTH CARE PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Please be sure to sign the form on the last page.

**To the Health Care Provider:** If the patient is in California, you may not disclose the underlying diagnosis without consent of the patient.

Provider's name and business address: __Michael J. Post MD__

Type of practice / Medical specialty: __IM__

Telephone: __715·582·3622__          Fax: __715·582·9201__

## PART A: MEDICAL FACTS

1. Approximate date condition commenced: __10/25/10__ , __exacerbated 5/3/11__

    Probable duration of condition: __months__

    Mark below as applicable:
    Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility? ☐ Yes ☒ No
    If yes, dates of admission:
    Date(s) you treated the patient for condition: __10/25/10__ , __1/3/2011__

2. Will the patient need to have treatment visits at least twice per year due to the condition? ☒ Yes ☐ No
    Was medication, other than over-the-counter medication, prescribed? ☒ Yes ☐ No
    Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)? ☐ Yes ☒ No
    If yes, state the nature of such treatments and expected duration of treatment:

3. Is the medical condition pregnancy? ☐ Yes ☒ No
    If yes, expected delivery date:

4. Use the information provided by the employer in Section I to answer this question. If the employer fails to provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions. Is the employee unable to perform any of his/her job functions due to the condition? ☒ Yes ☐ No
    If yes, identify the job functions the employee is unable to perform: __could not concentrate on task__ __at hand__

5. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment): __symptoms of depression including mood disturbance and anhedonia__

**CONTINUED ON NEXT PAGE**

1

Case 1:12-cv-00032-WCG    Filed 02/11/13    Page 88 of 90    Document #305a62944aecc773
Matrix Absence Via Fax 07/06/2011

## PART B: AMOUNT OF LEAVE NEEDED

6. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery? ☑ Yes ☐ No

If yes, estimate the beginning and ending dates for the period of incapacity: ___May 3 - 7/2011___

7. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition? ☑ Yes ☐ No

If yes, are the treatments or the reduced number of hours of work medically necessary? ☑ Yes ☐ No

Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period: ___follow-up in ___ months, once in months after that___

Estimate the part-time or reduced work schedule the employee needs, if any: __4__ hour(s) per day; __2__ days per week from __7/1/11__ through __8/3/11__

8. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions? ☑ Yes ☐ No
Is it medically necessary for the employee to be absent from work during the flare-ups? ☑ Yes ☐ No

If so, explain: ___the current the reduction illness___

Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

Frequency: __2__ times per ___ week(s) / __6__ month(s)

Duration: ___ hours or __2-5__ day(s) per episode

## ADDITIONAL INFORMATION: IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER.

_____

_____

_____

_____

Signature of Health Care Provider: ___Michael___    Date: __5/11/11__

### PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT

If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500.Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210.

DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT or Return completed form to Matrix Absence Management:

11221 N. 28th Drive, Building E, Suite 100
Phoenix, AZ 85029

2

Hansen FMLA Per Complaint

| Date from Complaint | Hansen Claim | Actual | Occurrence # | Attendance Point (Total) | Document |
|---|---|---|---|---|---|
| May 3 – 6, 2011 | Approved | Approved | 1 | 0 (9.0) | 001027<br>001036 |
| May 9, 2011 | Approved | Approved | 2 | 0 (9.0) | 001027<br>001036 |
| May 23, 2011 | Approved | Approved | 3 | 0 (9.0) | 001027<br>001037 |
| May 31 – Jun 1, 2011 | Approved | Approved | 4 | 0 (9.0) | 001027<br>001037 |
| June 13-15, 2011 | Approved | Approved | 5 | 0 (8.0) | 001027<br>001037 |
| June 22, 2011 | Approved | Matrix Denied<br>MMC Approved | 6 | 0 (8.5) | 001027<br>001031<br>001034<br>001037 |
| June 27, 2011 | Approved | Matrix Denied<br>MMC Approved | 7 | 0 (8.5) | 001029<br>001031<br>001034<br>001037 |
| July 1, 2011 | Denied | Denied | 8 | 1 (9.5) | 001031<br>001034<br>001037 |
| July 11-13, 2011 | Denied | Denied | 9 | 3 (12.0) | 001031<br>001034<br>001037<br>001038 |
| July 18, 2011 | Denied | Denied | 10 | 1 (13.0) | 001034<br>001038 |