2005 WL 2076584
Only the Westlaw citation is currently available.
United States District Court,
E.D. Wisconsin.

Kevin BROWN, Plaintiff,
v.
SBC COMMUNICATIONS, INC., and Wisconsin Bell, Inc., Defendants.

No. 04-C-0290. | Aug. 23, 2005.

**Attorneys and Law Firms**

John D. Uelmen, Fair Employment Legal Services, Milwaukee, WI, for Plaintiff.

Laura A. Lindner, Lindner & Marsack SC, Milwaukee, WI, for Defendants.

Opinion

### DECISION AND ORDER

GRIESBACH, J.

*1 This case arises under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654. Plaintiff Kevin Brown claims that Defendants SBC Communications, Inc. (SBC), and Wisconsin Bell, Inc., violated the FMLA by denying his requests for FMLA leave due to chronic migraine headaches and ultimately terminating his employment for excessive absences. Presently before the court is the defendants' motion for summary judgment. Because there remain disputes as to material facts, the motion will be denied as to Wisconsin Bell. SBC, however, was not Brown's employer and the evidence does not support any claim against it. Accordingly, summary judgment will be granted as to all claims against SBC.

### THE FMLA

As applicable to this case, the FMLA requires covered employers to provide up to twelve weeks of leave during any twelve-month period to employees who, because of a serious health condition, are unable to perform the functions of their position. 29 U.S.C. § 2612(a)(1)(D). The FMLA defines "serious health condition" as

> an illness, injury, impairment, or physical or mental condition that involves-
>
> (A) inpatient care in a hospital, hospice, or residential medical care facility; or
>
> (B) continuing treatment by a health care provider.

29 U.S.C. § 2611(11). The leave may be taken all at once or intermittently. 29 U.S.C. § 2612(b).

An employer may require an employee seeking FMLA leave to submit a medical certification supporting the request. 29 U.S.C. § 2612(a)(1); 29 C.F.R. § 825.305(a). The regulations promulgated by the Secretary of Labor provide that "[w]hen the leave is foreseeable and at least 30 days notice has been provided, the employee should provide the medical certification before the leave begins." 29 C.F.R. § 825.305(b). In other cases, "the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." *Id.*

A medical certification is sufficient under the FMLA if it contains the following information: (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; (4) if the leave is for the employee's own serious health condition, a statement that the employee is unable to perform the functions of his job; and (5) for intermittent leave due to an employee's own serious health condition, a statement of the medical necessity of the intermittent leave, and the expected duration of the intermittent leave. 29 U.S.C. § 2613(b).

The employer must give the employee written notice of the need for a certification each time a certification is required. 29 C.F.R. § 825.305(a). When the employee requests leave for a chronic serious health condition, an employer may require the employee to "obtain subsequent recertifications on a reasonable basis." 29 U.S.C. § 2613(e). However, the employer may not request recertification more frequently than every thirty days and must provide the employee at least fifteen days after the request is made to submit the recertification. 29 C.F.R. § 825.308(a), (d). If an employer determines that a certification submitted by an employee is incomplete, the

EXHIBIT D

employer must advise the employee of the deficiency and provide the employee a reasonable opportunity to cure the deficiency. 29 C.F.R. § 825.305(d).

## FACTS

**\*2** The facts are set forth in the light most favorable to plaintiff, the non-moving party. *See Tincher v. Wal-Mart Stores,* 118 F.3d 1125, 1126 n. 1 (7th Cir.1997). Plaintiff Kevin Brown began working for Defendant Wisconsin Bell (then a subsidiary of Ameritech Corp., now a subsidiary of Defendant SBC Communications) as a sales and service representative on September 8, 1997. (Defendants' Proposed Findings of Fact ¶ 3.) Wisconsin Bell terminated Brown's employment on June 7, 2002, following a number of unexcused absences. Brown claims that some of these absences should have been considered as leave under the FMLA. He commenced this litigation on March 23, 2004.

At the time the events giving rise to this case occurred, Wisconsin Bell had in place attendance guidelines applicable to Brown. Under these guidelines, employees were subject to discipline when they incurred more than six "incidental absences" within a one-year period. (DPFOF ¶¶ 11-14.) An "incidental absence" is any period of absence lasting an hour or longer during an employee's scheduled shift. (DPFOF ¶ 11.) Employees received written warnings following the seventh, eighth, and ninth absences, a three-day suspension following the tenth absence, and a suspension pending dismissal after the eleventh absence. (DPFOF ¶¶ 15-16.) Absences that were FMLA-covered were not counted against employees under the guidelines. (DPFOF ¶ 21.)

After SBC acquired Wisconsin Bell, all FMLA leave requests were processed by the FMLA Processing Unit ("FPU") in San Antonio, Texas. The FPU is made up of employees of SBC Services, Inc., which is apparently another subsidiary of SBC. Wisconsin Bell employees requesting FMLA leave were required to submit medical certifications from their health care providers to support their requests for such leave. (DPFOF ¶ 26.) This requirement was communicated to employees after each absence potentially covered by the FMLA. (DPFOF ¶ 24.) Employees were given up to twenty days to submit medical certifications. (DPFOF ¶¶ 26-32.) Failure to do so led to the issuance of an initial denial letter and an opportunity to submit the certification within another twenty days. (DPFOF ¶ 35.) Another failure to submit the certification led to a final denial. (DPFOF ¶ 36.) A medical certification for intermittent FMLA leave only covered an employee's absences for 60 days from the date of the employee's last office visit with his health care provider. When the 60-day period expired, the employee had to have another office visit with the health care provider and submit a new medical certification (also known as a re-certification). (DPFOF ¶ 37.)

Brown first started experiencing the migraine headaches in late 1999. (DPFOF ¶ 64.) Between May 2001 and May 2002, Brown was treated for migraine headaches by Mark Dehnel, a physician assistant, and Dr. David Heverly, a neurologist to whom Dehnel referred Brown. (DPFOF ¶ 65.) Brown claims that several of the absences considered by Wisconsin Bell in terminating his employment should have been treated as FMLA leave because they were necessitated by migraine headaches. Wisconsin Bell contends that it denied FMLA leave for these absences because Brown failed to provide a proper medical certification. The dates of the disputed absences and on which medical certifications were requested are as follows:

| Date | Certification Requested |
| --- | --- |
| December 26-27, 2001 | December 28, 2001 |
| January 14-15, 2002 | January 17, 2002 |



| | |
|---|---|
| January 22-25, 2002 | January 29, 2002 |
| February 1, 2002 | February 6, 2002 |
| February 4-5, 2002 | February 6, 2002 |
| February 13-14, 2002 | February 18, 2002 |
| April 4, 2002 | April 8, 2002 |

**\*3** (DPFOF ¶¶ 86-87, 94-95, 101-102, 109-110, 117-118, 128-129, 138-140.)

Brown provided a medical certification on October 24, 2001. (DPFOF ¶ 97.) This certification was valid for intermittent leave through December 23, 2001. Although Brown claims that he did not know his certification had expired, the record contains four letters from the FPU (dated January 3, 2002; January 31, 2002; February 7, 2002; February 11, 2002) notifying Brown that his medical certification was "outdated" and advising him to submit another certification. (DPFOF ¶ 88; Loper Decl. Exs. 7, 14, 22.) Brown did not provide a certification for the December 26-27 absence. Nor did he provide certifications for the January 14-15, January 22-25, February 1, February 4-5, or February 13-14 absences. Accordingly, FMLA leave for each of these absences was denied.

On March 26, 2002, Brown received three written warnings for his January 22-25, February 1, and February 4-5 absences. (PPFOF ¶ 65.) Brown was warned at that time that any further unexcused absences could result in additional corrective disciplinary action, including termination. (DPFOF ¶ 108, 116, 125.) On April 5, 2002, he was given a three-day suspension for the absence on February 13-14. (PPFOF ¶ 65.) He was again warned that further unexcused absences could result in termination. (DPFOF ¶ 134-135.)

In the meantime, Brown submitted further FMLA leave requests for absences in March and April. On April 9, 2002, Brown submitted two new medical certifications to Wisconsin Bell. (DPFOF ¶ 76.) These certifications noted that Brown had been ill and incapacitated during the periods of March 11 through March 18, and March 21 through March 25 (although the record does not reflect that FMLA leave was requested for the earlier period). The certifications also state that because of his condition Brown will need intermittent leave of 2-3 days per week. (DPFOF ¶ 79.) The new certifications were found sufficient to cover the March 26-27 absences, and Brown's request for FMLA leave for this period was approved. However, Brown was also absent and had requested FMLA leave for April 1-4. Based on the new certifications, the FPU approved his request for April 1-3, but denied it for April 4. In a letter dated April 12, 2002, the FPU advised Brown that his request for FMLA leave for April 4 was denied because he exceeded the duration of the intermittent leave authorized by his medical certification. The certification stated he would need intermittent leave of 2 to 3 days per week, whereas his request was for four days. The letter advised Brown that he had until April 27, 2002, to have his health care provider submit information to support his request or it would be denied.

Brown claims he did not receive the letter denying his request of leave until June 4, 2002, and, as a result, failed to respond within the time allowed. A final denial for the

April 4 absence was issued on May 6, 2002. On May 13, 2002, Georgine Bauer, Wisconsin Bell's Attendance Manager, informed Brown that he was suspended pending dismissal. (PPFOF ¶ 71; Defs.' Resp. ¶ 71.) The reason for the suspension pending dismissal was his April 4 absence. (PPFOF ¶ 72; Defs.' Resp. ¶ 72.) Bauer explained that the April 4 absence was not considered to be FMLA leave because it was the fourth absence in a week, and Brown's April 9 certification stated that he would be absent only 2-3 days per week. (DPFOF ¶ 149.) On May 24, 2002, Brown met with Wisconsin Bell's review board, and provided a letter from Dehnel stating that his migraines would sometimes necessitate absences in excess of three days per week. (PPFOF ¶¶ 96-97.) Nevertheless, Wisconsin Bell elected to terminate him on June 7, 2002.

## ANALYSIS

**\*4** Under the Federal Rules of Civil Procedure, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

As *Celotex* makes clear, the burden that each party carries with respect to a motion for summary judgment under the federal rules varies significantly depending upon which party bears the burden of proof at trial on the issue upon which summary judgment is sought. Where the party seeking summary judgment does not bear the burden of proof at trial on any element of the claim, it is enough that it inform the court of "the basis of its motion and identif[y] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. There is no requirement that a moving party who does not bear the burden of proof establish that the element does not exist. In other words, a moving party who does not have the burden of proof at trial, (usually the defendant), is not required to prove a negative in order to make a prima facie showing for summary judgment. *Id.*

Once such a showing is made, however, the nonmoving party who does have the burden of proof at trial, (usually the plaintiff), must respond. In the face of a properly supported motion for summary judgment by the defendant, the plaintiff must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. Moreover, the party that bears the burden of proof at trial must show that it has admissible evidence to support its claim:

> When as in the present case a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of his claim, the plaintiff is required by Fed.R.Civ.P. 56, if he wants to ward off the grant of the motion, to present evidence of evidentiary quality-either admissible documents or attested testimony, such as that found in depositions or in affidavits-demonstrating the existence of a genuine issue of material fact. The evidence need not be in admissible form; affidavits are ordinarily not admissible evidence at a trial. But it must be admissible in content, in the sense that a change in form but not in content, for example a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial.

**\*5** *Winskunas v. Birnbaum,* 23 F.3d 1264, 1267-68 (7th Cir.1994) (internal citations omitted). It is for this reason that summary judgment is referred to in federal courts as the "put up or shut up moment in a lawsuit." *Johnson v. Cambridge Industries, Inc.,* 325 F.3d 892, 901 (7th Cir.2003) (internal quotation marks omitted).

In addition to the foregoing principles, a party moving for summary judgment or responding thereto must comply with the local rules of the district in which the motion is brought. *Koszola v. Bd. of Ed. of City of Chicago,* 385

F.3d 1104, 1109 (7th Cir.2004). In this district, Civil L.R. 56.2 sets forth additional summary judgment procedures that parties are required to follow. This rule requires that the party moving for summary judgment submit either a stipulation of facts, or "the movant's proposed findings of fact supported by specific citations to evidentiary materials in the record," or a combination of the two. Civil L.R. 56.2(a). The opposing party must file

> a specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists. The response must refer to the contested finding by paragraph number and must include specific citations to evidentiary materials in the record which support the claim that a dispute exists.

Civil L.R. 56.2(b)(1). The rule further provides that "[i]n deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out." Civil L.R. 56.2(e).

### I. None of Brown's claims are time-barred

As a preliminary matter, defendants argue that Brown's claims arising out of events prior to March 23, 2002 (two years before the complaint was filed) are time-barred. *See* 29 U.S.C. § 2617(c) ("Except [where the plaintiff alleges willful violation of the FMLA], an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought."). Brown argues that the two-year limitations period began to run only when defendants took "material adverse action,"[1] *Butler v. Owens-Brockway Plastic Products, Inc.,* 199 F.3d 314, 317 (6th Cir.1999), against him on March 26, 2002 (the date Brown received three written attendance warnings). At least as good an argument could be made that "the last event constituting the alleged violation for which th[is] action [wa]s brought" occurred June 7, 2002, when Wisconsin Bell terminated Brown. In either event, the complaint was timely filed with respect to all the claims stated therein.

### II. Wisconsin Bell did not waive its right to require re-certification

29 U.S.C. § 2613(a) and 29 C.F.R. § 825.305(a) permit employers to require a medical certification when an employee wishes to take FMLA leave:

> An employer may require that an employee's leave ... due to the employee's own serious health condition that makes the employee unable to perform one or more of the essential functions of the employee's position, be supported by a certification issued by the health care provider of the employee.... An employer must give notice of a requirement for medical certification each time a certification is required; such notice must be written notice [for the first FMLA leave request in a six-month period]. An employer's oral request to an employee to furnish any subsequent medical certification is sufficient.

\*6 29 C.F.R. § 825.305(a). Brown's October 24, 2001 certification expired on December 23, 2001. Wisconsin Bell advised him of that fact on January 3, 2002. (DPFOF ¶ 88.) With respect to each of Brown's following six absences,[2] Bauer gave Brown a medical certification form. (DPFOF ¶¶ 87, 95, 102, 110, 118, 129.) Despite receiving this form, as well as an initial denial letter (DPFOF ¶¶ 90, 96, 105, 113, 121, 130) and a final denial letter (DPFOF ¶¶ 91, 98, 106, 114, 122, 132) for each absence, Brown did not submit certifications. Accordingly, Brown is not entitled to FMLA leave for these absences.

Brown argues that Wisconsin Bell waived its right to require medical certification for his January 22-25, February 1, and April 4 absences by unduly delaying its requests for certification. 29 C.F.R. § 825.305(c) provides that "[i]n most cases, the employer should request that an employee furnish certification from a health care provider at the time the employee gives notice of the need for leave or within two business days thereafter, or, in the case of unforeseen leave, within two business days after the leave commences." Wisconsin Bell requested certification for the January 22-25 (Wednesday-Friday) absence on Wednesday, January 30, 2002-six business days after the leave began. It requested certification for the February 1 (Friday) absence on Wednesday, February 6, 2002-three business days after the leave began. It requested certification for the April 4 (Thursday) absence on Monday, April 8.[3]

The court would be reluctant to interpret the statement in

§ 825.305(c) that the employer "should" request certification within two business days as a requirement that the employer do so. Given the contrast with what employers and employees "must" do under § 825.305(a) ("An employer must give notice of a requirement for medical certification each time a certification is required; such notice must be written notice whenever required by § 825.301."), § 825.305(b) ("[T]he employee must provide the requested certification to the employer within the time frame requested by the employer ... unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts."), and § 825.305(d) ("[T]he employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification ...."), the court is inclined to think that the two-day time frame for requesting certification is hortatory rather than mandatory. Moreover, an interpretation that would require the employer to request certification before the employee returned to work for absences in excess of two consecutive days might render the regulation invalid, as it would make it difficult, if not impossible, for employers to request certification and would thus negate employers' rights under 29 U.S.C. 2613(a). Cf. *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 90, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002) (invalidating regulation that "worked an end run around important limitations of the [FMLA's] remedial scheme").

**\*7** Even if Wisconsin Bell was required to request certification within two business days after Brown's absences began, however, its failure to do so did not prejudice Brown, because he ultimately received the requests for certification and was given more than the FMLA-required 15-day period to re-certify. The FLMA "provides no relief unless the employee has been prejudiced by the [employer's] violation." *Ragsdale,* 535 U.S. at 89. Accordingly, the court concludes that Wisconsin Bell did not waive its right to request that Brown provide a medical certification under the FMLA by failing to request a medical certification within two days after his leave commenced.

For similar reasons, the court reject's Brown's claim that Wisconsin Bell failed to "advise [him] of the anticipated consequences of [his] failure to provide adequate certification."[4] 29 C.F.R. § 825.301(d). Wisconsin Bell notified Brown that failure to submit the required certification for an absence would result in FMLA leave being denied. (DPFOF ¶¶ 24, 27.) This was the anticipated consequence of Brown's failure to provide the proper medical certification. Although Brown's accumulated absences ultimately resulted in his suspension and termination, that consequence followed from Wisconsin Bell's attendance policy, not its FMLA procedures. Moreover, Brown was familiar with the disciplinary thresholds set forth in the attendance guidelines and understood that he could receive corrective disciplinary action for exceeding those thresholds. (DPFOF ¶¶ 19-20.) He was advised of his attendance status and referred to those guidelines on February 18, 2002 (DPFOF ¶ 93) and March 11, 2002 (DPFOF ¶ 100.) He was specifically apprised of the possibility of termination on March 26, 2002 (DPFOF ¶¶ 108, 116, 125) and April 5, 2002. (DPFOF ¶¶ 134-135.) In sum, Brown knew that failure to certify his absences could result in his termination. Any failure by Wisconsin Bell to spell that out in so many words was therefore non-prejudicial and non-actionable. *Ragsdale,* 535 U.S. at 89.

**III. Wisconsin Bell may not have allowed Brown a reasonable opportunity to cure the deficiency in the certification for his April 4 absence**

29 C.F.R. § 825.305(d) requires Wisconsin Bell to "advise [Brown] whenever [Wisconsin Bell] finds a certification incomplete, and provide [Brown] a reasonable opportunity to cure any such deficiency." Defendants contend that Brown was advised of the fact that his medical certifications did not cover his April 4 absence by letter dated April 12, 2002, and that despite this notice, he failed to obtain a new certification within the time allowed. A factual dispute exists, however, as to when Brown received the denial letter. Although the FPU mailing procedures and documents suggest the denial letter was mailed on April 12, the testimony of Brown and his wife, corroborated by the postmarked envelope, is that he did not receive the letter until June 4, 2002. Summary judgment is not the proper vehicle for resolving this dispute.

**\*8** Defendants argue that even if Brown did not receive the denial letter until June 4, Brown nevertheless knew of the deficiency in his medical certification by May 13 and did nothing to correct it. The parties agree that Bauer advised Brown on May 13 that his certification for April 4 was incomplete. But that was after the FPU had issued its final denial of Brown's April 4 request for FMLA leave. Although defendants contend that even at that late date, Brown was given a further opportunity to cure the deficiency, the record is not sufficiently clear to allow summary judgment on this basis.

Defendants claim that Brown admitted in his deposition that he was "told that he needed to submit another medical certification covering his [April 4] absence" at the May 13 meeting. (DPFOF ¶ 150.) Defendants assert that this notification constituted a request for certification,

*see* 29 C.F.R. § 825.305(a) ("An employer's oral request to an employee to furnish any subsequent medical certification is sufficient."), and that Brown failed to comply with the request. Brown contends that defendants mischaracterize his deposition testimony, which was as follows:

> Q. And you were told that you needed to submit a new med cert covering the fourth day of absence, correct?
>
> A. Correct.
>
> Q. And you never did that, right?
>
> A. I received that notification on May 13th from the company.
>
> Q. Okay. And you never got another medical certification covering April 4, 2002, correct?
>
> A. I never submitted another medical certification is correct, for 2002, April 4th, is correct.

(Brown Dep. at 91:3-8.) Brown denies that he was told at the May 13 meeting that he could still submit a medical certification and contends that he meant by his testimony only that he was informed that the basis for denial of FMLA leave was his failure to submit a medical certification for April 4. (Pl.'s Resp. to DPFOF ¶ 150.) Brown's testimony is ambiguous and less than conclusive as to whether Wisconsin Bell requested certification for the April 4 absence on May 13. The May 13 meeting was held to advise Brown that he was suspended pending termination. The FPU had issued a final denial for April 4 on May 6, and had confirmed to Wisconsin Bell's attendance manager that Brown's case "was properly handled" and "[w]ill remain final denied." (PPFOF ¶ 91.) In light of these facts, a jury could reasonably find that Brown was not afforded a reasonable opportunity to cure the deficiency in his certification on May 13.

On the other hand, if Wisconsin Bell did provide such an opportunity on May 13, an issue of fact exists as to whether Brown actually did so. Brown declares that he provided Wisconsin Bell with a letter from Dehnel stating that his migraines would sometimes necessitate absences in excess of three days a week on May 24, 2002. (PPFOF ¶¶ 96-97.) While defendants argue in response that their document retrieval database contains no record that they received the letter (Defs.' Resp. to PPFOF ¶ 96), this dispute also cannot be resolved on summary judgment. And if Brown did provide defendants the letter from Dehnel, a jury may find that the requested clarification was provided.

**\*9** Accordingly, Brown's claim that Wisconsin Bell violated the FMLA by failing to provide him a reasonable opportunity to cure the deficiency concerning his FMLA leave request for April 4 remains. And since it was the denial of leave for that date that resulted in his termination under the attendance policy, summary judgment will be denied as to Wisconsin Bell.

### IV. Brown failed to plead a retaliation claim

In addition to his claim that the defendants violated the FMLA by imposing discipline and ultimately terminating his employment because of leave that was medically necessary, Brown also argues in his brief in opposition to the defendants' motion for summary judgment that the defendants discriminated against him and terminated his employment in retaliation for exercising his rights under the FMLA. (Br. In Opp. at 16-20.) To the extent Brown intends by this argument to assert a claim for retaliatory discharge under 29 U.S.C. §§ 2615(a)(2) or (b), his effort fails. Brown failed to assert such a claim in his amended complaint, and it is too late in the day to do so now. "A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir.1996); *see also Cheek v. Peabody Coal Co.,* 97 F.3d 200, 202 (7th Cir.1996) (holding that plaintiff waived hostile workplace claim by not including it in complaint).

Even if Brown had included a retaliatory discharge claim in his complaint, he has presented no evidence in support of it sufficient to withstand summary judgment. As with other types of employment discrimination, a claim of retaliation under the FMLA may be proved using either the direct or indirect methods of proof. *Buie v. Quad/Graphics, Inc.,* 366 F.3d 496, 503 (7th Cir.2004). Under the direct method, the plaintiff must present either direct or circumstantial evidence of discriminatory intent. *Id.* To proceed under the indirect method, the plaintiff must "show that after [engaging in protected conduct] only he, and not any similarly situated employee who did not [engage in protected conduct], was subjected to an adverse employment action even though he was performing his job in a satisfactory manner." *Id.* Brown does not discuss these methods of proving discrimination in his brief and makes no effort to establish a claim under either one. He has offered no evidence of discriminatory intent, and although he complains that he was rapidly processed through the disciplinary steps in the Attendance Guidelines, he points to no similarly situated employees who were treated differently. Accordingly, any such claim fails.

### V. SBC Communications, Inc. is not a proper defendant in this action

Defendants finally argue that SBC Communications is not a proper defendant since it was not Brown's employer. Brown concedes that SBC was not his employer, but argues that his action lies against SBC because SBC acted "directly or indirectly, in the interest of [Wisconsin Bell] to [Brown]," therefore making SBC Communications Brown's employer within the terms of 29 C.F.R. § 825.104(c)(1)[5] and 29 C.F.R. § 825.106(a)(2).[6] Brown offers no evidence, and none appears in the record, that SBC acted directly or indirectly in the interest of Wisconsin Bell with respect to Brown. Indeed, it does not appear that SBC acted at all with respect to Brown. SBC is a holding company with no employees of its own. (Mead Decl. ¶ 3.) Brown claims that "[m]anagement decisions regarding FMLA leave were obviously integrated between Wisconsin Bell and SBC [Communications]," but this is not at all obvious from the record. Deposition testimony indicates that employees of SBC Services, Inc.-not SBC Communications, Inc.-processed Brown's requests for FMLA leave. (Loper Dep. at 5-8.) Brown also objects that "the Defendants persistently refused to respond to discovery requests regarding their separate identities." (Resp. at 7.) Examination of the discovery responses identified does not indicate that defendants refused to provide any relevant information. Nor did Brown challenge the adequacy of defendants' answers by filing a motion to compel.

### CONCLUSION

**\*10** For the foregoing reasons, defendants' motion for summary judgment is hereby GRANTED with respect to all claims against Defendant SBC Communications, Inc. With respect to plaintiff's claim against Defendant Wisconsin Bell arising out of the April 4, 2002 absence, defendants' motion is hereby DENIED. The clerk shall set this matter for a telephone conference for further scheduling.

SO ORDERED.

---

Footnotes

[1] In explaining its holding that the period of limitations began to run only when the defendant took material adverse action against the plaintiff, the *Butler* court noted that "[t]o hold otherwise would force plaintiffs to bring suit each time they are assessed a negative mark on their absentee record, but before this mark results in probation, termination, failure to reinstate, or other adverse action.... [S]uch a requirement would unnecessarily clog the federal courts with premature claims." *Id.* at 317.

[2] December 26-27, January 14-15, January 22-25, February 1, February 4-5, and February 13-14.

[3] Brown was absent from Monday, April 1 through Thursday, April 4. He received FMLA leave for April 1-3 on the basis of his April 9, 2002 certification. Wisconsin Bell denied FMLA leave for April 4 because it considered that absence to fall outside the certification.

[4] Brown asserts this claim with respect to all seven of the challenged absences.

[5] "Where one corporation has an ownership interest in another corporation, it is a separate employer unless it meets the 'joint employment' test discussed in § 825.106, or the 'integrated employer' test contained in paragraph (c)(2) of this section."

[6] "Where two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA. Joint employers may be separate and distinct entities with separate owners, managers and facilities. Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as: (1) Where there is an arrangement between employers to share an employee's services or to interchange employees; (2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or, (3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer."

**End of Document**  © 2013 Thomson Reuters. No claim to original U.S. Government Works.