2009 WL 2589129
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

Mercy AGBEJIMI, Plaintiff,
v.
ADVOCATE HEALTH AND HOSPITALS CORPORATION, Defendant.

No. 08 C 2754. | Aug. 19, 2009.

West KeySummary

1   Federal Civil Procedure
       Employees and Employment Discrimination. Actions Involving

A genuine issue of material fact existed as to whether an employee gave adequate notice to her employer that she was seeking Family and Medical Leave Act (FMLA) leave. The employer alleged that the employee failed to follow department protocol in order for her tardiness to be considered FMLA leave, but the employee stated that she called both a charge tech and her supervisor, and that she attempted to verify with the employer that her tardy arrivals would not be counted against her. Therefore, summary judgment was precluded in an action by employee alleging FMLA violations against her employer. Family and Medical Leave Act of 1993, § 102, 29 U.S.C.A. § 2612.

**Attorneys and Law Firms**

Charles Thomas Siedlecki, Siedlecki and Associates, Chicago, IL, for Plaintiff.

Michael J. Gray, Efrat R. Schulman, Jill Susan Vorobiev, Jones Day, Chicago, IL, for Defendant.

Opinion

*MEMORANDUM OPINION AND ORDER*

JOHN W. DARRAH, District Judge.

*1 Plaintiff, Mercy Agbejimi, brought suit against Defendant, Advocate Health and Hospitals Corporation, alleging violations of the Family and Medical Leave Act ("FMLA"), 42 U.S.C. § 1981 and Title VII of the Civil Rights Act. Defendant has moved for summary judgment on all counts.

BACKGROUND

Plaintiff is a citizen of the United States and a resident of Illinois. (Def.'s 56.1(a)(3), at ¶ 1.) Defendant is an Illinois corporation. (Def.'s 56.1(a)(3), at ¶ 2.)

Plaintiff was born in Nigeria. (Def.'s 56.1(a)(3), at ¶ 4.) She speaks English as a native language.[1] (Def.'s 56.1(a)(3), at ¶ 4.) Plaintiff was hired as a respiratory therapist at Advocate Christ Medical Center on or about October 5, 1998. (Def.'s 56.1(a)(3), at ¶ 6.) In May 1999, Plaintiff received a rating of "Does Not Meet Expectations" in an annual performance summary by James Leiser. (Def.'s 56.1(a)(3), at ¶ 8.) Plaintiff claims that Leiser made racial slurs and demonstrated a hatred of black people through his body language. (Def.'s 56.1(a)(3), at ¶ 9.)

Each May, from 2000 to 2003, Plaintiff received a "Meets Expectations" review from a number of different supervisors. (Def.'s 56.1(a)(3), at ¶¶ 11–13.) In May 2004, Plaintiff again received a "Meets Expectations" review. (Def.'s 56.1(a) (3), at ¶ 15.) The review noted that Plaintiff "is occasionally late and will need to improve in her punctuality." (Def.'s 56.1(a) (3), at ¶ 15.) In July 2005, Plaintiff received a "Meets Expectations" review from her supervisor Patty Bezic. (Def.'s 56.1(a)(3), at ¶ 16.) The review stated that Plaintiff was "occasionally late and needs to improve this year" and "needs to come up with a plan that will get her to work on time each day that she is scheduled to work." (Def.'s 56.1(a)(3), at ¶ 16.)

On July 5, 2005, Plaintiff received a Written Counseling report from Bezic for tardiness on seven separate

occasions. (Def.'s 56.1(a)(3), at ¶ 17.) Plaintiff claims that she was tardy on those dates to care for her daughter. (Def.'s 56.1(a)(3), at ¶ 17 .) Plaintiff's daughter has hydrocephalus and cerebral palsy and cannot be left unattended when she is displaying certain symptoms. (Def.'s 56.1(a)(3), at ¶ 72; Pl.'s 56.1(b)(3), at ¶ 77.) At the time when Plaintiff's daughter was displaying these symptoms and Plaintiff was scheduled to work, Plaintiff had to ask her sister, a friend or a church member to watch her daughter and wail for that person to arrive, (Pl.'s 56.1(b)(3), at ¶ 77.)

On June 18, 2006, Plaintiff received a Level I warning from Debra Marshall for failing to call in sick or absent and not showing up for her scheduled shift on June 9, 2006. (Def.'s 56.1(a)(3), at ¶ 19.) In June 2006, Plaintiff was given a mandatory referral to Defendant's Employee Assistance Program, stemming from an incident in which Plaintiff became upset and started crying after learning that a patient she had just treated had AIDS. (Def.'s 56.1(a)(3), at ¶ 20.)

*2 In February 2007, Debra Marshall gave Plaintiff a "Meets Expectations" review, (Def.'s 56.1(a)(3), at ¶ 21.) However, the review noted that Plaintiff was disorganized. (Def.'s 56.1(a) (3), at ¶ 21.) On or about March 3, 2007, Marshall gave Plaintiff a Performance Deficiency Notice, which provided Plaintiff an approximate sixty-day period within which to improve certain areas of her performance. (Def.'s 56.1(a)(3), at ¶ 22.) These areas included completing correct documentation, giving accurate change of shift reports, organizing work assignment and assuring proper delivery of therapy modalities. (Def.'s 56.1(a)(3), at ¶ 22.) Plaintiff claims that Marshall told her that she had sent people to check on her and that these people were going to get her. (Def.'s 56.1(a)(3), at ¶ 23.) Plaintiff was upset by this because she liked Marshall. (Def.'s 56.1(a)(3), at ¶ 23.) Plaintiff met with Marshall during the period of her performance development plan and eventually completed the plan. (Def.'s 56.1(a)(3), at ¶ 24.)

Plaintiff received a Level I written warning from Marshall, dated March 26, 2007, for excessive tardiness on multiple occasions from August 19, 2006 through February 23, 2007. (Def.'s 56.1(a)(3), at ¶ 25.) When Marshall administered the discipline to Plaintiff in May 2007 (Plaintiff had been off work on FMLA leave beginning in March), Plaintiff informed Marshall that the tardiness was for FMLA time off. (Def.'s 56.1(a)(3), at ¶ 25.) Plaintiff testified that the tardies were due to her daughter's illness. (Def.'s 56.1(a) (3), at ¶ 26.) Plaintiff testified that on the occasions she was tardy, she called the charge person and notified them that she would be tardy under FMLA leave. (Def.'s 56.1(a)(3), at ¶ 27.) Plaintiff also testified that most of the time, she also left a phone message with Bezic, except for those occasions when Plaintiff happened to run into Bezic in the parking garage and told Bezie then. (Def.'s 56.1(a)(3), at ¶ 27.)

On July 31, 2007, Plaintiff was issued a Level III Corrective Action for making a false and frivolous complaint of harassment, (Def.'s 56.1(a)(3), at ¶ 29.) Specifically, Plaintiff wrote to Human Resources ("HR") that some coworkers told her that Marshall was "trying to fire the niggers" and that Plaintiff was "number one on the list." (Def.'s 56.1(a)(3), at ¶ 29.) Plaintiff told HR Associate Relations Specialist Mario Bailey that other associates in her department told her that they had heard Marshall make those statements and gave Bailey the names of those associates. (Def.'s 56.1(a)(3), at ¶ 29.) HR conducted an investigation into Plaintiff's allegations. (Def.'s 56.1(a)(3), at ¶ 30.) Bailey interviewed the coworkers identified by Plaintiff as having overheard Marshall's alleged comment; they denied having heard Marshall make the comment. (Def.'s 56.1(a)(3), at ¶ 30.) Subsequently, HR recommended that Plaintiff be disciplined for making false and frivolous allegations, (Def.'s 56.1(a)(3), at ¶ 30.) At some point, Plaintiff claimed that she herself had heard Marshall make the comment. (Def.'s 56.1(a)(3), at ¶ 31.)

*3 Plaintiff filed EEOC charges against Defendant on August 8, September 13 and September 27, 2007. (Def.'s 56.1(a)(3), at ¶ 32 .) The EEOC intake notes from August 8, 2007, when Plaintiff filed her initial charge with the EEOC, state: "CP [Charging Party] overheard a group of [employees] remark that [supervisor] Marshall remarked that she wanted to get rid of all the niggers and CP was number one on the list—CP reported this and harassment against [supervisor]—R investigated-no corroborative findings—witnesses denied remark—docs submitted." (Def.'s 56.1(a)(3), at ¶ 32.)

In the summer of 2007, at the request of her doctor, Plaintiff switched from the night shift to the day shift because she was taking sleeping medication. (Def.'s 56.1(a)(3), at ¶ 33.) On September 3, 2007, Labor Day, the charge tech called Marshall to report that Plaintiff had failed to show up for work and had not called. (Def.'s 56.1(a)(3), at ¶ 34.) Defendant terminated Plaintiff's employment on September 25, 2007.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.,* 40 F.3d 146, 150 (7th Cir.1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses ...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (*Celorex* ). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex,* 477 U.S. at 322–27; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254–56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (*Anderson* ); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*Matsushita* ); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 923 (7th Cir.1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker,* 957 F.2d 506, 507–08 (7th Cir.1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson,* 477 U.S. at 247–48; *Popovits v. Circuit City Stores, Inc.,* 185 F.3d 726, 731 (7th Cir.1999). However, a metaphysical doubt will not suffice. *Matsushita,* 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson,* 477 U.S. at 249–250.

### ANALYSIS

#### *Interference with Plaintiff's Substantive Rights under the FMLA—Count II*

**\*4** The FMLA allows eligible employees the right to take unpaid leave for a period of up to twelve weeks during any twelve-month period for a number of reasons, including to care for a spouse, parent, son or daughter who has a serious health condition. 29 U.S.C.A. § 2612. Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 U.S.C.A. § 2615(a)(1). Plaintiff alleges that Defendant deprived her of her FMLA right to take leave to provide care for her disabled daughter in times of medical emergency.

Defendant argues that the question is not leave but, rather, tardiness. The FMLA, Defendant argues, is not a blanket license to come to work late and does not prevent Plaintiff from being disciplined for tardiness. The question, then, is whether the FMLA, in appropriate circumstances, covers absences of a very short duration for which the employee has given very short notice.

This question must be answered in the affirmative. The regulations provide that leave may be taken intermittently, and define intermittent leave as "FMLA leave taken in separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825.202(a). As an example of intermittent leave, the regulations give the example of a pregnant woman who takes leave for "periods of severe morning sickness." 29 C.F.R. § 825.202(b)(1). Furthermore, the regulations provide that "the employer must account for the leave using an increment no greater than the shortest period of time that the employer uses to account for use of other forms of leave provided that it is not greater than one hour." 29 C.F.R. § 825.205(a)(1). Thus, it is clear that the FMLA covers absences of short duration that occur with little or no notice.

Defendant next offers several reasons why even if the FMLA does cover such short periods of leave, it does not cover Plaintiff's late arrivals. Defendant notes that Plaintiff cannot consistently recall the specifics of any one occasion of tardiness. Defendant also points out that Plaintiff initially testified that some of the tardies were due to her own medical condition but, later, after reviewing documents showing she had not yet been approved for FMLA time, claimed that all her tardies were due to her daughter's medical condition. The observations go to the truthfulness of Plaintiff's assertion that her tardiness was caused by the need to care for her daughter. However, viewed in the light most favorable to the Plaintiff, Defendant's observations establish no more than that Plaintiff has an imperfect memory and that her recollection may be improved with reference to relevant documents. Such factual disputes, if in fact Defendant is challenging Plaintiff's asserted cause for her tardiness, cannot be resolved on summary judgment.[2]

Defendant next argues that Plaintiff gave Defendant inadequate notice that she considered her late arrivals to be covered by the FMLA. Defendant argues that Plaintiff did not follow department protocol, which required both a call to the charge tech and a message left with her supervisor. Finally, Defendant argues that Plaintiff cannot

recall which charge tech she talked to on each occasion and has not produced the telephone logs proving the calls. These last two points again go to Plaintiff's credibility. Again, Plaintiff's imperfect memory is not grounds for summary judgment, nor is her failure to produce every conceivable piece of evidence Defendant might suggest. Furthermore, it appears that Plaintiff followed department protocol to a greater extent than Defendant admits. According to Plaintiff, she called the charge tech to notify Defendant of her late arrival each time she was late. Plaintiff also left a message with her supervisor, except in those cases, as noted above, when she spoke to her supervisor in person. Defendant quibbles that it was not proper procedure for Plaintiff to notify the charge tech that her late arrivals were due to her daughter's illness. Following proper procedure, designed to safeguard employee privacy, Plaintiff should have merely told the charge tech that she would be arriving late and saved her reason for her supervisor. But no harm has been shown in Plaintiff's having told the charge tech, as well as her supervisor, the reason for her late arrival. It certainly did not lessen the notice to Defendant that Plaintiff was seeking FMLA leave. Finally, there is evidence that Plaintiff attempted to verify with Defendant that her tardy arrivals would not be counted against her because they were covered under the FMLA, While Plaintiff potentially could have taken further steps to verify this, there is a genuine factual dispute regarding the adequacy of Plaintiff's notice to Defendant that she was seeking FMLA leave. Therefore, summary judgment disposition is not appropriate for Plaintiff's FMLA interference claim.

**\*5** The cases cited by Defendant do not justify the opposite conclusion. Defendant cites *Brown v. Eastern Maine Medical Center,* 514 F.Supp.2d 104 (D.Me.2007) (*Brown* ), for the proposition that the FMLA does not provide a blanket license to come to work late. *Brown,* in which the court granted summary judgment for the defendant, dealt with a plaintiff, suffering from an undiagnosed illness, who was late to work forty-five times in a six-month period because she was sick and depressed. *Brown,* 514. F.Supp.2d at 106–07. The court's ruling was based on its decision that the plaintiff had not demonstrated a medical need to take small increments of leave. Here, Defendant has not contested Plaintiff's assertion that it was medically necessary to stay with her daughter. Defendant's second case, *King–Hardy v. Bloomfield Board of Education,* 2002 WL 32500923 (D.Conn. Sept.17, 2002) (*King–Hardy* ), is distinguishable on the grounds that the plaintiff there did not assert that she had sought leave to excuse her tardiness. *King–Hardy,* at \*8. Here, there is evidence that Plaintiff contemporaneously asserted that her late arrivals should be covered by the FMLA. Finally, Defendants cite the Seventh Circuit's statement in *Collins v. NTN–Bower Corporation,* 272 F.3d 1006 (7th Cir.2001) (*Collins* ), that "Courts have been reluctant to read the FMLA as allowing unscheduled and unpredictable, but cumulatively substantial absences ...." *Collins,* 272 F.3d at 1007. However, *Collins* was decided on the basis that the plaintiff had not provided adequate notice to his employer. Again, in this case, there is at least a genuine factual dispute regarding the extent of the notice Plaintiff provided. Therefore, Defendant's motion for summary judgment is denied with respect to Count II.

### *Retaliation under the FMLA—Count I*

Plaintiff claims that Defendant retaliated against her for asserting her rights under the FMLA, A Plaintiff seeking to prove retaliation under the FMLA may proceed under either the direct or indirect method of proof. *Burnett v. LFW Inc.,* 472 F.3d 471, 481 (7th Cir.2006). Here, Plaintiff attempts to proceed under the direct method. "A plaintiff proceeding according to this direct method of proof can survive summary judgment by 'creating a triable issue of whether the adverse employment action of which she complains had a discriminatory motivation.' " *Lewis v. School Dist. # 70,* 523 F.3d 730, 742 (7th Cir.2008) (quoting *Rudin v. Lincoln Land Cmty. Coll.,* 420 F.3d 712, 721 (7th Cir.2005)).

Defendant initially argues that Plaintiff had no rights under the FMLA and that, therefore, there could not have been any retaliation. Given the conclusions reached above with respect to Plaintiff's interference claim, this argument is now moot.

It is undisputed that Plaintiff was disciplined due to her tardiness. Specifically, Plaintiff received a Level I written warning, dated March 26, 2007. If Plaintiff can later prove at trial that her late arrivals were covered by the FMLA, Plaintiff may then show a causal relation between her protected FMLA activity and a materially adverse action by her employer. Therefore, Defendant's motion for summary judgment is denied with respect to Count I.

### *Discrimination/Retaliation under Section 1981 and Title VII—Count III*

**\*6** Plaintiff alleges that Defendant discriminated against Plaintiff on the basis of race and that Defendant retaliated against Plaintiff for her complaints of race discrimination.

Plaintiff has elected to proceed with her discrimination claim under the direct method of proof. In support of her claim, Plaintiff offers both direct and circumstantial evidence: Plaintiff's direct evidence consists of her deposition testimony that she herself heard Marshall say that Marshall was "trying to fire the niggers" and that Plaintiff was "number one on the list." Plaintiff's circumstantial evidence consists of statements of other employees of Defendant who experienced discrimination on the basis of race.

Setting aside this circumstantial evidence for the moment, Defendant argues that Plaintiff's own testimony is insufficient to create a genuine factual dispute. Defendant cites the recent Seventh Circuit case, *Winsley v. Cook County,* 563 F.3d 598 (7th Cir.2009) (*Winsley* ), for the proposition that summary denial of discrimination claims is proper where the plaintiff's testimony is the only evidence of discrimination. In *Winsley,* the court affirmed the summary judgment ruling because "[t]he only evidence [the plaintiff] presented was her own deposition testimony that the [defendant] mistreated her because of her race." *Winsley v. Cook County,* 563 F.3d at 605. The Court further stated that the plaintiff's "bare assertions" were not "sufficient to establish a link between [the plaintiff's] race and her treatment by the [defendant]." *Winsley v. Cook County,* 563 F.3d at 605 (citing *Karazanos v. Navistar Intern. Transp. Corp.,* 948 F.2d 332, 337 (7th Cir.1991) ("[A] plaintiff's speculation is not a sufficient defense to a summary judgment motion.")).

Defendant's argument that speculation does not create a genuine issue of material fact is beside the point. In this case, unlike *Winsley,* Plaintiff's testimony is not "speculation" or "bare assertions" but, rather, evidence concerning statements allegedly made by Plaintiff's supervisor. Plaintiff has presented testimony regarding facts, which, if taken as true, would potentially show a race-based motive behind her termination. This situation is distinguishable from a case where a plaintiff merely offers opinions and speculation as to the reasons for her termination.

Defendant next argues that even if the Court considers Plaintiff's testimony, the single incident alleged by Plaintiff is insufficient to survive summary judgment. Defendant points out that the alleged racist remark was not repeated and occurred months before Plaintiff's termination. "To be probative of discrimination, isolated comments must be contemporaneous with the discharge or causally related to the discharge decision making process." *Geier v. Medtronic, Inc.,* 99 F.3d 238, 242 (7th Cir.1996). Here, if Plaintiff's testimony is believed, the alleged comments could be considered causally related to Plaintiff's discharge. Plaintiff's supervisor's alleged statement was not just a racial slur but the use of that slur in conjunction with a statement to the effect that Plaintiff would be fired because of her race. Thus, if a jury determined Plaintiff's testimony was truthful, they could reasonably conclude, based on that testimony, that Defendant had fired Plaintiff because of her race.

**\*7** Finally, Defendant makes several points that cast doubt on the credibility of Plaintiff's testimony. Defendant points out that Plaintiff testified that Marshall treated her well and encouraged a respectful workplace in the department. Additionally, as Defendants point out, Plaintiff's testimony is uncorroborated by her coworkers, and Plaintiff's statement that she herself heard Marshall's alleged comment is inconsistent with her earlier statement that she heard of the alleged statement only through coworkers. This inconsistency might well cast doubt on Plaintiff's truthfulness. However, summary judgment is not the proper time to make determinations regarding credibility. *Ward v. KFC Corp.,* 2009 WL 497902 (N.D.Ill. Feb.25, 2009) ("assessments of credibility are inappropriate at the summary judgment stage").

For the foregoing reasons, Defendant's summary judgment motion on Count III with respect to Plaintiff's claims of discrimination on the basis of race is denied. Because the Court considers Plaintiff's testimony alone sufficient to avert summary judgment, it is not necessary to now consider whether the circumstantial evidence offered by Plaintiff is relevant to her claim.

Turning next to Plaintiff's claim of retaliation in Count III, Plaintiff argues that Defendant wrongfully disciplined her and terminated her in retaliation for Plaintiff's complaining to HR of her supervisor's alleged comment. Again, Plaintiff attempts to avoid summary judgment through the direct method. To do so, she must present direct evidence that she engaged in a protected activity and that, as a result, she suffered the adverse employment action of which she complains. *Stone v. City of Indianapolis Public Utilities Div.,* 281 F.3d 640, 644 (7th Cir.2002) (*Stone* ). If Defendant is able to contradict Plaintiff's evidence, the case must be tried, "unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had had no retaliatory motive." *Stone,* 281 F.3d at 644.

Plaintiff argues that two adverse employment actions resulted from her complaint to HR—the Level III discipline she received and her termination. Regarding the former, neither side disputes that the discipline was

causally connected to Plaintiff's complaint to HR. However, Defendant has presented unrebutted evidence the Plaintiff was disciplined because Defendant's own investigation found Plaintiff's complaint to be false. It is undisputed that Plaintiff's complaint to HR alleged that Plaintiff's coworkers had told Plaintiff of Marshall's alleged comment. It is also undisputed that HR interviewed the coworkers who supposedly overheard and reported the comment to Plaintiff and that they denied ever having heard the alleged comment. Thus, Defendant has presented unrebutted evidence that it would have disciplined Plaintiff independent of any retaliatory motive due to the results of the HR investigation. Defendant is entitled to summary judgment on Plaintiff's claim that her Level III discipline was retaliatory.

**\*8** Defendant is likewise entitled to summary judgment on Plaintiff's claim that she was terminated in retaliation for her complaint to HR, Plaintiff has presented no direct evidence that her termination was causally connected to her complaint. Short of such evidence, Plaintiff might attempt to proceed through the indirect method. However, she has not done so. Thus, summary judgment is granted with respect to Plaintiff's entire claim of retaliation.[3]

*Damages*

Defendant argues, with respect to both Plaintiff's FMLA and race discrimination claims, that Plaintiff's potential damages should be limited. Defendant argues that it acted in good faith with respect to the FMLA and did not act with malice or reckless indifference to Plaintiff's federally protected rights regarding race discrimination. Due to the disputed facts discussed above, summary judgment is not appropriate regarding these matters.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in part and denied in part. Summary judgment is granted with respect only to the retaliation claim in Count III. The motion is denied as to all other claims.

Footnotes

[1] Plaintiff also speaks the Ghana language Twi. Plaintiff considers English to be her second language even though it was the first language she learned.

[2] Defendant does not contest the existence of Plaintiff's daughter's medical condition, nor the need for Plaintiff to care for her at times. Indeed, Defendant has allowed Plaintiff FMLA time to care for her daughter in the past.

[3] The parties dispute whether Count II I of Plaintiff's Complaint alleges discrimination and retaliation on the basis of national origin as well as race. While Count III mentions race discrimination fifteen times, it mentions national origin only once. The one instance in which national origin is mentioned relates to retaliation not discrimination. Thus, Count III did not fairly put Defendant on notice of Plaintiff's intention to pursue a claim based on national origin discrimination. To the extent Count III might have put Defendant on notice of the retaliation claim based on national origin, that point is now moot since summary judgment in that regard has been granted.