# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JAMES G. HANSEN,

        Plaintiff,

      v.                                   Case No. 12-C-032

FINCANTIERI MARINE GROUP, LLC and
MARINETTE MARINE CORPORATION,

        Defendants.

## DECISION AND ORDER DENYING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Plaintiff James G. Hansen filed this action against his former employer, Marinette Marine Corporation, and its parent company, Fincantieri Marine Group, LLC, (collectively "FMG") for alleged violation of the Family and Medical Leave Act of 1993 ("FMLA"), as amended, 29 U.S.C. § 2601 et seq. Hansen claims that FMG interfered with his FMLA rights and terminated his employment in retaliation for his exercise of those rights. The case is before the court on FMG's motion for summary judgment. For the reasons stated in this opinion, the motion will be denied.

## BACKGROUND

Hansen began his employment at FMG as a Journeyman Shipbuilder in November 1999. FMG, like many employers, has a point-based attendance policy under which employees were charged a point for missing more than four hours of a scheduled workday or a half point for missing less than four hours of a scheduled workday. Charged points expire a year after incurred. If an employee receives four points, he receives a first warning. A second warning is given after six points, and at nine points, an employee

receives a final warning and a suspension. Employees who accumulate ten attendance points within a year are terminated. Leave that is authorized under the FMLA is not counted under FMG's attendance policy. At all times material hereto, the attendance policy at FMG was administered by Matrix Absence Management, Inc. ("Matrix"). Over the course of his employment, Hansen had received seven first warnings, five second warnings, and two third warnings for attendance problems.

As of May 2, 2011, Hansen had nine attendance points. He was then absent from work for four days beginning May 3 and again on May 9. Hansen promptly requested FMLA for his own serious health condition, namely, depression, on May 3, 2011. On May 4, 2011, he received a letter from his employer notifying him that he was eligible for up to twelve weeks of FMLA leave, but that approval of his request was pending a medical certification from his doctor. On or about May 11, 2011, FMG received a medical certification from Dr. Michael Post, Hansen's health care provider. The certification stated that Hansen had a condition that would cause episodic flare-ups that would periodically prevent him from working. Dr. Post estimated that Hansen would have about four episodes every six months with a duration of incapacity of two to five days per episode. Based on the certification, Hansen's request for FMLA leave for the five earlier absences that month was approved as his first and second episodes, and he received no attendance points.

Hansen had a third episode and was granted FMLA leave on May 23, 2011. He had a fourth episode that month on May 31 and June 1, 2011, and a fifth episode from June 13 to June 15, 2011. Even though Hansen had exceeded the number of episodes Dr. Post had estimated in his certification, FMG continued to grant Hansen's request for FMLA leave. He was absent again on June 22 and June 27, 2011, and although Matrix initially denied his request for FMLA leave, FMG overruled its administrator and granted it.

2

On July 1, 2011, Hansen was again absent for what FMG viewed as his eighth episode. On July 6, Matrix sent a facsimile to Dr. Post requesting that he confirm his medical certification. The body of the fax mistakenly addressed "Doctor Hansen" and referred to "Steven's 7/1 absence." However, the heading on the fax stated, "To: Dr. Post" and "Re: Leave 904193 (James Hansen)." The fax read "Steven's 7/1 absence is out of his frequency and duration. Please confirm item #7." Item number 7 on FMG's medical certification form concerns the need to work on a part-time or reduced schedule to accommodate follow-up treatment the condition required. Presumably, the administrator meant to inquire about Item 8, which addressed the frequency and duration estimate that Dr. Post had certified. Matrix received a response to its fax, which consisted of Matrix's original letter with a handwritten note stating, "7/6/11: Item #7 confirmed. P." Based on Dr. Post's response, FMG denied Hansen's request for FMLA leave for his July 1 absence and sent him a letter informing him that his request was denied because his approved leave under the medical certification was exhausted.

Hansen was again absent on July 11-13 and July 18. His requests for FMLA leave for these days were denied by Matrix for the same reason. With the unapproved absences in July, Hansen had accumulated a total of 13 points by July 18. On July 22, 2011, company officials met with Hansen and terminated his employment for violating the attendance policy. They explained that even though he had been granted FMLA leave, he had exceeded the frequency his doctor certified. The personnel officer explained:

> You can miss 4 times every 6 months. You are currently at 13 points. Matrix called your doctor and there was no change in your certification. The days remain.

(ECF No. 37, at 35.) Hansen asked if there was any way to "reverse" the dates, and he was told to get hold of Matrix. (*Id.*) When asked if he needed to check into anything, Hanson responded, "No, it's legit;.

3

I need to talk to my doctor." (*Id.*)  Hansen was told to "do that soon." (*Id.*)

On July 26, 2011, Dr. Post sent a letter to Matrix stating that he was modifying his original certification so as to cover the entire year and to increase the frequency of Hansen's episodes to "once a month for a duration of 2-5 days per episode." (ECF No. 34-2, at 84.)  The letter did not address the earlier July absences. On August 5, 2011, Hansen's attorney wrote FMG asking what documentation was needed to permit his return to work.  She received no response.

## LEGAL STANDARD

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   "Material" means that the factual dispute must be outcome-determinative under law.  *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor.  Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322.  In determining whether to grant a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255.  When the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue and therefore no reason to go to trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

The FMLA is intended "to balance the demands of the workplace with the needs of employees to take leave for eligible medical conditions and compelling family reasons."  *Hukill v. Auto Care, Inc.*,

4

192 F.3d 437, 441 (4th Cir.1999) (citing 29 U.S.C. § 2601(b)). It entitles eligible employees to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons, *see* 29 U.S.C. § 2612(a)(1), and ensures that these employees will be restored to their same or an equivalent position upon returning to work, § 2614(a)(1). A qualifying medical reason is defined as "a serious health condition that makes the employee unable to perform the functions of the position of such employee." § 2612(a)(1)(D). A "serious health condition" is defined, in part, as an illness or impairment that requires continuing treatment by a health care provider, § 2611(11)(B), and that also involves a "period of incapacity requiring absence from work ... of more than three calendar days," 29 C.F.R. § 825.114(a)(2) (1993). Although employees are generally required to take their leave all at once, leave may be taken intermittently for serious health conditions when medically necessary. 29 U.S.C. § 2612(b)(1).

An employer need not simply accept an employee's word that he is entitled to take FMLA leave. An employer may require that an employee's leave request "be supported by a certification issued by the health care provider of the ... employee[.]" 29 U.S.C. § 2613(a). "An employer must give written notice of a requirement for medical certification in a particular case...." 29 C.F.R. § 825.305(a) (1993) (internal citation omitted). The certification "shall be sufficient" if it articulates: the date on which the serious health condition commenced; its probable duration; the "appropriate medical facts," within the health care provider's knowledge regarding this condition; and a statement that the employee is unable to perform the functions of her position. 29 U.S.C. § 2613(b)(1)-(3), (4)(B). In the case of a request for intermittent leave for a serious medical condition, the certification must contain a statement of the medical necessity for intermittent leave and the expected duration of the intermittent leave. 29 U.S.C. § 2613(b)(6). If the employee fails to provide the employer with a certification after having been directed to do so, the

5

employer may deny the FMLA leave. 29 C.F.R. § 825.305(d). The employer must inform the employee of the consequences of failure to provide this certification, § 825.305(c), and the employer must allow the employee at least fifteen calendar days to submit it, § 825.305(a). If the employer views the certification as incomplete, the employer "shall advise" the employee of this belief and "provide the employee a reasonable opportunity to cure any ... deficiency." § 825.305(c).

Although Hansen has alleged both an interference claim and a retaliation claim under the FMLA, in essence they are the same. Hansen claims that FMG violated the FMLA when it failed to classify his absences as FMLA leave and terminated his employment for excessive absenteeism. Both claims rise or fall on the question of whether Hansen was entitled to have his absences in July 2011 treated as FMLA leave. If he was so entitled, then awarding points for his absences and terminating him for violating the attendance policy violated the FMLA; if he was not entitled to FMLA leave in July, then no violation occurred. Hansen offers no argument that the defendants would not have terminated his employment for violating the attendance policy had he not sought FMLA leave. Treating the issue as two separate claims only confuses the issue. *See Gilliam v. United Parcel Service, Inc.*, 233 F.3d 969, 971 (7th Cir. 2000) ("Using the language of "retaliation" to analyze such a contention detracts attention from what matters.") (citing *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712-13 (7th Cir.1997)). Both claims will therefore be addressed together.

FMG argues it is entitled to summary judgment because it is undisputed that Hansen was terminated for violating the company's attendance policy. It contends that Hansen was not entitled to have his absences in July 2011 classified as FMLA leave because by that time his episodes significantly exceeded the estimated frequency set forth in the certification provided by Dr. Post. Having failed to provide his employer with a certification sufficient to cover the days he was not at work, FMG contends,

6

it was justified in rejecting his request for FMLA leave and treating the additional days when Hansen did not show up for work as absences under the company's attendance policy.

There is no dispute that FMG required Hansen to support his request for FMLA leave with a medical certification when it sent him a letter explaining his right to FMLA leave on May 4, 2011. In response, Dr. Post certified that Hansen would experience up to four episodes during a six month period. There is also no dispute that Hansen's absences were substantially in excess of Dr. Post's estimate of frequency, having exceeded four episodes in the first month. But this alone does not mean that Hansen was not entitled to additional FMLA leave.

If FMG doubted that Hansen's July absences were because of his serious medical condition, it could have requested that he provide a recertification. The regulations implementing the FMLA generally require an employer to wait at least thirty days before asking for a recertification; however, there are exceptions. One exception is when there is a change of circumstances. An employer may request recertification in less than thirty days if:

> Circumstances described by the previous certification have changed significantly (e.g., *the duration or frequency of the absence*, the nature or severity of the illness, complications). For example, if a medical certification stated that an employee would need leave for one to two days when the employee suffered a migraine headache and the employee's absences for his or her last two migraines lasted four days each, then the increased duration of absence might constitute a significant change in circumstances allowing the employer to request a recertification in less than 30 days.

29 C.F.R. § 825.308(c)(2) (emphasis added). The regulation contemplates the precise situation present here where an employee's frequency of absences exceeds what is described in the initial certification, and it expressly allows employers to request recertification prior to the expiration of the minimum duration.

Hansen's need to take intermittent leave was stated by Dr. Post to be six months. The frequency of leave was estimated to be up to four episodes, with each episode having a duration of two to five days.

7

Because Dr. Post certified that Hansen's medical condition would last six months, FMG could only have requested a recertification from Hansen before the six-month period expired if there was a substantial change in circumstances. 29 C.F.R. § 825.308(b). Here, there was a substantial change of circumstances. By July 1, and arguably even earlier, FMG was justified in requesting a recertification because the frequency of Hansen's absences exceeded Dr. Post's estimated frequency of four episodes in a six-month period. Hansen's absence on July 1 would have been his eighth episode in three months. Under these circumstances, FMG could have provided Dr. Post with a record of Hansen's pattern of absences and asked whether Hansen's serious health condition and need for leave was consistent with such a pattern. 29 C.F.R. § 825.308(e). Had it requested recertification and Hansen failed to provide it, then FMG would have been entitled to deny Hansen's FMLA leave request until he complied. 29 C.F.R. § 825.313(c). Unfortunately, FMG failed to do so, and it therefore may not rely on Hansen's failure to provide a recertification as a justification for denying him FMLA leave. FMG is right when it claims it had no obligation to investigate the status of his medical condition or his need for an extension of his leave. (ECF No. 28, at 17.) But having failed to utilize the procedure the FMLA gives employers to substantiate employee requests for leave by requesting a recertification, FMG cannot obtain summary judgment based on the employee's failure to provide one.

FMG suggests that Matrix in effect requested recertification when it asked Dr. Post to confirm the frequency and duration estimate of his initial certification. The facsimile letter sent by Matrix to Dr. Post does not qualify as a recertification request for several reasons. First, an employer "must give notice of a requirement for certification *each time* a certification is required." 29 C.F.R. § 825.305(a), (emphasis added). There is no evidence Hansen was provided notice of the facsimile sent to Dr. Post. More importantly, the employer is not permitted to contact the employee's health care provider directly

except for purposes of authentication or clarification of the certification and then only after first giving the employee the opportunity to cure any deficiency. 29 C.F.R. § 825.307(a). Finally, it is clear from the fax itself that Matrix wasn't seeking a recertification as that term is used in the regulations. Matrix did not ask Dr. Post to certify that the additional absences were due to Hansen's serious medical condition; it merely asked that he confirm his previous certification. Even at that, its request was less than clear because it requested confirmation of the section of the form listing Dr. Post's estimate of on-going treatment, rather than the section containing his estimate of the frequency of leave Hansen would require because of the medical condition itself. It is unclear from Dr. Post's cryptic response to Matrix's fax whether he understood what Matrix was asking (he states in his July 26, 2011 letter he did not). In any event, Dr. Post's response to Matrix's inquiry is not sufficient to grant FMG the protection that the recertification procedure is intended to provide.

FMG also argues that if an employee's leave exceeds the approved leave in the medical certification, the employee is *required* to provide the employer with notice of a need for an extension of the approved leave and a new medical certification authorizing it. But Hansen wasn't asking for an extension of his leave; he was still well within the six-month period in which Dr. Post certified he would need intermittent leave. The suggestion by FMG that simply exceeding the estimated frequency of his absences constitutes an extension of the leave certified by his doctor is inconsistent with the regulations. When intermittent leave is sought, the health care provider is asked to provide "an estimate of the frequency and duration of the episodes of incapacity." 29 C.F.R. § 825.306(a)(7). That is what Dr. Post provided in his certification: an estimate of how often and how long he thought Hansen would be unable to work. An estimate, by definition, is not exact and cannot be treated as a certain and precise schedule. To argue, as FMG does, that Hansen exceeded the leave allowed under the certification because his leave

9

notifications to Matrix exceeded the initial estimate turns Dr. Post's estimate into a hard and fast rule and gives it a meaning it was not intended to have.

This is not to say that the estimate is meaningless. As noted above, when the employee's absences exceed the frequency or duration estimated in the certification, the employer may request a recertification and specifically ask the health care provider if the amount of leave taken is consistent with the serious health condition for which the employee is being treated. 29 C.F.R. § 825.308(c)(2), (e). If the employee fails to provide the certification or the health care provider responds that it is not, the employer can deny leave. But the employer cannot simply assume that any leave in excess of the estimate is unauthorized. If FMG's interpretation of the law was correct, then there would be no need to request a recertification when an employee took more intermittent leave than his physician estimated. The employer could simply deny FMLA leave. The fact that the regulations allow the employer to request a recertification under such circumstances argues against treating leave in excess of the estimate as outside the certification.

The cases cited by FMG in support of its contention that an employee must provide notice are inapposite. In *Junker v. Amana Co., L.P.*, 240 F. Supp. 2d 894 (N.D. Iowa 2003), the employee was granted non-intermittent leave to recover from injuries he sustained in an auto accident. The leave was to expire on November 23, 2000. The employer's form for taking FMLA leave contained an explicit provision requiring employees to return to work upon expiration of their leave or provide a medical certification on the need to extend it before it expired. The employee did neither and was terminated. *Id.* at 895. This case, by contrast, involves intermittent leave and FMG has offered no evidence that it had a similar policy. Likewise, in *Barnhouse v. Honda of America Manufacturing, Inc.*, No. C-2-04-0987, 2007 WL 3244198 (S.D. Ohio Nov. 2, 2007), an employee failed to follow the employer's policy requiring employees, "who return to work from a leave and have significant restrictions, must give Honda

10

two days advance notice of their return, so Honda has time to find a job assignment that meets the restrictions." *Id.* at *5. The plaintiff arrived to work after missing fifteen consecutive work days, without supplying notice, and had work restrictions limiting him to pushing or pulling carts less than 30 pounds of force and prohibiting him from repetitive cervical neck rotations. *Id.* at *2. Honda was not able to accommodate these restrictions and sent the plaintiff home for two days, but also required plaintiff to find a replacement for his assigned days of work or take vacation. *Id.* Failing to do so, the plaintiff was terminated for violating Honda's attendance policy. *Id.* at *7-8. Again, the facts of the instant case are distinguishable because, insofar as the record shows, the company does not have a similar policy that employees must supply notice before taking an extension of leave or supply notice of changed circumstances.

FMG's reliance on *Killian v. Yorozu Automotive Tennesee, Inc.*, 454 F.3d 549 (6th Cir. 2006), is also misplaced because the employer in that case had a policy which required employees "to provide medical recertification prior to [expiration] of [an employee's] original leave." *Id.* at 553. The employee supplied notice of her intent to extend her approved FMLA leave to the employer. The employer in that case orally requested recertification from the employee when she requested additional FMLA leave. *Id.* at 552-53. Unlike *Killian*, Hansen was not attempting to extend the six month duration for his need to take intermittent leave. Only the frequency of the leave he took increased over the estimate. FMG has not offered evidence of any policy that could be construed to require Hansen to supply notice of his changed circumstances.

FMG's strongest argument is that it allowed Hansen a further opportunity to cure the deficiencies of his certification at the July 22 termination meeting by agreeing to consider any additional material he chose to submit. In fact, Hansen indicated at the meeting that he intended to talk to his doctor and was

11

encouraged to do so "soon." (ECF No 37, at 35.) He apparently did, and on July 26, 2011, Dr. Post sent a letter revising his initial certification. FMG notes, however, that Hansen's absences exceed the estimates even of Dr. Post's revised certification, and the certification says nothing about the July absences that led to his discharge. Because Hansen's leave requests aren't even supported by Dr. Post's revised certification, FMG argues that summary judgment should be awarded.

There are several difficulties with FMG's argument. The first is that FMG had already terminated Hansen's employment before it received Dr. Post's revised certification. More importantly, Dr. Post was not responding to a written request by FMG for a recertification. As a result, the record does not reflect what Dr. Post was asked. We don't know, for example, whether he was asked if Hansen's July absences, even if more than he estimated, were nevertheless due to his depression. Was his revised estimate of one episode per month intended to apply from that point forward, or retroactively?

It certainly appears from Dr. Post's July 26 letter and initial certification that Hansen was taking off from work more than was medically necessary. But the record is not so clear that summary judgment can be awarded. Accordingly, FMG's motion is denied. The Clerk is directed to set this matter on the court's calendar for a Rule 16 telephone conference so the matter can be set for trial.

SO ORDERED this 14th day of June, 2013.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

12