UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES HANSEN,

    Plaintiff,

v.                                        Case No. 12-C-32

FINCANTIERI MARINE GROUP, LLC, et al.

    Defendant.

**ORDER DENYING MOTIONS *IN LIMINE***

In the pretrial conference, this Court took under advisement two motions *in limine* in order to further consider the questions posed. Upon review of the briefing, I conclude that both motions should be denied.

**1. Motion to Exclude History of Absences**

Plaintiff seeks to exclude any testimony or evidence regarding the Plaintiff's history of absences prior to the 2011 dates that are the subject of this action. He argues it would be prejudicial do delve into his previous absences and that doing so would require mini-trials as to all of those absences. I disagree.

The key issue in this action is whether the Plaintiff's disability precluded him for working on the dates in question. Because the Plaintiff is presumably the only witness with information touching on that question, his credibility is of the utmost importance. The Defendants state that Plaintiff's past history of absences showed a suspicious pattern of taking days off to extend weekends or holidays, and they argue that the days for which the Plaintiff requested FMLA leave

in 2011 follow that pattern. In their view, this history is highly relevant to questioning Plaintiff's credibility.

Plaintiff is of course correct that a given absence three or five years earlier would have no bearing on whether he was *actually* ill on the dates in question in this case—either he was suffering from depression in July 2011 or he was not. But the previous absence could certainly speak to his credibility. If the absences in question followed a pattern of absences taken in previous years, a jury could reasonably conclude that Plaintiff was requesting leave for the same reasons he had been absent in the past, rather than because of the mental health condition he claimed. If an employer can show that an employee was absent every time the local baseball team had a day game, that does not mean the employee is feigning illness every time. It could be coincidence, or there could be some other explanation. But it is certainly relevant, particularly when the employee himself provides the only testimony on the subject.

Moreover, the past absences also speak to the Defendants' mental state, which is at issue in the retaliation claim. Regardless of the actual reasons for the past absences, a claims administrator would be expected to view the FMLA claim of someone with previous absenteeism issues more skeptically than a claim brought by an employee with a sterling attendance record. Most people have worked in offices where one or more employees calls in sick far more often than others, and it is human nature to view such employees' leave requests with skepticism. In attempting to show that they fired Plaintiff essentially because they believed he was lying, the Defendants can point to his checkered attendance history to explain why they were suspicious. That does not mean he *was* lying, but merely that the Defendants had a reason to believe he was.

In addition, the Defendants are faced with proving a negative, *i.e.*, that they did not fire the

2

Plaintiff because of his FMLA leave requests. Instead of simply arguing the negative, most employers choose to provide a concrete reason why they *did* terminate the employee, and in doing so an employer would look to the employee's entire work history. In fact, articulating a legitimate reason for an employment action is almost a given in employment cases. For example, suppose Employee A had never been disciplined, had received awards, and was deemed very productive by his coworkers and supervisors. But one year he took an excessive amount of leave, in violation of company policy. Since it is difficult to find and train good employees, most employers would probably excuse a couple of extra absences for Employee A, so long as it did not become a problem. But if Employee B, who had a long history of absenteeism, violated company policy, the employer would be much more likely to have a quick hook and terminate the employment. An employer trying to explain why it fired an employee is not limited to denying that it did so for prohibited reasons; it may, and usually *does*, provide legitimate reasons for the termination, which almost always involve an employee's whole work history. Plaintiff believes the dates in question should be viewed in a vacuum, but that is not how business decisions are made. Here, the Defendants can argue to the jury that Plaintiff was more like Employee B, which is why they made the decision to terminate him. Jurors, most of whom have had several jobs in their lifetimes, are well-equipped to evaluate whether the employer's stated reasons are true or whether they are ex-post facto pretext.

In sum, the history of absences is relevant to the question of Plaintiff's credibility. It is also relevant to the Defendants' state of mind, particularly with respect to the retaliation claim. Even if the jury believes Plaintiff was actually disabled on the dates in question, the same jury could find that the Defendants reasonably *thought* he was lying based largely on his past, and thus find that the Defendants did not retaliate.

## 2. The July 6 Fax Correspondence

The Plaintiff also sought to bar any reference to the fax sent from Matrix, the third-party benefits administrator, to Dr. Post. The fax was something of a comedy of errors. It read: '"Hi Dr. Hansen, Steven's 7/1 absence is outside his frequency and duration. Please confirm item #7. Please respond within 7 days." (ECF 37, p. 30, ¶ 23.) First, Dr. Hansen does not exist. Hansen is the Plaintiff's surname. Second, Plaintiff's first name is James, not Steven. Third, "item #7" was completely irrelevant. Finally, Plaintiff argues that the communication was a violation of the FMLA.

The parties focus primarily on whether the communication violated the FMLA. The Defendants argue that they were entitled to seek "clarification" under 29 C.F.R. § 825.307(a). But the fax does not seek "clarification" of anything so much as it asks Dr. Post to re-evaluate whether his prior opinion still held up in light of the fact that Plaintiff's absence was outside his estimated frequency and duration. More importantly, the regulations allow the employer to contact the medical provider only after first allowing the employee notice of the deficiency and an opportunity to cure the defect himself. 29 C.F.R. §§ 825.307(a), 825.305(c). Thus, it appears that the communication was indeed improper under the regulations.

But that does not mean the fax is inadmissible. Plaintiff has pointed to no "exclusionary rule" that would apply to FMLA cases. Here, the legality of the fax is not as relevant as the fact that the fax was sent at all. Presumably, the Defendants want to use it as evidence that they (actually, their benefits administrator) *tried* to verify Plaintiff's condition with his doctor. This goes to their mental state and could suggest to a jury that the Defendants at least made an effort to determine whether the absences were legitimate, as opposed to summarily denying leave and then terminating

4

Plaintiff's employment. In other words, a jury might conclude that if a company were going to retaliate against someone for using FMLA leave, it would not have gone to the trouble of attempting to get an updated opinion from the Plaintiff's doctor. In addition, the Defendants presumably also want to explain how they reacted to Dr. Post's response to the fax. Because their mental state is at issue, if they can show that they believed Dr. Post was holding firm on his original estimate of absences, they could convince a jury that they reasonably believed the Plaintiff's absences were not legitimate. The fax, such as it is, is therefore relevant.

The Plaintiff is correct that the document could be confusing, but the confusing nature of the communications can be fleshed out in court and used to undercut any weight the jury might otherwise give. Again, it is not so much the substance of the communication that is relevant but the *fact* of the communication. Thus, the fact that Dr. Post might not have understood what the fax meant does not mean it cannot be used to show that the Defendants tried to get more information about Plaintiff's illness rather than summarily terminating his employment. And it is the Defendants' interpretation of Dr. Post's response that is relevant to their mental state rather than the substance of the fax itself. Just as Plaintiff himself will be testifying as to his subjective experiences on the dates in question, the Defendants will have to opportunity to explain what their thought process was when they decided to terminate his employment.

The court will consider instructing the jury as to the legality of the communication sent to Dr. Post. But the fact that the fax might have violated the FMLA does not render it *ipso facto* excluded. The Plaintiff is free to point out the errors in the communications and argue that the jury should not place any weight on them.

5

For the reasons given above, the motions *in limine* [73, 74] are **DENIED**.

**SO ORDERED** this 10th day of December, 2014.

      /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court